IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SAMUEL KATZ, individually and on behalf of all others similarly situated, | : : Civil File No. 22-cv-5277 : |
| Plaintiff, | : : |
| v. | : **FIRST AMENDED COMPLAINT –** : **CLASS ACTION** : |
| ALLIED FIRST BANK, SB and CONSUMER NSIGHT LLC | : : : |
| Defendants. | : |

**Preliminary Statement**

1. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive

telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3. The Plaintiff Samuel Katz alleges that Consumer Nsight LLC ("Consumer Nsight") made unsolicited telemarketing calls to his residential telephone number that is listed on the National Do Not Call Registry as part of its relationship with Allied First Bank, SB ("Allied First")

4. Because telemarketing calls typically use technology capable of generating thousands of similar calls per day, the Plaintiff sues on behalf of a proposed nationwide class of other persons who received similar calls.

5. A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

6.  Plaintiff Samuel Katz is an individual.

7.  Defendant Allied First Bank, SB is a company that is headquartered in this District.

8.  Defendant Consumer Nsight LLC is a Florida limited liability company.

**Jurisdiction & Venue**

9.  The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

10. The Court has personal jurisdiction over Allied First because it is a resident of this District.

11. The Court has personal jurisdiction over Consumer Nsight because it entered into the contractual relationship with the Defendant. Consumer Nsight also transferred the telemarketing calls it made to the Defendant, which is located in this District.

12. Venue is proper under 28 U.S.C. § 1391(b) because the calls at issue were made from this District and pursuant to a contractual relationship entered into in this District..

**TCPA Background**

13. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

14. The National Do Not Call Registry (the "Registry") allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

15. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

16. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## Factual Allegations

17. Allied First offers mortgage services.

18. To generate leads, Allied First makes and/or contracts with a telemarketing firm, such as Consumer Nsight, to make telemarketing calls to consumers who have never had a relationship and who have never consented to receive their calls.

19. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

20. Plaintiff's telephone number (the "Number"), (207)-802-XXXX, is on the National Do Not Call Registry for more than a year prior to the calls at issue.

21. Despite this, Consumer Nsight placed telemarketing calls for Allied First to Mr. Katz on January 8, 14, 22, 28, February 9, 16, 23 and March 4, and 7, 2022.

22. All of the calls came from same Caller ID, 207-203-6083.

4

23. The calls were unwanted, so the Plaintiff did not answer the first 8 calls.

24. However, the Plaintiff answered the ninth call.

25. On that call, Allied First's refinance services were offered.

26. The call offered a VA, conventional or FHA loan.

27. The caller asked the Plaintiff to ensure he hadn't had a recent bankruptcy.

28. The caller also asked about the Plaintiff's credit score and ensure that he did not have more than $10,000 in credit card debt.

29. The call offered the Defendant's Conventional Cash Out Program.

30. The caller from the Defendant was named Jason Aldridge.

31. Confirming the conversation, Mr. Aldridge sent him a text message that confirmed he was calling from "Allied First Bank".

32. Indeed, it was not until discovery commenced that Allied First was able to identify Consumer Nsight as the entity that had "transferred" the Plaintiff to Allied First's call center.

33. Plaintiff's privacy has been violated by the above-described telemarketing calls.

34. The Plaintiff never provided his consent or requested these calls.

35. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated, they were annoyed and harassed. In addition, the calls occupied their telephone lines, rendering them unavailable for legitimate communication.

## ALLIED FIRST'S LIABILITY FOR CONSUMER NSIGHT CONDUCT

36. On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that entities such as Allied First may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

37. Allied First had a contract with Consumer Nsight to sell them data for telemarketing, including "live transfers", where an entity, or a call center they work with, makes telemarketing calls and transfers the called party directly to the hiring party.

38. Indeed, this is what happened to Mr. Katz, where Consumer Nsight contacted him and transferred him directly to Allied First's call center.

39. Allied First maintained interim control over Consumer Nsight.

40. For example, Allied First gave interim instructions to Consumer Nsight by providing (a) the days of the week and times they could make calls (b) limiting the amount of calls that they could make at one time (c) providing them instructions on where they had to send the calls (d) providing the types of mortgages they would need customers to have that Consumer Nsight contacted and (e) the credit score such individuals would need to have.

41. Allied First knew, or reasonably should have known, that Consumer Nsight was contacting numbers on the National Do Not Call Registry.

42. Indeed, the parties began their relationship in early 2022 and it continued for most of 2022.

43. On each lead or call transfer accepted by Allied First, the consumer's phone number is disclosed.

44. Indeed, there is a free resource where any individual or entity can check to see if a number is on the National Do Not Call Registry. *See* https://www.donotcall.gov/verify.html.

45. Had Allied First done so, it would have been able to determine that Consumer Nsight was contacting individuals on the National Do Not Call Registry.

46. Furthermore, Consumer Nsight's actions were consistent with Allied First's expectations and the parties' agreement as Allied First continued the relationship with Consumer Nsight despite the filing of this lawsuit.

47. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

7

## Class Action Allegations

48. As authorized by Rule 23(b)(2) or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

49. The class of persons Plaintiff proposes to represent is tentatively defined as:

**National Do Not Call Registry Class**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing calls from or on behalf of Defendants (3) within a 12-month period, (4) from four years prior the filing of the Complaint.

This is referred to as the "Class".

50. The Class as defined above are identifiable through phone records and phone number databases.

51. The potential members of the Class number at least in the thousands.

52. Individual joinder of these persons is impracticable.

53. The Plaintiff is a member of the Class.

54. There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

    (a) whether Allied First is vicariously liable for the conduct of Consumer Nsight;

    (b) whether Defendants systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

    (c) whether Defendants made calls to Plaintiff and members of the Class without first obtaining prior express written consent to make the calls;

    (d) whether Defendants' conduct constitutes a violation of the TCPA;

    (e) whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

55. Plaintiff's claims are typical of the claims of members of the Class.

56. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the Class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

57. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

58. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

## FIRST CAUSE OF ACTION

**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the National Do Not Call Registry Class)**

59. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

60. The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency

9

purposes, to the Plaintiff and the Class despite their numbers being on the National Do Not Call Registry.

62. As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

63. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to numbers on the National Do Not Call Registry, except for emergency purposes, in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

    A.    Certification of the proposed Class;

    B.    Appointment of Plaintiff as a representative of the Class;

    C.    Appointment of the undersigned counsel as counsel for the Class;

    D.    A declaration that Defendants and/or their affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

     E.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making calls, except for emergency purposes, to any residential number listed on the National Do Not Call Registry in the future.

     F.     An award to Plaintiff and the Class of damages, as allowed by law; and

     G.     Orders granting such other and further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Respectfully submitted,

*/s/ Anthony Paronich*
PARONICH LAW, P.C.
Anthony I. Paronich
350 Lincoln St., Suite 2400
Hingham, MA 02043
617-485-0018
anthony@paronichlaw.com

*Attorneys for Plaintiff and proposed class*