**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| SAMUEL KATZ, individually and on behalf of all others similarly situated, | Case No. 1:22-cv-5277 |
| Plaintiff, | |
| v. | **AMENDED ANSWER TO FIRST AMENDED COMPLAINT WITH AFFIRMATIVE DEFENSES AND THIRD PARTY CLAIMS** |
| ALLIED FIRST BANK, SB and CONSUMER NSIGHT LLC | |
| Defendants. | |
| _____/ | |

| | |
|---|---|
| ALLIED FIRST BANK, SB | |
| Third Party Plaintiff, | |
| v. | **THIRD PARTY COMPLAINT** |
| CONSUMER NSIGHT LLC | |
| Third Party Defendant. | |

Defendant Allied First Bank, SB ("Allied First") hereby answers the First Amended Complaint dated July 1, 2023 ("First Amended Complaint") filed by Plaintiff Samuel Katz, individually and on behalf of all others similarly situated ("Plaintiff") as follows, and denies each and every allegation not expressly admitted herein. Additionally, Allied First asserts Third Party Claims against Third Party Defendant Consumer Nsight LLC.

## RESPONSE TO PRELIMINARY STATEMENT

1.     Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans

'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' id.
§ 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests,
and commercial freedoms' *id.* § 2(9).

**ANSWER**: Paragraph 1 of the First Amended Complaint sets forth a legal conclusion to
which no response is required. To the extent a response is required, Allied First denies the
allegations contained in paragraph 1 of the First Amended Complaint.

2. "The law opted for a consumer-driven process that would allow objecting
individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations
was the national Do-Not-Call registry. See 47 C.F.R. § 64.1200(c)(2). Within the federal
government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry
stands out as a model of clarity. It means what it says. If a person wishes to no longer receive
telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone
solicitations that can be made to that number. See id.; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive
telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any
outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-
call" registry, maintained by the Commission.')...Private suits can seek either monetary or
injunctive relief. *Id*...This private cause of action is a straightforward provision designed to
achieve a straightforward result. Congress enacted the law to protect against invasions of privacy
that were harming people. The law empowers each person to protect his own personal rights.
Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those
persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace."
*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

**ANSWER**: Paragraph 2 of the First Amended Complaint sets forth a legal conclusion to which no response is required. To the extent a response is required, Allied First denies the allegations contained in paragraph 2 of the First Amended Complaint.

3.      The Plaintiff Samuel Katz alleges that Consumer Nsight LLC ("Consumer Nsight") made unsolicited telemarketing calls to his residential telephone number that is listed on the National Do Not Call Registry as part of its relationship with Allied First Bank, SB ("Allied First").

**ANSWER**: Paragraph 3 of the First Amended Complaint sets forth a legal conclusion to which no response is required. To the extent a response is required, Allied First denies the allegations contained in paragraph 3 of the First Amended Complaint. Allied First specifically denies that Consumer Nsight called Plaintiff as part of its relationship with Allied First. Instead, Allied First admits that the call was initiated and then transferred to Allied First by a third-party entity.

4.      Because telemarketing calls typically use technology capable of generating thousands of similar calls per day, the Plaintiff sues on behalf of a proposed nationwide class of other persons who received similar calls.

**ANSWER**: Paragraph 4 of the First Amended Complaint sets forth a legal conclusion to which no response is required. To the extent a response is required, Allied First denies the allegations contained in paragraph 4 of the First Amended Complaint.

5.      A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**ANSWER**: Paragraph 5 of the First Amended Complaint sets forth a legal conclusion to which no response is required. To the extent a response is required, Allied First denies the allegations contained in paragraph 5 of the First Amended Complaint.

## RESPONSE TO PARTIES

6.      Plaintiff Samuel Katz is an individual.

**ANSWER**: Allied First admits the allegations in Paragraph 6.

7.      Defendant Allied First Bank, SB is a company that is headquartered in this District.

**ANSWER:**  Paragraph 7 of the First Amended Complaint sets forth a legal conclusion to which no response is required. To the extent a response is required, Allied First denies the allegations contained in paragraph 7 of the First Amended Complaint except states that it maintains an office at 3201 Orchard Road, Oswego, IL 60543.

8.      Defendant Consumer Nsight LLC is a Florida limited liability company.

**ANSWER:**  Upon information and belief, Allied First admits the allegations in Paragraph 8.

## RESPONSE TO JURISDICTION AND VENUE

9.      The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

**ANSWER**: Paragraph 9 of the First Amended Complaint sets forth a legal conclusion to which no response is required. To the extent a response is required, Allied First denies the allegations contained in paragraph 9 of the First Amended Complaint.

10.      The Court has personal jurisdiction over Allied First because it is a resident of this District.

4

**ANSWER**: Paragraph 10 of the First Amended Complaint sets forth a legal conclusion to which no response is required. To the extent a response is required, Allied First denies the allegations contained in paragraph 10 of the First Amended Complaint.

11. The Court has personal jurisdiction over Consumer Nsight because it entered into the contractual relationship with the Defendant. Consumer Nsight also transferred the telemarketing calls it made to the Defendant, which is located in this District.

**ANSWER**: Paragraph 11 of the First Amended Complaint sets forth a legal conclusion to which no response is required. To the extent a response is required, Allied First denies the allegations contained in paragraph 11 of the First Amended Complaint. Allied First specifically denies the allegation that Consumer Nsight made and transferred the telemarketing calls to Allied First. Instead, Allied First admits that the call was initiated and then transferred to Allied First by a third-party entity.

