IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAMUEL KATZ, individually and on behalf of all others similarly situated ) ) ) Plaintiff, ) ) v. ) ) ALLIED FIRST BANK, SB, ) ) Defendant. ) ) ) _____ ) ALLIED FIRST BANK, SB ) ) Third-Party Plaintiff, ) ) v. ) ) CONSUMER NSIGHT LLC, ) ) Third-Party Defendant. ) | Case No. 1:22-cv-05277<br><br>Judge Robert W. Gettleman<br>Magistrate Judge Maria Valdez |

**THIRD-PARTY DEFENDANT CONSUMER NSIGHT LLC'S UNOPPOSED
MOTION FOR LEAVE TO FILE AN OVERSIZED BRIEF**

Pursuant to N.D. Loc. R. 7.1 and the Court's Standing Order, third-party defendant Consumer Nsight LLC, by and through its undersigned counsel, hereby respectfully requests that the Court grant Consumer Nsight leave to file an oversized memorandum in support of its forthcoming motion to dismiss defendant/third-party plaintiff Allied First Bank, SB's Third Party Complaint, up to 23 pages. In support of this motion, Consumer Nsight states as follows:

1. On September 27, 2022, Plaintiff Samuel Katz filed his original complaint, naming Allied First as the only defendant. (Dkt. No. 1.)

2. On July 1, 2023, Plaintiff filed a First Amended Complaint ("FAC"), adding Consumer Nsight as a defendant. (Dkt. No. 26.) In his FAC, Plaintiff alleges Allied First and

Consumer Nsight made telemarketing calls to Plaintiff in violation of the of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). (*See* FAC ¶¶ 3, 11, 32.) Specifically, the FAC alleges Consumer Nsight "placed telemarketing calls for Allied First" to Plaintiff, and Consumer Nsight "transferred" Plaintiff to Allied First's call center. (*Id.* ¶¶ 21, 38.) Plaintiff claims these alleged calls, only one of which was allegedly "transferred" by Consumer Nsight to Allied First, violated the TCPA because his phone number was on the National Do-Not-Call registry. (*Id.* ¶ 20.)

3. Consumer Nsight moved to dismiss the FAC pursuant to Rule 12(b)(2), arguing the Court lacks personal jurisdiction over it. (Dkt. No. 35.) Before the Court ruled on that motion, pursuant to a stipulation of dismissal filed on April 26, 2024 and the related order entered on April 29, 2024, Plaintiff's claims against Consumer Nsight were dismissed with prejudice. (Dkt. Nos. 63-64.)

4. On May 23, 2024, Allied First moved for leave to amend its answer and affirmative defenses to the FAC and to file third-party claims against Consumer Nsight. (Dkt. No. 70 at 3-4.) On July 15, 2024, the Court granted Allied First's motion. (Dkt. No. 78.) On August 5, 2024, Allied First filed its Amended Answer to the FAC with Affirmative Defenses and Third Party Claims. (Dkt. No. 79.)

5. In its Third Party Complaint ("TPC"), Allied First alleges that, in early 2022, it entered into an agreement with Consumer Nsight "for Consumer Nsight to provide prescreened refinance live transfers to Allied First." (TPC ¶¶ 9-11.) Allied First alleges Consumer Nsight obtained leads for individuals who were interested in "potential mortgage options" and who had previously provided their contact information and written consent to be contacted by cellular phone "to certain sources with whom Consumer Nsight had relationships." (*Id.* ¶ 12.) Allied First further alleges that it expected the calls would be made in compliance with the TCPA. (*Id.* ¶ 14.)

6. Allied First further alleges Consumer Nsight used a third-party call center, Iconic Results, "to have calls transferred to Allied First based on leads obtained by Consumer Nsight" (*id.* ¶ 17) and that under Allied First's agreement with Consumer Nsight, "the transfers started on or around February 3, 2022, and continued until on or around April 8, 2022." (*Id.* ¶ 18.) Allied First alleges that, when calling individuals based on leads provided by Consumer Nsight, Iconic Results asked the individual about their mortgage needs, and if the individual met parameters provided by Allied First or other financial institutions, Iconic Results would transfer the call to Allied First or another financial institution. (*See id.* ¶¶ 19-21.)

7. Allied First alleges that, in June 2021, Plaintiff, using the alias "James Weim," "entered that name and Plaintiff's own address, phone number, and email" into a website for individuals interested in mortgage options used as a source for leads by Consumer Nsight. (*Id.* ¶¶ 15-16, 22.) Allied First further alleges, on March 7, 2022, Iconic Results called the phone number provided with the name "James Weim," but that the person who answered the phone was actually Plaintiff, and after the individual indicated his interest in a mortgage, Iconic Results transferred the call to Allied First. (*See id.* ¶¶ 23-24.) Allied First also alleges "Iconic Results previously attempted to contact James Weim at the number provided at least five times before the March 7, 2022 call" (*id.* ¶ 25), though those calls were not necessarily made on behalf of Allied First and could have been transferred to other financial institutions. (*Id.* ¶ 26.)

8. Allied First alleges that it "did not initiate any calls to Plaintiff, but instead received transfers initiated by Iconic Results" and "Consumer Nsight engaged and instructed Iconic Results to make the calls and transfers." (*Id.* ¶ 27.) Allied First also notes that Plaintiff alleges the calls violated the TCPA, named Allied First as a defendant, and Allied first denies any liability under the TCPA. (*Id.* ¶ 28.)

