# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SAMUEL KATZ, individually and on behalf of all others similarly situated | )<br>)<br>) |
| Plaintiff, | ) Case No. 1:22-cv-05277<br>) |
| v. | ) Judge Robert W. Gettleman<br>) Magistrate Judge Maria Valdez |
| ALLIED FIRST BANK, SB, | )<br>) |
| Defendant. | )<br>)<br>) |
| ALLIED FIRST BANK, SB | )<br>) |
| Third-Party Plaintiff, | )<br>) |
| v. | )<br>) |
| CONSUMER NSIGHT LLC, | )<br>)<br>) |
| Third-Party Defendant. | ) |

**THIRD-PARTY DEFENDANT CONSUMER NSIGHT LLC'S MOTION TO DISMISS ALLIED FIRST BANK, SB'S THIRD PARTY COMPLAINT PURSUANT TO <u>FED. R. CIV. P. 12(B)(1), 12(B)(2), 12(B)(5), AND 12(B)(6)</u>**

Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6), third-party defendant Consumer Nsight LLC ("Consumer Nsight"), by and through its undersigned counsel, hereby moves to dismiss defendant/third-party plaintiff Allied First Bank, SB's ("Allied First") Third Party Complaint (Dkt. No. 79; "TPC"). In support of its motion, Consumer Nsight states as follows:

1. On September 27, 2022, Plaintiff filed his original complaint in this action, naming Allied First as the only defendant. (Dkt. No. 1.) On July 1, 2023, Plaintiff filed a First Amended Complaint ("FAC"), adding Consumer Nsight as a defendant. (Dkt. No. 26.) In his FAC, Plaintiff alleges Allied First and Consumer Nsight made telemarketing calls to Plaintiff in violation of the of

the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). (*See* FAC ¶¶ 3, 11, 32.) Specifically, the FAC alleges Consumer Nsight "placed telemarketing calls for Allied First" to Plaintiff, and Consumer Nsight "transferred" Plaintiff to Allied First's call center. (*Id.* ¶¶ 21, 38.) Plaintiff claims these alleged calls, only one of which was allegedly "transferred" by Consumer Nsight to Allied First, violated the TCPA because his phone number was on the National Do-Not-Call registry. (*Id.* ¶ 20.)

2. Consumer Nsight moved to dismiss the FAC pursuant to Rule 12(b)(2), arguing the Court lacks personal jurisdiction over it. (Dkt. No. 35.) Before the Court ruled on that motion, pursuant to a stipulation of dismissal filed on April 26, 2024 and the related order entered on April 29, 2024, Plaintiff's claims against Consumer Nsight were dismissed with prejudice. (Dkt. Nos. 63-64.)

3. On May 23, 2024, Allied First moved for leave to amend its answer and affirmative defenses to the FAC and to file third-party claims against Consumer Nsight. (Dkt. No. 70 at 3-4.) On July 15, 2024, the Court granted Allied First's motion. (Dkt. No. 78.) On August 5, 2024, Allied First filed its Amended Answer to the FAC with Affirmative Defenses and Third Party Claims. (Dkt. No. 79.)

4. In its TPC, Allied First alleges that, in early 2022, it entered into an agreement with Consumer Nsight "for Consumer Nsight to provide prescreened refinance live transfers to Allied First." (TPC ¶¶ 9-11.) Allied First alleges Consumer Nsight obtained leads for individuals who were interested in "potential mortgage options" and who had previously provided their contact information and written consent to be contacted by cellular phone "to certain sources with whom Consumer Nsight had relationships." (*Id.* ¶ 12.) Allied First further alleges that it expected the calls would be made in compliance with the TCPA. (*Id.* ¶ 14.)

2

5. Allied First further alleges Consumer Nsight used a third-party call center, Iconic Results, "to have calls transferred to Allied First based on leads obtained by Consumer Nsight" (*id.* ¶ 17) and that under Allied First's agreement with Consumer Nsight, "the transfers started on or around February 3, 2022, and continued until on or around April 8, 2022." (*Id.* ¶ 18.) Allied First alleges that, when calling individuals based on leads provided by Consumer Nsight, Iconic Results asked the individual about their mortgage needs, and if the individual met parameters provided by Allied First or other financial institutions, Iconic Results would transfer the call to Allied First or another financial institution. (*See id.* ¶¶ 19-21.)

6. Allied First alleges that, in June 2021, Plaintiff, using the alias "James Weim," "entered that name and Plaintiff's own address, phone number, and email" into a website for individuals interested in mortgage options used as a source for leads by Consumer Nsight. (*Id.* ¶¶ 15-16, 22.) Allied First further alleges, on March 7, 2022, Iconic Results called the phone number provided with the name "James Weim," but that the person who answered the phone was actually Plaintiff, and after the individual indicated his interest in a mortgage, Iconic Results transferred the call to Allied First. (*See id.* ¶¶ 23-24.) Allied First also alleges "Iconic Results previously attempted to contact James Weim at the number provided at least five times before the March 7, 2022 call" (*id.* ¶ 25), though those calls were not necessarily made on behalf of Allied First and could have been transferred to other financial institutions. (*Id.* ¶ 26.)