12. Venue is proper under 28 U.S.C. § 1391(b) because the calls at issue were made from this District and pursuant to a contractual relationship entered into in this District.

**ANSWER**: Paragraph 12 of the First Amended Complaint sets forth a legal conclusion to which no response is required. To the extent a response is required, Allied First denies the allegations contained in paragraph 12 of the First Amended Complaint.

## RESPONSE TO TCPA BACKGROUND

13. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

**ANSWER**: Paragraph 13 of the First Amended Complaint sets forth a legal conclusion to which no response is required. To the extent a response is required, Allied First denies the allegations contained in paragraph 13 of the First Amended Complaint and refers to the referenced laws for the true and correct terms thereof.

14. The National Do Not Call Registry (the "Registry") allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

**ANSWER**: Paragraph 14 of the First Amended Complaint sets forth a legal conclusion to which no response is required. To the extent a response is required, Allied First denies the allegations contained in paragraph 14 of the First Amended Complaint and refers to the referenced laws for the true and correct terms thereof.

15. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

**ANSWER**: Paragraph 15 of the First Amended Complaint sets forth a legal conclusion to which no response is required. To the extent a response is required, Allied First denies the allegations contained in paragraph 15 of the First Amended Complaint and refers to the referenced laws for the true and correct terms thereof.

16. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**ANSWER**: Paragraph 16 of the First Amended Complaint sets forth a legal conclusion to which no response is required. To the extent a response is required, Allied First denies the

allegations contained in paragraph 16 of the First Amended Complaint and refers to the referenced laws for the true and correct terms thereof.

**RESPONSE TO FACTUAL ALLEGATIONS**

17.     Allied First offers mortgage services.

**ANSWER**: Allied First denies the allegations contained in paragraph 17 of the First Amended Complaint due to vagueness, but states that, among other things, Allied First offers mortgage lending services.

18.     To generate leads, Allied First makes and/or contracts with a telemarketing firm, such as Consumer Nsight, to make telemarketing calls to consumers who have never had a relationship and who have never consented to receive their calls.

**ANSWER**:  Responding to Paragraph 18, Allied First admits that to generate leads, it has contracted with telemarketing firms, such as Consumer Nsight.  Allied First denies the remaining allegations in Paragraph 18.

19.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

**ANSWER**: Paragraph 19 of the First Amended Complaint sets forth a legal conclusion to which no response is required.  To the extent a response is required, Allied First denies the allegations contained in paragraph 19 of the First Amended Complaint and refers to the referenced laws for the true and correct terms thereof.

20.     Plaintiff's telephone number (the "Number"), (207)-802-XXXX, is on the National Do Not Call Registry for more than a year prior to the calls at issue.

**ANSWER**: Allied First denies knowledge or information with respect to the allegations contained in paragraph 20 of the First Amended Complaint and refers to the referenced documents for the true and complete terms thereof.

21.     Despite this, Consumer Nsight placed telemarketing calls to Mr. Katz on January 8, 14, 22, 28, February 9, 16, 23 and March 4, and 7, 2022.

**ANSWER**: Allied First denies the allegations contained in paragraph 21 of the First Amended Complaint.

22.     All of the calls came from same Caller ID, 207-203-6083.

**ANSWER**: Allied First denies knowledge or information with respect to the allegations contained in paragraph 22 of the First Amended Complaint and refers to the referenced documents for the true and complete terms thereof.

23.     The calls were unwanted, so the Plaintiff did not answer the first 8 calls.

**ANSWER**: Allied First denies knowledge or information with respect to the allegations contained in paragraph 23 of the First Amended Complaint.

24.     However, the Plaintiff answered the ninth call.

**ANSWER**: Responding to Paragraph 24, Allied First admits that on March 7, 2022, there was a telephone call with an individual identifying himself as "James Weim," which Plaintiff has identified as a pseudonym he has used.  Allied First denies any remaining allegations in Paragraph 24.

25.     On that call, Allied First's refinance services were offered.

**ANSWER**: Responding to Paragraph 25, Allied First admits that on March 7, 2022, there was a telephone call with an individual identifying himself as "James Weim," which Plaintiff has identified as a pseudonym he has used.  Allied First further admits that refinance services were

offered during the March 7, 2022 call and refers to the referenced documents and recorded call for the true and complete terms thereof. Allied First denies any allegations inconsistent with the referenced documents and recorded call.

26.     The call offered a VA, conventional or FHA loan.

**ANSWER**:  Responding to Paragraph 26, Allied First admits that on March 7, 2022, there was a telephone call with an individual identifying himself as "James Weim," which Plaintiff has identified as a pseudonym he has used. Allied First refers to the referenced documents and recorded call for the true and complete terms thereof. Allied First denies any allegations inconsistent with the referenced documents and recorded call.

27.     The caller asked the Plaintiff to ensure he hadn't had a recent bankruptcy.

**ANSWER**: Responding to Paragraph 27, Allied First admits that on March 7, 2022, there was a telephone call with an individual identifying himself as "James Weim," which Plaintiff has identified as a pseudonym he has used. Allied First refers to the referenced documents and recorded call for the true and complete terms thereof. Allied First denies any allegations inconsistent with the referenced documents and recorded call.

28.     The caller also asked about the Plaintiff's credit score and ensure that he did not have more than $10,000 in credit card debt.