3

9. In the TPC, Allied First asserts three claims against Consumer Nsight.

10. The first count is for breach of contract. Allied First alleges "[a] contract existed between Allied First and Consumer Nsight for Consumer Nsight to provide prescreened refinance live transfers to Allied First" (*id*. ¶ 30), and "[i]nherent in this contract was that the live transfers would not violate any laws and that Consumer Nsight would be obligated to indemnify Allied First in the event of a breach." (*Id*. ¶ 32.) Allied First further alleges that, if Plaintiff's TCPA claims are "adjudicated to be valid, then Consumer Nsight materially breached this contract by failing to provide transfers to Allied First generated via lawful means," Consumer Nsight caused any TCPA violation, and Consumer Nsight violated the implied duty of good faith and fair dealing. (*Id*. ¶¶ 34-36.)

11. In its second count, which is pled in the alternative to the breach of contract claim, Allied First brings a claim for breach of implied contract. Allied First alleges that there was an implied contract with Consumer Nsight to provide "prescreened refinance live transfers" based on Allied First's payment to Consumer Nsight after receiving a proposal from Consumer Nsight and Iconic Results's transfer of calls to Allied First for two months. (*See id*. ¶¶ 40-46.) Allied First alleges "[i]nherent in this contract was that the live transfers would not violate any laws and that Consumer Nsight would be obligated to indemnify Allied First in the case of a breach," if Plaintiff's TCPA claims are "adjudicated to be valid, Consumer Nsight materially breached this contract by failing to provide transfers to Allied First generated via lawful means," and Consumer Nsight caused any TCPA violation, and Consumer Nsight violated the implied duty of good faith and fair dealing. (*Id*. ¶¶ 44, 47-48.)

12. In its third count, Allied First asserts a claim for indemnification, alleging that under either the express or implied contract, "Consumer Nsight had an obligation to provide live transfers

4

to Allied First that did not violate any laws" and "is obligated to indemnify Allied First in the case of a breach." (*Id.* ¶¶ 52-53.) Allied First alleges "Consumer Nsight breached its obligation to provide live transfers that did not violate any laws to Allied First," and "[t]o the extent Allied First is liable to Plaintiff for damages related to said breach, Consumer Nsight is liable to Allied First under either the express contract or alternatively, the implied contract." (*Id.* ¶¶ 54, 56.)

13. Allied First does not allege whether its claims arise under the laws of Arizona (where Iconic Results and the Allied First branch for which Consumer Nsight provided services were located), Florida (where Consumer Nsight is located), or Illinois (where this action is pending).

14. On August 28, 2024, Allied First had a summons issued to Consumer Nsight. On September 13, 2024, a summons and the TPC were purportedly served on Consumer Nsight.

15. Consumer Nsight will be moving to dismiss the TPC and filing a supporting memorandum, and Consumer Nsight is cognizant that, under Local Rule 7.1, a brief in support of a motion shall not "exceed 15 pages without prior approval of the court." N.D. Ill. Loc. R. 7.1. However, given the number of dismissal arguments Consumer Nsight has, Consumer Nsight respectfully requests that the Court grant it leave to file an oversized memorandum in support of its motion to dismiss, up to 23 pages. Specifically, Consumer Nsight will be moving to dismiss the TPC: (1) pursuant to Fed. R. Civ. P. 12(b)(5) for insufficient service of process; (2) pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction over Consumer Nsight, which involves analysis of and argument regarding multiple factors; (3) pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted as to all three claims in the TPC, which given the lack of clarity as to which state's laws under which Allied First brings its claims, requires Consumer Nsight to assess the claims under Arizona, Florida, and Illinois law; and (4) pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction should Allied First take the position

5

that its claims in the TPC are independent of its liability to Plaintiff under the TCPA in the underlying action, which involves analysis of and arguments regarding whether the Court has supplemental jurisdiction and whether diversity jurisdiction exists.

16. Consumer Nsight believes all these dismissal arguments are meritorious and deserve consideration from the Court when assessing the viability of the TPC. However, Consumer Nsight cannot fully and reasonably develop these dismissal arguments within the 15-page limit imposed by Local Rule 7.1.

17. Counsel for Consumer Nsight has contacted counsel for Allied First, and Allied First does not oppose this Motion or Consumer Nsight's request for leave to file an oversized memorandum in support of its forthcoming motion to dismiss not to exceed 23 pages, nor will Consumer Nsight oppose a similar request by Allied First should Allied First seek leave to file an oversized brief up to 23 pages in response to Consumer Nsight's motion to dismiss.

WHEREFORE, third-party defendant Consumer Nsight LLC respectfully requests that this Court enter an order granting it leave to file an oversized memorandum in support of its forthcoming motion to dismiss defendant/third-party plaintiff Allied First Bank, SB's Third Party Complaint, not to exceed 23 pages, and granting such other relief the Court deems just and appropriate.

Dated: October 23, 2024

Respectfully submitted,

**CONSUMER NSIGHT LLC**

By: /s/ Andrew D. LeMar
One of Its Attorneys

Andrew D. LeMar
Burke, Warren, MacKay & Serritella, P.C.
330 North Wabash Avenue, Suite 2100
Chicago, Illinois 60611-3607
Telephone: (312) 840-7000
Facsimile: (312) 840-7900
alemar@burkelaw.com

**CERTIFICATE OF SERVICE**

On October 23, 2024, the undersigned caused the foregoing Third-Party Defendant Consumer Nsight LLC's Unopposed Motion for Leave to File an Oversized Brief to be filed electronically with the Northern District of Illinois, and served upon all parties registered to receive notice via the Court's CM/ECF system.

                                            /s/ Andrew D. LeMar
                                              Andrew D. LeMar

4894-0145-6370, v. 1