7. Allied First alleges that it "did not initiate any calls to Plaintiff, but instead received transfers initiated by Iconic Results" and "Consumer Nsight engaged and instructed Iconic Results to make the calls and transfers." (*Id.* ¶ 27.) Allied First also notes that Plaintiff alleges the calls violated the TCPA, named Allied First as a defendant, and Allied first denies any liability under the TCPA. (*Id.* ¶ 28.)

3

8. In the TPC, Allied First asserts three claims against Consumer Nsight.

9. The first count is for breach of contract. Allied First alleges "[a] contract existed between Allied First and Consumer Nsight for Consumer Nsight to provide prescreened refinance live transfers to Allied First" (*id.* ¶ 30), and "[i]nherent in this contract was that the live transfers would not violate any laws and that Consumer Nsight would be obligated to indemnify Allied First in the event of a breach." (*Id.* ¶ 32.) Allied First further alleges that, if Plaintiff's TCPA claims are "adjudicated to be valid, then Consumer Nsight materially breached this contract by failing to provide transfers to Allied First generated via lawful means," Consumer Nsight caused any TCPA violation, and Consumer Nsight violated the implied duty of good faith and fair dealing. (*Id.* ¶¶ 34-36.)

10. In its second count, which is pled in the alternative to the breach of contract claim, Allied First brings a claim for breach of implied contract. Allied First alleges that there was an implied contract with Consumer Nsight to provide "prescreened refinance live transfers" based on Allied First's payment to Consumer Nsight after receiving a proposal from Consumer Nsight and Iconic Results's transfer of calls to Allied First for two months. (*See id.* ¶¶ 40-46.) Allied First alleges "[i]nherent in this contract was that the live transfers would not violate any laws and that Consumer Nsight would be obligated to indemnify Allied First in the case of a breach," if Plaintiff's TCPA claims are "adjudicated to be valid, Consumer Nsight materially breached this contract by failing to provide transfers to Allied First generated via lawful means," and Consumer Nsight caused any TCPA violation, and Consumer Nsight violated the implied duty of good faith and fair dealing. (*Id.* ¶¶ 44, 47-48.)

11. In its third count, Allied First asserts a claim for indemnification, alleging that under either the express or implied contract, "Consumer Nsight had an obligation to provide live transfers

4

to Allied First that did not violate any laws" and "is obligated to indemnify Allied First in the case of a breach." (*Id.* ¶¶ 52-53.) Allied First alleges "Consumer Nsight breached its obligation to provide live transfers that did not violate any laws to Allied First," and "[t]o the extent Allied First is liable to Plaintiff for damages related to said breach, Consumer Nsight is liable to Allied First under either the express contract or alternatively, the implied contract." (*Id.* ¶¶ 54, 56.)

12. Allied First does not allege whether its claims arise under the laws of Arizona (where Iconic Results and the Allied First branch for which Consumer Nsight provided services were located), Florida (where Consumer Nsight is located), or Illinois (where this action is pending).

13. On August 28, 2024, Allied First had a summons issued to Consumer Nsight. On September 13, 2024, a summons and the TPC were purportedly served on Consumer Nsight by certified mail.

14. As the exhibits to Consumer Nsight's memorandum in support of this Motion demonstrate, Consumer Nsight is a Florida limited liability company with its place of business in Florida. Consumer Nsight has never done business in Illinois, been registered to do business in Illinois, had any offices in Illinois, entered into any contracts in Illinois, owned any property in Illinois, or otherwise had any contacts with Illinois. Consumer Nsight, does not make, dial, or otherwise initiate telemarketing calls from or to any state, including Illinois, and Consumer Nsight does not direct telemarketing calls to residents of Illinois.

15. Consumer Nsight provided advertising consultant services to Allied First, which included consulting services for live contact telephone call transfers from a call center – which is unaffiliated with Consumer Nsight and not located in Illinois – to Allied Bank representatives, but the only Allied First branch location with which Consumer Nsight provided consulting services is located in Arizona.

5

16. Consumer Nsight did not call Plaintiff or direct any communication to Plaintiff within the State of Illinois or otherwise, and did not transfer a call made to Plaintiff to a location in Illinois. In fact, Consumer Nsight has never communicated with Plaintiff or attempted to communicate with Plaintiff in any way.