**ANSWER**: Responding to Paragraph 28, Allied First admits that on March 7, 2022, there was a telephone call with an individual identifying himself as "James Weim," which Plaintiff has identified as a pseudonym he has used. Allied First refers to the referenced documents and recorded call for the true and complete terms thereof. Allied First denies any allegations inconsistent with the referenced documents and recorded call.

29.     The call offered the Defendant's Conventional Cash Out Program.

**ANSWER**: Responding to Paragraph 29, Allied First admits that on March 7, 2022, there was a telephone call with an individual identifying himself as "James Weim," which Plaintiff has identified as a pseudonym he has used. Allied First refers to the referenced documents and recorded call for the true and complete terms thereof. Allied First denies any allegations inconsistent with the referenced documents and recorded call.

30.  The caller from the Defendant was named Jason Aldridge.

**ANSWER**: Responding to Paragraph 30, Allied First admits that on March 7, 2022, there was a telephone call with an individual identifying himself as "James Weim," which Plaintiff has identified as a pseudonym he has used. Allied First also admits that an Allied First employee, Jason Aldridge, spoke with the individual identifying himself as "James Weim." Allied First refers to the referenced documents and recorded call for the true and complete terms thereof. Allied First denies any allegations inconsistent with the referenced documents and recorded call.

31.  Confirming the conversation, Mr. Aldridge sent him a text message that confirmed he was calling from "Allied First Bank".

**ANSWER**: Responding to Paragraph 31, Allied First admits that on March 7, 2022, there was a telephone call with an individual identifying himself as "James Weim," which Plaintiff has identified as a pseudonym he has used. Allied First also admits that an Allied First employee, Jason Aldridge, spoke with the individual identifying himself as "James Weim" and that after the completion of the call, Jason Aldridge sent a text message to "James Weim" in which he introduced himself as "Jason from Allied First Bank." Allied First refers to the referenced documents, recorded call, and text message for the true and complete terms thereof. Allied First denies any allegations inconsistent with the referenced documents, recorded call, and text message.

32.     Indeed, it was not until discovery commenced that Allied First was able to identify Consumer Nsight as the entity that has "transferred" the Plaintiff to Allied First's call center.

**ANSWER**: Allied First denies the allegations in paragraph 32 of the First Amended Complaint.  Allied First specifically denies that Consumer Nsight was the entity that "transferred" the call to Allied First.  Instead, Allied First admits that the call was initiated and then transferred to Allied First by a third-party entity.

33.     Plaintiff's privacy has been violated by the above-described telemarketing calls.

**ANSWER**: Paragraph 33 of the First Amended Complaint sets forth a legal conclusion to which no response is required.  To the extent a response is required, Allied First denies the allegations contained in paragraph 33 of the Complaint.

34.     The Plaintiff never provided his consent or requested these calls.

**ANSWER**: Paragraph 34 of the First Amended Complaint sets forth a legal conclusion to which no response is required.  To the extent a response is required, Allied First denies the allegations contained in paragraph 34 of the First Amended Complaint.

35.     Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated, they were annoyed and harassed. In addition, the calls occupied their telephone lines, rendering them unavailable for legitimate communication.

**ANSWER**: Paragraph 35 of the First Amended Complaint sets forth a legal conclusion to which no response is required.  To the extent a response is required, Allied First denies the allegations contained in paragraph 35 of the First Amended Complaint.

## RESPONSE TO ALLIED FIRST'S LIABILITY FOR CONSUMER NSIGHT CONDUCT

36.     On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that entities such as Allied First may not avoid liability by outsourcing telemarketing:

[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarking intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvents, and amendable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be requires to sue each marketer separately in order to obtain effective relief. As the FTC notes, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

May 2013 FCC Ruling, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted)

**ANSWER**: Paragraph 36 of the First Amended Complaint sets forth a legal conclusion to which no response is required. To the extent a response is required, Allied First denies the allegations contained in paragraph 36 of the First Amended Complaint.

37. Allied First had a contract with Consumer Nsight to sell them data for telemarketing, including "live transfers", where an entity, or a call center they work with, makes telemarketing calls and transfers the called party directly to the hiring party.

**ANSWER:** Responding to Paragraph 37, Allied First admits that it had a contract with Consumer Nsight to purchase leads for customers who had provided written consent to be contacted regarding certain mortgage-related opportunities, and at times, for Consumer Nsight to arrange with third parties to call customers who had provided consent to be called, to determine if they could be transferred to Allied First, and to transfer the customer to Allied First. Allied First denies all other allegations in Paragraph 37.

38. Indeed, this is what happened to Mr. Katz, where Consumer Nsight contacted him and transferred him directly to Allied First's call center.

**ANSWER**: Allied First denies the allegations in Paragraph 38. Instead, Allied First admits that Mr. Katz was contacted by a third-party entity and then transferred to Allied First.

39.     Allied First maintained interim control over Consumer Nsight.

**ANSWER**:  Allied First denies the allegations in Paragraph 39.

40.     For example, Allied First gave interim instructions to Consumer Nsight by providing (a) the days of the week and times they could make calls (b) limiting the amount of calls that they could make at one time (c) providing them instructions on where they had to send the calls (d) providing the types of mortgages they would need customers to have that Consumer Nsight contacted and (e) the credit score such individuals would need to have.

**ANSWER**:  Allied First denies the allegations in Paragraph 40.

41.     Allied First knew, or reasonably should have known, that Consumer Nsight was contacting numbers on the National Do Not Call Registry.