17. The Court should dismiss the TPC for several reasons.

18. First, the Court should dismiss the TPC pursuant to Fed. R. Civ. P. 12(b)(5) because Allied First improperly served the TPC on Consumer Nsight by certified mail, which is not a proper method of service of process under federal, Florida, or Illinois law. *See* Fed. R. Civ. P. 4(h)(1)(B); 735 ILCS 5/2-203, 204; *Goode v. PennyMac Loan Servs., LLC*, No. 14 C 01900, 2014 U.S. Dist. LEXIS 161484, at *35 (N.D. Ill. Nov. 18, 2014) ("Certified mail is thus not listed as an appropriate method of serving corporations in the text of the Federal Rules or the relevant [Illinois] statutes.") (citations omitted); Fla. R. Civ. P. 1.070; *Transp. & Gen. Ins. Co. v. Receiverships of Ins. Exch.*, 576 So. 2d 1351, 1352 (Fla. Dist. Ct. App. 1991) ("There is no statutory authority, or authority under Rule 1.070, Florida Rules of Civil Procedure, for serving appellant only by certified mail, as was done here.")).

19. Second, the Court should dismiss the TPC pursuant to Fed. R. Civ. P. 12(b)(2) because the Court lacks personal jurisdiction over Consumer Nsight, which, as shown by the declaration of Consumer Nsight's CEO, which is attached to the supporting memorandum, is a Florida limited liability company with its only place of business in Florida, does not do business in Illinois, did not purposely avail itself of the protections and benefits of Illinois law, and has not had sufficient contacts with Illinois to subject it to jurisdiction in Illinois. *E.g.*, *Shanahan v. Nat'l Auto Prot. Corp.*, No. 1:19-cv-03788, 2020 WL 3058088, at *2-3 (N.D. Ill. June 9, 2020)

20. Third, the Court should dismiss the TPC pursuant to Fed. R. Civ. P. 12(b)(6) because the gravamen of each of Allied First's claims is for indemnity if Allied First is found liable to Plaintiff

in the underlying action under the TCPA, but well-established case law demonstrates such claims for indemnity – regardless of how they are pled – are not available under the TCPA. *See Snyder v. U.S. Bank N.A.*, No. 16 C 11675, 2019 WL 3080924, at *5 (N.D. Ill. July 14, 2019) ("[T]he TCPA does not confer any right to contribution or indemnification.") (citing *Glen Ellyn Pharm., Inc. v. Meda Pharms., Inc.*, No. 09 C 4100, 2011 WL 6156800, at *3 (N.D. Ill. Dec. 9, 2011) ("[T]here is no right to contribution under the TCPA."); *Garrett v. Ragle Dental Lab., Inc.*, No. 10 C 1315, 2011 WL 2637227, at *1-2 (July 6, 2011) (holding there is no right to indemnification or contribution under the TCPA)). In addition, the TPC does not allege facts to state a claim for breach of contract (express or implied) under Arizona, Florida, or Illinois law, as Allied First does not allege the essential terms of any alleged contract, that any alleged contract required Consumer Nsight to indemnify Allied First, that Consumer Nsight breached any term of any alleged contract, or that Allied First has suffered any present damage as a result of any alleged breach.

21. Fourth, if Allied First takes the position that its claims are independent of the Plaintiff's TCPA claim against Allied First, the TPC should be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) because Allied First either seeks indemnification under the TCPA (a claim that it cannot assert) or asserts independent claims under state law over which this Court does not have supplemental jurisdiction under 28 U.S.C. § 1367. Likewise, Allied First cannot allege diversity jurisdiction under 28 U.S.C. § 1332.

22. Consumer Nsight's grounds for dismissal are further set forth and supported in its Memorandum in Support of Third-Party Defendant Consumer Nsight LLC's Motion to Dismiss Allied First Bank, SB's Third Party Complaint Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6) and supporting exhibits, filed contemporaneously herewith.

WHEREFORE, third-party defendant Consumer Nsight LLC respectfully requests that this Court enter an order dismissing Allied First Bank, SB's Third Party Complaint with prejudice, and granting such further and additional relief as this Court deems just and appropriate.

Dated: October 25, 2024            Respectfully submitted,

**CONSUMER NSIGHT LLC**

By: <u>/s/ Andrew D. LeMar</u>
One of Its Attorneys

Andrew D. LeMar
Burke, Warren, MacKay & Serritella, P.C.
330 North Wabash Avenue, Suite 2100
Chicago, Illinois 60611-3607
Telephone: (312) 840-7000
Facsimile: (312) 840-7900
alemar@burkelaw.com

## **CERTIFICATE OF SERVICE**

On October 25, 2024, the undersigned caused the foregoing Third-Party Defendant Consumer Nsight LLC's Motion to Dismiss Allied First Bank, SB's Third Party Complaint Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6), to be filed electronically with the Northern District of Illinois, and served upon all parties registered to receive notice via the Court's CM/ECF system.

/s/ Andrew D. LeMar
Andrew D. LeMar

4870-3503-9986, v. 1