**ANSWER**:  Allied First denies the allegations in Paragraph 41.

42.     Indeed, the parties began their relationship in early 2022 and it continued for most of 2022.

**ANSWER**:  Responding to Paragraph 42, Allied First admits that its relationship with Consumer Nsight continued for most of 2022.  Allied First denies the remaining allegations in Paragraph 42.

43.     On each lead or call transfer accepted by Allied First, the consumer's phone number is disclosed.

**ANSWER**:  Allied First admits the allegations in Paragraph 43.

44.     Indeed, there is a free resource where any individual or entity can check to see if a number is on the National Do Not Call Registry.  See https://www.donotcall.gov/verify.html.

**ANSWER**:  Paragraph 44 of the First Amended Complaint sets forth a statement to which no response is required.  To the extent a response is required, Allied First denies the allegations

contained in paragraph 44 of the First Amended Complaint and refers to the referenced resource for the true and correct terms thereof.

45.     Had Allied First done so, it would have been able to determine that Consumer Nsight was contacting individuals on the National Do Not Call Registry.

**ANSWER**:  Paragraph 45 of the First Amended Complaint sets forth a statement to which no response is required.  To the extent a response is required, Allied First denies the allegations contained in paragraph 45 of the First Amended Complaint.

46.     Furthermore, Consumer Nsight's actions were consistent with Allied First's expectations and the parties' agreement as Allied First continued the relationship with Consumer Nsight despite the filing of this lawsuit.

**ANSWER**:  Allied First denies the allegations in Paragraph 46.

47.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information."  *Id.* at 6592-593 (¶ 46).  Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent."  *Id.* at 6593 (¶ 46).

**ANSWER**:  Paragraph 47 of the First Amended Complaint sets forth a legal conclusion to which no response is required.  To the extent a response is required, Allied First denies the allegations contained in paragraph 47 of the First Amended Complaint.

## RESPONSE TO CLASS ACTION ALLEGATIONS

48.     As authorized by Rule 23(b)(2) or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

**ANSWER**:  Paragraph 48 of the First Amended Complaint sets forth a legal conclusion to which no response is required.  To the extent a response is required, Allied First denies the allegations contained in paragraph 48 of the First Amended Complaint and refers to the referenced laws for the true and correct terms thereof.

49.     The class of persons Plaintiff proposes to represent is tentatively defined as:

> **National Do Not Call Registry Class**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing calls from or on behalf of Defendants (3) within a 12-month period, (4) from four years prior the filing of the Complaint.

This is referred to as the "Class".

**ANSWER**:  Paragraph 49 of the First Amended Complaint sets forth a legal conclusion to which no response is required.  To the extent a response is required, Allied First denies the allegations contained in paragraph 49 of the First Amended Complaint.

50.     The Class as defined above are identifiable through phone records and phone number databases.

**ANSWER**:  Paragraph 50 of the First Amended Complaint sets forth a legal conclusion to which no response is required.  To the extent a response is required, Allied First denies the allegations contained in paragraph 50 of the First Amended Complaint and refers to the referenced documents for the true and complete terms thereof.

51.     The potential members of the Class number at least in the thousands.

**ANSWER**:  Paragraph 51 of the First Amended Complaint sets forth a legal conclusion to which no response is required.  To the extent a response is required, Allied First denies the allegations contained in paragraph 51 of the First Amended Complaint.

52.  Individual joinder of these persons is impracticable.

**ANSWER**:  Paragraph 52 of the First Amended Complaint sets forth a legal conclusion to which no response is required.  To the extent a response is required, Allied First denies the allegations contained in paragraph 52 of the First Amended Complaint.

53.  The Plaintiff is a member of the Class.

**ANSWER**:  Paragraph 53 of the First Amended Complaint sets forth a legal conclusion to which no response is required.  To the extent a response is required, Allied First denies the allegations contained in paragraph 53 of the First Amended Complaint.

54.  There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

(a) whether Allied First is vicariously liable for the conduct of Consumer Nsight;

(b) whether Defendants systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

(c) whether Defendants made calls to Plaintiff and members of the Class without first obtaining prior express written consent to make the calls;

(d) whether Defendants' conduct constitutes a violation of the TCPA;

(d) whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

**ANSWER**: Paragraph 54 of the First Amended Complaint sets forth a legal conclusion to which no response is required.  To the extent a response is required, Allied First denies the allegations contained in paragraph 54 of the First Amended Complaint.

55.     Plaintiff's claims are typical of the claims of members of the Class.

**ANSWER**:  Paragraph 55 of the First Amended Complaint sets forth a legal conclusion to which no response is required.  To the extent a response is required, Allied First denies the allegations contained in paragraph 55 of the First Amended Complaint.

56.     Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the Class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

**ANSWER**:  Paragraph 56 of the First Amended Complaint sets forth a legal conclusion to which no response is required.  To the extent a response is required, Allied First denies the allegations contained in paragraph 56 of the First Amended Complaint.

57.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

**ANSWER**:  Paragraph 57 of the First Amended Complaint sets forth a legal conclusion to which no response is required.  To the extent a response is required, Allied First denies the allegations contained in paragraph 57 of the First Amended Complaint.

58.     The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

**ANSWER**:  Paragraph 58 of the First Amended Complaint sets forth a legal conclusion to which no response is required.  To the extent a response is required, Allied First denies the allegations contained in paragraph 58 of the First Amended Complaint.

<u>**RESPONSE TO FIRST CAUSE OF ACTION**</u>

**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the National Do Not Call Registry Class)**

59.    Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

**ANSWER**: Allied First repeats and reasserts all previous responses as if fully set forth herein.

60.    The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to the Plaintiff and the Class despite their numbers being on the National Do Not Call Registry.

**ANSWER**: Paragraph 60 of the First Amended Complaint sets forth a legal conclusion to which no response is required.  To the extent a response is required, Allied First denies the allegations contained in paragraph 60 of the First Amended Complaint and refers to the referenced laws for the true and correct terms thereof.

61.    The Defendants' violations were negligent, willful, or knowing.

**ANSWER**: Paragraph 61 of the First Amended Complaint sets forth a legal conclusion to which no response is required.  To the extent a response is required, Allied First denies the allegations contained in paragraph 61 of the First Amended Complaint.

62.    As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

**ANSWER**: Paragraph 62 of the First Amended Complaint sets forth a legal conclusion to which no response is required. To the extent a response is required, Allied First denies the allegations contained in paragraph 62 of the First Amended Complaint and refers to the referenced laws for the true and correct terms thereof.

63. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to numbers on the National Do Not Call Registry, except for emergency purposes, in the future.

**ANSWER**: Paragraph 63 of the First Amended Complaint sets forth a legal conclusion to which no response is required. To the extent a response is required, Allied First denies the allegations contained in paragraph 63 of the First Amended Complaint.

## **AFFIRMATIVE DEFENSES**

### *FIRST AFFIRMATIVE DEFENSE*

Plaintiff's claims fail to state a claim upon which relief may be granted on behalf of himself or any of the alleged class members.

### *SECOND AFFIRMATIVE DEFENSE*

Without admitting the allegations in the First Amended Complaint, any claim against Allied First is barred, in whole or in part, because Plaintiff has not sustained any damages.

### *THIRD AFFIRMATIVE DEFENSE*

Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations or statutes of repose.

### FOURTH AFFIRMATIVE DEFENSE

Allied First denies any allegations not specifically admitted herein, and specifically denies that it violated any applicable law.

### FIFTH AFFIRMATIVE DEFENSE

Without admitting the allegations in the First Amended Complaint, any claim against Allied First is barred, in whole or in part, by the doctrines of waiver, estoppel, unclean hands, and laches.

### SIXTH AFFIRMATIVE DEFENSE

Without admitting the allegations in the First Amended Complaint, any claim against Allied First is barred, in whole or in part, by the doctrines of *res judicata*, claim and issue preclusion, judicial estoppel, estoppel, and waiver.

### SEVENTH AFFIRMATIVE DEFENSE

Without admitting the allegations in the First Amended Complaint, any claim against Allied First is barred, in whole or in part, because, to the extent he has suffered any harm or damages, such harm or damages was the result of his own conduct.

### EIGHTH AFFIRMATIVE DEFENSE

This Court lacks personal jurisdiction over Allied First.

### NINTH AFFIRMATIVE DEFENSE

Without admitting the allegations in the First Amended Complaint, any claim against Allied First is barred, in whole or in part, because Plaintiff is not entitled to any actual or statutory damages under the Telephone Consumer Protection Act.

*TENTH AFFIRMATIVE DEFENSE*

Without admitting the allegations in the First Amended Complaint, any claim against Allied First is barred, in whole or in part, because Allied First did not violate the Telephone Consumer Protection Act and did not commit any knowing or willful conduct.

*ELEVENTH AFFIRMATIVE DEFENSE*

Without admitting the allegations in the First Amended Complaint, any claim against Allied First is barred, in whole or in part, because Plaintiff gave his valid prior express consent, invitation or permission for Allied First to contact him.

*TWELFTH AFFIRMATIVE DEFENSE*

Without admitting the allegations in the First Amended Complaint, any claim against Allied First is barred, in whole or in part, because Plaintiff (through an alias or otherwise) or someone acting on his behalf provided valid prior express consent, invitation, or permission to be contacted by Allied First.

*THIRTEENTH AFFIRMATIVE DEFENSE*

Without admitting the allegations in the First Amended Complaint, any claim against Allied First is barred, in whole or in part, because Allied First reasonably relied on the good faith belief that Plaintiff had given valid prior express consent, invitation, or permission for Allied First to contact him.

*FOURTEENTH AFFIRMATIVE DEFENSE*

This Court lacks subject matter jurisdiction over this action because Plaintiff lacks Article III standing and prudential standing to bring his claims.

*FIFTEENTH AFFIRMATIVE DEFENSE*

Plaintiff's class allegations are barred because each alleged class member gave their valid prior express consent, invitation or permission for Allied First to contact him.

*SIXTEENTH AFFIRMATIVE DEFENSE*

Plaintiff's class allegations for multiple damages under the TCPA is barred because Allied First did not violate the TCPA and did not commit any knowing or willful conduct.

*SEVENTEENTH AFFIRMATIVE DEFENSE*

Plaintiff's class allegations fail to satisfy any of the express and implicit requirements of Federal Rules of Civil Procedure 23(a) and 23(b).

*EIGHTEENTH AFFIRMATIVE DEFENSE*

Plaintiff's class allegations fail to state sufficient class allegations under applicable law.

*NINETEENTH AFFIRMATIVE DEFENSE*

Plaintiff's class allegations are barred because they constitute impermissible fail-safe allegations.

*TWENTIETH AFFIRMATIVE DEFENSE*

Plaintiff's class allegations are barred because they are insufficiently ascertainable.

*TWENTY-FIRST AFFIRMATIVE DEFENSE*

Plaintiff's class allegations are barred because Allied First reasonably relied on the good faith belief that each alleged class member had given valid prior express consent, invitation, or permission for Allied First to contact them.

*TWENTY-SECOND AFFIRMATIVE DEFENSE*

To the extent Plaintiff has pleaded an ATDS claim, Plaintiff's ATDS claims under the Telephone Consumer Protection Act on behalf of himself and the alleged class members must be

dismissed because his cell phone number and numbers of the putative class were not randomly or sequentially generated. *See Facebook, Inc. v. Noah Duguid, et al.*, No. 19-511 (U.S. Supreme Court) ("*Duguid*").

TWENTY-THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are frivolous and lack a good faith basis in fact and/or law.

TWENTY-FOURTH AFFIRMATIVE DEFENSE

This Court lacks personal jurisdiction over the class allegations where none of the allegations relate to alleged conduct or harm occurring in Illinois.

TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiff's class allegations are barred because none of the alleged class members suffered any damages caused by Allied First.

TWENTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiff's and any alleged class member's damages, if any, are capped by what is allowable by statute under the Telephone Consumer Protection Act only.

TWENTY-SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims for injunctive relief on behalf of himself and the alleged class members is barred.

TWENTY-EIGHTH AFFIRMATIVE DEFENSE

Venue is not proper in this Court.

TWENTY-NINTH AFFIRMATIVE DEFENSE

This Court lacks subject matter jurisdiction over Plaintiff's claims and class allegations under the automated telephone equipment portion of the TCPA, 47 U.S.C. § 227(b)(1), because that portion of the statute was deemed unconstitutional at the time the allegedly illegal calls were

made to Plaintiff.  *See*, *e.g.*, *Creasy v. Charter Communications, Inc*., 2020 WL 5761117 (E.D. La. Sep. 28, 2020).

*THIRTIETH AFFIRMATIVE DEFENSE*

Plaintiff's pre-suit conduct and his claims against Allied First are frivolous, vexatious, and brought in bad faith.

*THIRTY-FIRST AFFIRMATIVE DEFENSE*

Without admitting the allegations in the First Amended Complaint, any claim against Allied First is barred, in whole or in part, because Allied First did not make the alleged communications, inclusive of an alleged telephone call and e-mail, nor is Allied First vicariously liable for such communications because it was not involved in, nor did it direct, authorize, or ratify, such alleged communications and actions.

*THIRTY-SECOND AFFIRMATIVE DEFENSE*

To the extent Plaintiff claims his prior express consent, invitation, or permission was obtained fraudulently, such alleged fraud was not caused by or attributable to Allied First .

*THIRTY-THIRD AFFIRMATIVE DEFENSE*

To the extent any alleged class member claims that their prior express consent, invitation, or permission was obtained fraudulently, such alleged fraud was not caused by or attributable to Allied First.

*THIRTY-FOURTH AFFIRMATIVE DEFENSE*

Without admitting the allegations in the First Amended Complaint, any claim against Allied First is barred, in whole or in part, because any damage allegedly suffered is solely the proximate result of conduct, acts and/or omissions of persons or entities other than Allied First, over whom Allied First had no control.

24

*THIRTY-FIFTH AFFIRMATIVE DEFENSE*

Allied First is entitled to set-off to account for the settlement amounts paid to Plaintiff by Iconic Results and Consumer Nsight, which far exceed any allowable recovery under the TCPA.

*THIRTY-SIXTH AFFIRMATIVE DEFENSE*

Plaintiff may not recover more than a single recovery for her purported injury, and any relief awarded to Plaintiff must be reduced to account for the settlement amounts paid to Plaintiff by Iconic Results and Consumer Nsight.

*THIRTY-SEVENTH AFFIRMATIVE DEFENSE*

Allied First reserves the right to assert additional affirmative defenses as to Plaintiff's claims and the class allegations, as discovery has not yet opened.

*THIRTY-EIGHTH AFFIRMATIVE DEFENSE*
AND BY WAY OF THIRD-PARTY COMPLAINT

1.      NOW COMES ALLIED FIRST BANK, SB ("Allied First"), with third party claims against Consumer Nsight, LLC ("Consumer Nsight") and would respectfully show this Court the following:

**PARTIES**

2.      Upon information and belief, Consumer Nsight is a Florida limited liability company.

3.      Allied First is an Illinois-chartered state bank that is headquartered in Oswego, Illinois.

**JURISDICTION AND VENUE**

4.      This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00.

5.     This Court additionally has subject matter jurisdiction over these claims under 28 U.S.C. § 1367 because these claims arise out of a common nucleus of operative fact with Plaintiff's original claims against Allied First and Consumer Nsight.

6.     This Court has personal jurisdiction over Consumer Nsight because Consumer Nsight entered into a contract with and provided services to Allied First, which is headquartered in the Northern District of Illinois.

7.     Venue in this district is proper under 28 U.S.C. § 1391(b) because Allied First is headquartered in the Northern District of Illinois and Plaintiff's original action was brought in this venue.

## FACTS

8.     Each and every allegation set forth above in this Amended Answer to Amended Complaint and Third Party Claims is incorporated by reference herein as if repeated verbatim.

9.     Allied First and Consumer Nsight entered into an agreement for Consumer Nsight to provide prescreened refinance live transfers to Allied First.  This agreement was negotiated by Allied First and Consumer Nsight over email and phone.

10.     On or about January 28, 2022, Consumer Nsight emailed Allied First a proposal outlining the quantity and price of prescreened refinance live transfers to Allied First.

11.     On or about February 2, 2022, Allied First paid the amount requested in the proposal to Consumer Nsight.

12.     Upon information and belief, Consumer Nsight obtained leads for individuals who were interested in potential mortgage options.  The individuals had provided their contact information to certain sources with whom Consumer Nsight had relationships.  When the individuals provided their contact information, they also were to have provided explicit written consent to be contacted using the information the customer provided, including by cell phone.

13.     Based on their course of dealing and communications, Allied First was paying Consumer Nsight to receive transfers of calls for customers who had provided explicit written consent to be contacted and for whom Allied First was among the entities the customer may be connected to based on the information the customer provided.

14.     Allied First did not control how the calls were made.  Allied First relied on Consumer Nsight and expected that the calls would be made in compliance with the law, including the Telephone Consumer Protection Act.

15.     Upon information and belief, the website "www.lenderconsultant.com" is a source used by Consumer Nsight to obtain leads.

16.     Upon information and belief, on the web site "www.lenderconsultant.com," Allied First was listed as one of the entities to whom the potential customers' contact information could be provided.

17.     Upon information and belief, Consumer Nsight retained a third party call center, Iconic Results LLC ("Iconic Results"), to have calls transferred to Allied First based on leads obtained by Consumer Nsight.

18.     Under the agreement between Allied First and Consumer Nsight, the transfers started on or around February 3, 2022, and continued until on or around April 8, 2022.

19.     Upon information and belief, Iconic Results called individuals based on leads provided by Consumer Nsight and based on instructions and directions provided by Consumer Nsight.  Iconic Results dialed the phone numbers provided by the person who consented to be called.

20.     Upon information and belief, once a call connected to a person, an Iconic Results employee would ask the person questions about their mortgage needs.  If the individual met the

parameters provided by Consumer Nsight for the prescreened refinanced live transfers to Allied First, Iconic Results transferred the person to Allied First.

21.     Upon information and belief, when the call was initiated by an Iconic Results employee, Iconic Results would not know which financial services entity may receive the transfer. Iconic Results obtained information from the person called and decided who would receive the transfer based on the person's answers to the questions, as instructed by Consumer Nsight.

22.     Upon information and belief, on or around June 5, 2021, Plaintiff Samuel Katz, using the alias "James Weim," entered that name and Plaintiff's own address, phone number, and email on the website www.lenderconsultant.com.

23.     On March 7, 2022, Iconic Results initiated a call to the number provided with the name "James Weim."

24.     Upon information and belief, the person who answered the phone was Plaintiff Samuel Katz, who inaccurately identified himself on the call as "James Weim." The Iconic Results caller took the person's information based on a series of questions regarding his mortgage and finances. Based on the person's answers, Iconic Results transferred the call to Allied First.

25.     Upon information and belief, Iconic Results previously attempted to contact James Weim at the number provided at least five times before the March 7, 2022 call.

26.     At the time of all of these calls, Iconic Results was not calling on behalf of Allied First. The calls may have been transferred to any entity from among a list of companies based on the person's answers to the Iconic Result's employee's questions. Iconic Results only connected Plaintiff to Allied First after he indicated he was interested in hearing more information during the March 7, 2022 call.

27.     Therefore, Allied First did not initiate any calls to Plaintiff, but instead received transfers initiated by Iconic Results.  Consumer Nsight engaged and instructed Iconic Results to make the calls and transfers.

28.     Plaintiff alleges that the calls to Plaintiff violated the Telephone Consumer Protection Act and has named Allied First as a defendant in this action.  Allied First denies that it is liable under the TCPA.  Allied First has and continues to defend itself in this action.

## FOR A FIRST THIRD PARTY CLAIM
### (Breach of Contract)

29.     Each and every allegation set forth above in this Amended Answer to Amended Complaint and Third Party Claims is incorporated by reference herein as if repeated verbatim.

30.     A contract existed between Allied First and Consumer Nsight for Consumer Nsight to provide prescreened refinance live transfers to Allied First.

31.     The contract was a valid, enforceable, legal, and mutually binding contract between Allied First and Consumer Nsight.

32.     Inherent in this contract was that the live transfers would not violate any laws and that Consumer Nsight would be obligated to indemnify Allied First in the event of a breach.

33.     At all times, Allied First performed its obligations under the contract.  Allied First paid Consumer Nsight to provide prescreened refinance live transfers to Allied First.

34.     If Plaintiff's claims are adjudicated to be valid, then Consumer Nsight materially breached this contract by failing to provide transfers to Allied First generated via lawful means.

35.     To the extent any violation of the TCPA occurred with respect to the calls alleged in the First Amended Complaint, Consumer Nsight caused the violation.

36.     Consumer Nsight breached the duty of good faith and fair dealing implied in the contract.  The contract vested Consumer Nsight with discretion in performing its obligations under

29

the contract, including providing prescreened refinance live transfers obtained by lawful means to Allied First, and Consumer Nsight exercised this discretion in bad faith, unreasonably, and in a manner inconsistent with the reasonable expectations of Allied First by failing to provide these transfers by lawful means.

37.     As a direct and proximate consequence of Consumer Nsight's breach of the contract, Allied First has suffered and continues to suffer damages.

38.     Allied First is entitled to judgment against Consumer Nsight for actual damages, consequential damages, prejudgment interest, and for attorneys' fees and costs, including but not limited to those incurred in defending this matter.

## FOR A SECOND THIRD PARTY CLAIM
### (Breach of Implied Contract – In the Alternative to the Breach of Contract Claim)

39.     Each and every allegation set forth above in this Amended Answer to Amended Complaint and Third Party Claim is incorporated by reference herein as if repeated verbatim.

40.     Allied First and Consumer Nsight entered into an implied contract for Consumer Nsight to provide prescreened refinance live transfers to Allied First.

41.     Consumer Nsight provided a proposal to Allied First in which Consumer Nsight promised to provide a specific quantity of prescreened refinance live transfers to Allied First for a specific amount.

42.     In order to obtain the benefit of this transaction, Allied First paid Consumer Nsight for the prescreened refinance live transfers.

43.     By Allied First paying the amount requested and upon Consumer Nsight's acceptance of the payment, Allied First and Consumer Nsight entered into an implied contract whereby Consumer Nsight was obligated to take reasonable steps to provide prescreened refinance live transfers based on lawfully obtained leads.

44.     Inherent in this contract was that the live transfers would not violate any laws and that Consumer Nsight would be obligated to indemnify Allied First in the case of a breach.

45.     Without such an implied contract, Allied First would not have provided the funds to Consumer Nsight nor would Consumer Nsight have engaged Iconic Results to transfer calls to Allied First for two months.

46.     Therefore, an implied contract may be inferred as a matter of reason and justice from the conduct and acts of Allied First and Consumer Nsight.  The circumstances, including Consumer Nsight engaging Iconic Results to transfer calls to Allied First over two months, make it a reasonable and necessary assumption that an implied contract existed between Allied First and Consumer Nsight based on their tacit understanding.

47.     If Plaintiff's claims are determined to be valid, Consumer Nsight materially breached this contract by failing to provide transfers to Allied First generated via lawful means.

48.     To the extent any violation of the TCPA occurred with respect to the calls alleged in the First Amended Complaint, Consumer Nsight perpetrated or caused the violation.

49.     As a direct and proximate consequence of Consumer Nsight's breach of the contract, Allied First has suffered and continues to suffer actual damages.

50.     Allied First is entitled to judgment against Consumer Nsight for actual damages, consequential damages, prejudgment interest, and for attorneys' fees and costs incurred in prosecuting this matter.

**FOR A THIRD THIRD PARTY CLAIM**
**(Indemnification)**

51.     Each and every allegation set forth above in this Amended Answer to Amended Complaint and Third Party Claim is incorporated by reference herein as if repeated verbatim.

52. Under either the express contract or alternatively, the implied contract, Consumer Nsight had an obligation to provide live transfers to Allied First that did not violate any laws.

53. Additionally, under either the express contract or alternatively, the implied contract, Consumer Nsight is obligated to indemnify Allied First in the case of a breach.

54. Consumer Nsight breached its obligation to provide live transfers that did not violate any laws to Allied First.

55. As a direct and proximate consequence of Consumer Nsight's breach of the contract, Allied First has suffered and continues to suffer actual damages.

56. To the extent Allied First is liable to Plaintiff for damages related to said breach, Consumer Nsight is liable to Allied First under either the express contract or alternatively, the implied contract.

WHEREFORE, ALLIED FIRST, having fully answered Plaintiff's First Amended Complaint, prays that: (a) the Court dismiss with prejudice Plaintiff's claims against Allied First with costs; (b) judgment be entered in favor of Allied First on its Third Party Claims against Consumer Nsight; and (c) Allied First be granted such other relief as the Court deems just and proper.

[*signature page attached*]

Respectfully submitted,

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: *s/Carmen H. Thomas*
Carmen Harper Thomas
*Pro Hac Vice Admitted*
Email: carmen.thomas@nelsonmullins.com
1320 Main Street, 17th Floor
Columbia, SC 29201
Tel: (803) 799-2000

Nathan E. Hoffman
Email: nathan.hoffman@nelsonmullins.com
One Nashville Place, Suite 1100
150 Fourth Avenue North
Nashville, Tennessee 37219
Tel: (615) 664-5300

P.O. Box 641040
Chicago, IL 60664
Tel: (312) 205-7950

Alan Kaufman
*Pro Hac Vice to be Submitted*
Email: alan.kaufman@nelsonmullins.com
330 Madison Avenue, 27th Floor
New York, NY 10017
Tel: (212) 413-9000

*Attorneys for Defendant Allied First Bank, SB*

August 5, 2024

## Certificate of Service

     I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF on August 5, 2024. I also certify that the foregoing document is being served this day on the following counsel of record via transmission of Electronic Filing generated by CM/ECF:

| | |
|---|---|
| Anthony Paronich, Esq. | Andrew D. LeMar, Esq. |
| Paronich Law, P.C. | Burke, Warren, MacKay & Serritella, P.C. |
| 350 Lincoln Street, Suite 2400 | 330 North Wabash Avenue, Suite 2100 |
| Hingham, MA 02043 | Chicago, Illinois 60611-3607 |
| anthony@paronichlaw.com | alemar@burkelaw.com |
| *Attorneys for Plaintiff* | *Attorney for Consumer Nsight LLC* |

                                                */s/ Carmen H. Thomas*
                                                     Attorney