**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SAMUEL KATZ, individually and on behalf of all others similarly situated | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:22-cv-05277 |
| v. | ) ) ) | Judge Robert W. Gettleman Magistrate Judge Maria Valdez |
| ALLIED FIRST BANK, SB, | ) ) | |
| Defendant. | ) ) ) | |
| _____ | ) | |
| ALLIED FIRST BANK, SB | ) ) | |
| Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| CONSUMER NSIGHT LLC, | ) ) | |
| Third-Party Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF THIRD-PARTY DEFENDANT
CONSUMER NSIGHT LLC'S MOTION TO DISMISS ALLIED FIRST BANK, SB'S
THIRD PARTY COMPLAINT PURSUANT TO
FED. R. CIV. P. 12(B)(1), 12(B)(2), 12(B)(5), AND 12(B)(6)**

Andrew D. LeMar
Burke, Warren, MacKay & Serritella, P.C.
330 North Wabash Avenue, Suite 2100
Chicago, Illinois 60611-3607
Telephone: (312) 840-7000
Facsimile: (312) 840-7900
Email:  alemar@burkelaw.com

*Attorneys for Third-Party Defendant
Consumer Nsight LLC*

# **Table of Contents**

**FACTUAL AND PROCEDURAL BACKGROUND** ...................................................... 1

    Plaintiff's Complaints ........................................................................................... 1

    The TPC .................................................................................................................. 2

    Consumer Nsight's Lack of Contacts with Illinois ............................................ 3

**ARGUMENT** ................................................................................................................... 4

    I. THE COURT SHOULD DISMISS THE TPC PURSUANT TO FED. R. CIV. P. 12(B)(5). ........................................................................................................ 4

    II. THE COURT SHOULD DISMISS THE TPC PURSUANT TO FED. R. CIV. P. 12(B)(2) FOR LACK OF PERSONAL JURISDICTION OVER CONSUMER NSIGHT .... 6

    III. THE TPC SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(6). ..... 10

        A.  The Court Should Dismiss All Claims Because There is Not Right to Indemnity Under the TCPA. ....................................................................................... 10

        B.  The TPC Fails to State a Plausible Claim for Breach of Contract. ............................ 13

        C.  The TPC Fails to State a Plausible Claim for Breach of an Implied Contract ........... 18

    IV. ALTERNATIVELY, THE COURT SHOULD DISMISS THE TPC PURSUANT TO FED. R. CIV. P. 12(B)(1) BECAUSE THIS COURT LACKS SUBJECT MATTER JURISDICITON OVER ALLIED FIRST'S CLAIMS ......................................................... 20

**CONCLUSION** ............................................................................................................. 23

# Table of Cases

*Acosta v. AEU Benefits, LLC*, No. 17 C 7931, 2019 WL 8301677, at *4 (N.D. Ill. May 13, 2019)..7, 8

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014)....................................................................................................................................8

*Ananthapadmanabhan v. BSI Fin. Servs., Inc.*, No. 15 C 5412, 2015 WL 8780579, at *1 (N.D. Ill. Dec. 15, 2015)..................................................................................................................10, 15

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................................10

*Bennett v. Celtic Ins. Co.*, No. 1:20-cv-06172, 2022 WL 767148, at *3 (N.D. Ill. Mar. 14, 2022)....9

*Brody v. Finch Univ. of Health Sci./The Chi. Med. Sch.*, 698 N.E.2d 257, 265 (Ill. App. 1998) .....19

*Brooks v. Ampcus, Inc.*, No. 6:23-cv-1756-CEM-DCI, 2024 U.S. Dist. LEXIS 17954, at *4 (M.D. Fla. Feb. 1, 2024) ...................................................................................................................17

*Carroll v. SGS N. Am. Inc.*, No. CV 16-537-SDD-RLB, 2018 WL 4001457, at *2 (M.D. La. Aug. 21, 2018).................................................................................................................................13

*Catapult Commc'ns Corp. v. Foster*, No. 06 VC 6112, 2009 WL 1469813, at *1 (N.D. Ill. May 27, 2009)..................................................................................................................................21

*Circle K Procurement & Brands Ltd. v. Goli Nutrition Inc.*, No. CV-23-01417-PHX-DJH, 2024 WL 1639143, at *2 (D. Ariz. Apr. 16, 2024) .............................................................................14

*Credit Servs. of Am. Inc. v. Kohuth*, No. 86 C 5298, 1987 WL 5678, at *1 (N.D. Ill. Jan. 16, 1987) .................................................................................................................................................18

*Cunningham v. Consol. World Travel, Inc.*, No. 19-62504-CIV, 2020 U.S. Dist. LEXIS 113132, at *3 (S.D. Fla. June 25, 2020)............................................................................................................6

*Dornhecker v. Ameritech Corp.*, 99 F. Supp. 2d 918, 929 (N.D. Ill. 2000) .....................................22

*Envtl. Progress, Inc. v. Metro. Life Ins. Co.*, No. 12-cv-80907, 2013 WL 12084488, at *3 (S.D. Fla. April 1, 2013)....................................................................................................................11, 13

*Gannon v. Truly Nolen of Am. Inc.*, No. CV 22-428-TUC-JAS, 2023 U.S. Dist. LEXIS 181410, at *7 (D. Ariz. Aug. 31, 2023)............................................................................................................20

*Garcia v. Diaz*, 752 F. App'x 927, 930 (11th Cir. 2018) ...............................................................14

*Garrett v. Ragle Dental Lab., Inc.*, No. 10 C 1315, 2011 WL 2637227, at *1-2 (July 6, 2011) ......11

*GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009).......................7

*Glen Ellyn Pharm., Inc. v. Meda Pharms., Inc.*, No. 09 C 4100, 2011 WL 6156800, at *3 (N.D. Ill. Dec. 9, 2011)........................................................................................................................11

*Goode v. PennyMac Loan Servs., LLC*, No. 14 C 01900, 2014 U.S. Dist. LEXIS 161484, at *35 (N.D. Ill. Nov. 18, 2014) ...............................................................................................................6

*Health Indus. Bus. Commc'ns Council Inc. v. Animal Health Inst.*, 481 F. Supp. 3d 941, 960 (D. Ariz. 2020)...............................................................................................................................18

*Hexacomb Corp. v. GTW Enterprises, Inc.*, No. 93 C 3107, 1994 WL 174114, at *3 (N.D. Ill. May 5, 1994)...................................................................................................................................9

*In re Banner Health Data Breach Litig.*, No. CV-16-02696-PHX-SRB, 2018 WL 11352137, at *2 (D. Ariz. Aug. 7, 2018).................................................................................................................19

*In re Sheehan*, 48 F. 4th 513, 520 (7th Cir. 2022) ......................................................................6, 8

*Khan v. Presence St. Mary & Elizabeth Hosps.*, No. 20 C 3819, 2020 U.S. Dist. LEXIS 214751, at *12 (N.D. Ill. Nov. 17, 2020) .......................................................................................................5

*Landale Signs & Neon, Ltd. v. Runnion Equip. Co.*, No. 16-cv-7619, 2016 U.S. Dist. LEXIS 177195, at *19 (N.D. Ill. Dec. 22, 2016) .........................................................................................20

*Lemieux v. Lender Processing Ctr.*, No. 16- CV-01850-BAS-DHB, 2018 WL 637945, at *3 (S.D. Cal. Jan. 31, 2018) ........................................................................................................... 11

*Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019) .......................................... 7

*Mid-Continent Wood Prods., Inc. v. Harris*, 936 F.2d 297, 301 (7th Cir. 1991) ................... 5

*Myers v. Mundelein Coll.*, 771 N.E.2d 1113, 1116 (Ill. App. 2002) .................................... 17

*NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 620 (7th Cir. 2022) ......................................... 7

*New 75th & Cottage Currency Exch., Inc. v. United States Postal Serv.*, No. 17 C 6653, 2018 U.S. Dist. LEXIS 103334, at *4 (N.D. Ill. June 20, 2018) ........................................ 5

*Orthopaedic Care Specialists, P.L. v. Aetna Life Ins. Co.*, No. 9:22-CV-81904-BER, 2023 U.S. Dist. LEXIS 79974, at *8 (S.D. Fla. May 8, 2023) .................................................. 20

*Physicians Healthsource, Inc. v. A-S Medication Solutions, LLC*, No. 12 C 5105, 2018 U.S. Dist. LEXIS 200132, at *6 (N.D. Ill. Nov. 27, 2018) ................................................... 23

*Pierce v. State Farm. Mut. Auto. Ins. Co.*, No. 14-cv-22691-WILLIAMS, 2014 WL 7671718, at *4 (S.D. Fla. 2014) ..................................................................................... 14

*Purdue Rsch. Found. v. Sanofi-Sunthelabo, S.A.*, 388 F.3d 773, 782 (7th Cir. 2003) .......... 7

*Revive You Media LLC v. Esquire Bank*, No. CV-18-00541-PHX-DGC, 2018 WL 2164379, at *5 (D. Ariz. May 10, 2018) ........................................................................... 18

*Riverwalk Condo. Unit Owners Ass'n v. Travelers Indem. Co.*, 2018 WL 3774084, at *2 (D. Ariz. June 28, 2018) .................................................................................................. 14

*Rizzi v. Calumet City*, 11 F. Supp. 2d 994, 995 (N.D. Ill. 1998) ........................................ 21

*Rosen* v. *Mystery Method, Inc.*, No. 07 C 5727, 2008 U.S. Dist. LEXIS 10461, at *5 (N.D. Ill. Feb. 13, 2008) ............................................................................................................. 5

*Ruderman v. Bank of Am., N.A.*, No. 10 C 6153, 2012 WL 4795705, at *2 (N.D.Ill. Oct. 9, 2012) 21

*Schmitendorf v. Juicy's Vapor Lounge, Inc.*, No. 22-CV-02293-TC-GEB, 2024 WL 959587 (D. Kan. Mar. 6, 2024) .................................................................................................... 12

*Shanahan v. Nat'l Auto Prot. Corp.*, No. 1:19-cv-03788, 2020 WL 3058088, at *2 (N.D. Ill. June 9, 2020) ................................................................................................................ 7, 10

*Sims v. Midway Broad. Corp.*, No. 22-cv-03743, 2023 U.S. Dist. LEXIS 184394, at *4 (N.D. Ill. Oct. 13, 2023) ............................................................................................................. 4

*Skinner v. Tel-Drug, Inc.*, No. CV-16-00236-TUC-JGZ (BGM), 2017 U.S. Dist. LEXIS 12427, at *7-8 (D. Ariz. Jan. 27, 2017) ....................................................................................... 17

*Snow v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 896 So. 2d 787, 792 (Fla. Dist. Ct. App. 2005) .............................................................................................................. 18

*Snyder v. U.S. Bank N.A.*, No. 16 C 11675, 2019 WL 3080924, at *5 (N.D. Ill. July 14, 2019) ...... 11

*Solvay USA v. Cutting Edge Fabrication, Inc.*, 521 F. Supp. 718, 723 (N.D. Ill. 2021) ............ 15

*Timm v. Mead Corp.*, 32 F.3d 273, 277 (7th Cir.1994) ...................................................... 22

*Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, 275 F. Supp. 3d 1332, 1342 (S.D. Fla. 2017) ...... 19

*Transp. & Gen. Ins. Co. v. Receiverships of Ins. Exch.*, 576 So. 2d 1351, 1352 (Fla. Dist. Ct. App. 1991) . 6

*U.S. Liab. Ins. Co. v. Fassbinder United Builders, Inc.*, No. 99 C 50330, 2002 WL 1359428, at *1 (N.D. Ill. June 20, 2002) ................................................................................................. 22

*Vioski v. Calaveras Asbestos, Ltd.*, 929 F.2d 352, 354 (7th Cir. 1991) ................................. 9

*Wilda v. JLG Indus., Inc.*, 470 F. Supp. 3d 770 (N.D. Ill. 2020) ........................................ 15

*Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008) .................................... 17, 19

In its Third Party Complaint (Dkt. No. 79; "TPC"), Allied First Bank, SB attempts to bring three claims against third-party defendant Consumer Nsight LLC based on the possibility in the future that the Court might find Allied First liable to Plaintiff for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). The Court should dismiss the TPC for several reasons. *First*, the Court should dismiss the TPC pursuant to Fed. R. Civ. P. 12(b)(5) because Allied First improperly served the TPC on Consumer Nsight by certified mail. *Second*, the Court should dismiss the TPC pursuant to Fed. R. Civ. P. 12(b)(2) because the Court lacks personal jurisdiction over Consumer Nsight, which, as shown by the Declaration of Consumer Nsight's CEO, Richard Sabatino ("Sabatino Decl."; attached as Ex. 1), does not do business in Illinois, did not purposely avail itself of the protections and benefits of Illinois law, and has not had sufficient contacts with Illinois to subject it to jurisdiction in Illinois. *Third*, the Court should dismiss the TPC pursuant to Fed. R. Civ. P. 12(b)(6) because: (1) the gravamen of each of Allied First's claims is for indemnity if Allied First is found liable to Plaintiff in the underlying action under the TCPA, but well-established case law demonstrates such claims for indemnity – regardless of how they are pled – are not available under the TCPA; and (2) the TPC does not allege facts to state a claim for breach of contract (express or implied) under Arizona, Florida, or Illinois law. *Fourth*, if Allied First takes the position that its claims are independent of the Plaintiff's TCPA claim against Allied First, the TPC should be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) because Allied First either seeks indemnification under the TCPA (a claim that it cannot assert) or asserts independent claims under state law over which this Court does not have supplemental jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

**Plaintiff's Complaints.** On September 27, 2022, Plaintiff filed his original complaint, naming Allied First as the only defendant. (Dkt. No. 1.) On July 1, 2023, Plaintiff filed a First Amended Complaint ("FAC"), adding Consumer Nsight as a defendant. (Dkt. No. 26.) In his FAC,

Plaintiff alleges Allied First and Consumer Nsight made telemarketing calls to Plaintiff in violation of the TCPA. (*See* FAC ¶¶ 3, 11, 32.) Specifically, the FAC alleges Consumer Nsight "placed telemarketing calls for Allied First" to Plaintiff and Consumer Nsight "transferred" Plaintiff to Allied First's call center. (*Id.* ¶¶ 21, 38.) Plaintiff claims these alleged calls, only one of which was allegedly "transferred" by Consumer Nsight to Allied First, violated the TCPA because his phone number was on the National Do-Not-Call registry. (*Id.* ¶ 20.)

Consumer Nsight moved to dismiss the FAC pursuant to Rule 12(b)(2), arguing the Court lacks personal jurisdiction over it. (Dkt. No. 35.) Before the Court ruled on that motion, pursuant to a stipulation of dismissal filed on April 26, 2024 and the related order entered on April 29, 2024, Plaintiff's claims against Consumer Nsight were dismissed with prejudice. (Dkt. Nos. 63-64.)

**The TPC.** On May 23, 2024, Allied First moved for leave to amend its answer to the FAC and to file the TPC against Consumer Nsight. (Dkt. No. 70 at 3-4.) In requesting leave to file its TPC, Allied First argued that, "[t]o the extent Plaintiff may have valid claims, liability would lie against Iconic Results and Consumer Nsight." (*Id.* at 2.) The Court granted Allied First's motion and, on August 5, 2024, Allied First filed its Amended Answer to the FAC with Affirmative Defenses and Third Party Claims. (Dkt. No. 79.)

In its TPC, Allied First asserts claims for breach of contract, breach of implied contract (in the alternative), and indemnification. Allied First's breach of contract claims are based on allegations that "Consumer Nsight had an obligation to provide live transfers to Allied First that did not violate the laws" and "Consumer Nsight is obligated to indemnify Allied First in the case of a breach." (TPC ¶¶ 52-53.) Allied First claims that, "[t]o the extent any violation of the TCPA occurred with respect to the calls alleged in the First Amended Complaint, Consumer Nsight caused the violation" and, therefore, "[t]o the extent Allied First is liable to Plaintiff for damages related to said breach,

Consumer Nsight is liable to Allied First under either the express contract or, alternatively, the implied contract." (*Id.* ¶ 35, 56.)

Allied First does not attach any agreement to the TPC, allege the terms of any alleged agreement, allege whether the alleged contract was negotiated, accepted, or entered into in Illinois, or allege Consumer Nsight provided any services to Allied First in Illinois. In its Amended Answer to the FAC, which Allied First incorporated by reference in its TPC (*id.* ¶ 9), Allied First *denies* that it is headquartered in this district, denies that this Court has personal jurisdiction over it, and denies that it is a resident of this district. (Dkt. No. 79 at 4-5, ¶¶ 7, 10.) Allied First also affirmatively pleads that "[t]his Court lacks personal jurisdiction over Allied First." (*See* Eighth Affirmative Defense, Dkt. No. 79 at 20.) On August 28, 2024, Allied First had a summons issued to Consumer Nsight. On September 13, 2024, a summons and the TPC were purportedly served on Consumer Nsight by certified mail sent by Allied First's counsel to Consumer Nsight's registered office.  (*See* Sabatino Decl. ¶¶ 30-32; Exs. C-E to Sabatino Decl.)  Consumer Nsight has not been served with the summons or TPC by any other means. (Sabatino Decl. ¶ 33.)

**Consumer Nsight's Lack of Contacts with Illinois.** Consumer Nsight is a Florida limited liability company whose principal place of business and address is in Florida. (TPC ¶ 2; Sabatino Decl. ¶¶ 3-4.) Consumer Nsight does not and has never: (1) conducted business in Illinois; (2) been registered to do business in Illinois; (3) had an office or place of business in Illinois; (4) maintained a mailing address, post office box, telephone number or bank account in Illinois; (5) had a registered agent for service of process in Illinois; (6) directly solicited business in Illinois; (7) directly marketed its services in Illinois; (8) advertised in Illinois; (9) never placed or introduced any products into the stream of commerce anywhere in the United States, including in Illinois; (10) paid taxes in Illinois; (11) held any license of any kind in Illinois; or (12) owned any property in Illinois. (Sabatino Decl. ¶¶ 5-13.) No member of Consumer Nsight has ever resided in Illinois. (*Id.* ¶ 14.)

Consumer Nsight provided advertising consultant services to Allied First and part of those services included consulting for live contact telephone call transfers from a call center to Allied First representatives. (*Id.* ¶ 16.) The only Allied First branch location for which Consumer Nsight provided services to is located in Arizona. (*Id.* ¶¶ 20, 22). Consumer Nsight has never had a written contractual agreement with Allied First and has never made, dialed, or otherwise initiated any telemarketing calls for, on behalf of, or at the direction of Allied First. (*Id.* ¶ 20.)

The TPC alleges Consumer Nsight emailed Allied First a proposal on or about January 28, 2022, but does not attach a copy of the proposal to the TPC. (TPC ¶ 10). The proposal, a copy of which is attached to the Sabatino Declaration, was emailed by Mr. Sabatino from Florida to an Allied First agent located in Arizona. (Sabatino Decl. ¶¶ 21-22; Ex. A to Sabatino Decl.)[1] Consumer Nsight did not communicate with Allied First within Illinois and did not direct any communications to Allied First or Plaintiff in Illinois. (*Id.* ¶ 23.) Consumer Nsight did not call Plaintiff or direct any communication to Plaintiff within Illinois or otherwise, and did not transfer a call made to Plaintiff to a location in Illinois. (*Id.* ¶ 24.) The call center with which Consumer Nsight has a relationship is in Arizona, and it is not owned or operated by Consumer Nsight or any of its members, nor otherwise affiliated with Consumer Nsight. (*Id.* ¶¶ 18-19; Ex. B to Sabatino Decl., Interrog. Answer No. 3.)

## ARGUMENT

## I. THE COURT SHOULD DISMISS THE TPC PURSUANT TO FED. R. CIV. P. 12(B)(5).

As an initial matter, the Court should dismiss the TPC pursuant to Rule 12(b)(5) because Plaintiff failed to properly serve Consumer Nsight. Under Rule 14, "A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for

---

[1] A Court may consider certain extraneous documents when ruling on a Rule 12(b)(6) motion, including documents attached to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to his claim." *Sims v. Midway Broad. Corp.*, No. 22-cv-03743, 2023 U.S. Dist. LEXIS 184394, at *4 (N.D. Ill. Oct. 13, 2023) (citation and quotation marks omitted).

all or part of the claim against it." Fed R. Civ. P. 14(a)(1). *See also U.S. Bank Nat'l Ass'n v. Collins-Fuller T.*, No. 12 C 5057, 2015 U.S. Dist. LEXIS 56237, at *2 (N.D. Ill. Apr. 29, 2015) ("[A] third-party plaintiff . . . must provide a third-party defendant . . . with formal service of process.") (citations omitted). "[V]alid service of process is necessary in order to assert personal jurisdiction over a defendant." *Mid-Continent Wood Prods., Inc. v. Harris*, 936 F.2d 297, 301 (7th Cir. 1991) (citations and quotation marks omitted). Insufficient service of process warrants dismissal. Fed. R Civ. P. 12(b)(5). "When a defendant challenges the sufficiency of service of process, the plaintiff must make a prima facie showing of proper service by competent proof." *Rosen* v. *Mystery Method, Inc.,* No. 07 C 5727, 2008 U.S. Dist. LEXIS 10461, at *5 (N.D. Ill. Feb. 13, 2008) (citations omitted). "Competent proof" is defined as "proof to a reasonable probability that jurisdiction exists." *Id.* (citation and quotation marks omitted). "It is therefore proper to require a plaintiff to justify his [jurisdictional] allegations by a preponderance of evidence." *Id.* at *5-6 (citation and quotation marks omitted). In ruling on a motion under Rule 12(b)(5), the Court "may consider affidavits and other documentary evidence outside the pleadings." *New 75th & Cottage Currency Exch., Inc. v. U.S. Postal Serv.*, No. 17 C 6653, 2018 U.S. Dist. LEXIS 103334, at *4 (N.D. Ill. June 20, 2018) (citations and quotation marks omitted).

Here, Allied First's counsel attempted to serve Consumer Nsight by sending a summons and the TPC by certified mail. (Exs. C-E to Sabatino Decl.) However, service by certified mail is improper. *See* Fed. R. Civ. P. 4(h)(1)(B) (governing service on corporations, partnerships, and associations). Because Allied First did not properly serve Consumer Nsight under 4(h)(1)(B), the Court must look to service rules in Illinois (where this Court is located) and Florida (where service on Consumer Nsight is made). *See* Fed. R. Civ. P. 4(h)(1)(A), 4(e)(1). Illinois rules do not allow for service by mail on individuals or corporations. 735 ILCS 5/2-203, 204; *Khan v. Presence St. Mary & Elizabeth Hosps.*, No. 20 C 3819, 2020 U.S. Dist. LEXIS 214751, at *12 (N.D. Ill. Nov. 17, 2020) ("In Illinois, service on individual defendants through the United States Postal Service by certified mail is not permitted under the statute.") (collecting cases); *Goode*

*v. PennyMac Loan Servs., LLC*, No. 14 C 01900, 2014 U.S. Dist. LEXIS 161484, at *35 (N.D. Ill. Nov. 18, 2014) ("Certified mail is thus not listed as an appropriate method of serving corporations in the text of the Federal Rules or the relevant [Illinois] statutes.") (citations omitted). "Florida law permits service by certified mail, but only if the defendant agrees to waive personal service." *Bufkin v. Scottrade, Inc.*, 812 F. App'x 838, 844 (11th Cir. 2020) (citing Fla. R. Civ. P. 1.070(i); *Transp. & Gen. Ins. Co. v. Receiverships of Ins. Exch.*, 576 So. 2d 1351, 1352 (Fla. Dist. Ct. App. 1991) ("There is no statutory authority, or authority under Rule 1.070, Florida Rules of Civil Procedure, for serving appellant only by certified mail, as was done here.")). *See also Cunningham v. Consol. World Travel, Inc.*, No. 19-62504-CIV, 2020 U.S. Dist. LEXIS 113132, at *3 (S.D. Fla. June 25, 2020) (dismissing complaint for improper service where defendant Florida limited liability company was served by certified mail, but did not waive personal service). Here, Allied First did not send any waiver of service to Consumer Nsight, nor did Consumer Nsight agree to waive personal service. (Sabatino Decl. ¶¶ 32-33.) Therefore, Allied First's attempted service of the summons and the TPC on Consumer Nsight by certified mail was improper under federal, Illinois, and Florida law, and the Court should dismiss the TPC pursuant to Rule 12(b)(5) for insufficient service of process.

## II. THE COURT SHOULD DISMISS THE TPC PURSUANT TO FED. R. CIV. P. 12(B)(2) FOR LACK OF PERSONAL JURISDICTION OVER CONSUMER NSIGHT.

Even if Consumer Nsight was properly served, the Court should dismiss the TPC pursuant to Rule 12(b)(2) because this Court does not have personal jurisdiction over Consumer Nsight. Rule 12(b)(2) requires dismissal of an action when the court lacks personal jurisdiction over the defendant. *See* Fed. R. Civ. P. 12(b)(2). When a defendant moves to dismiss under Rule 12(b)(2), "the plaintiff bears the burden of demonstrating that jurisdiction exists." *In re Sheehan*, 48 F. 4th 513, 520 (7th Cir. 2022) (citation omitted). A plaintiff must establish a *prima facie* case of personal jurisdiction, unless the Court holds an evidentiary hearing, in which case a plaintiff must establish personal jurisdiction

by a preponderance of the evidence. *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 620 (7th Cir. 2022); *Purdue Rsch. Found. v. Sanofi-Sunthelabo, S.A.*, 388 F.3d 773, 782 (7th Cir. 2003).

The Court may consider affidavits and jurisdictional discovery to decide whether the plaintiff has made a *prima facie* case. *Purdue Rsch. Found.*, 388 F.3d at 782-83. When the defendant "submit[s] evidence opposing the district court's exercise of personal jurisdiction, the plaintiff[] must similarly submit affirmative evidence supporting the court's exercise of jurisdiction." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). The Court also accepts as true any unrefuted facts in the defendant's supporting materials. *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009).

> In Illinois, a plaintiff must meet a two-step test for asserting personal jurisdiction over an out-of-state defendant. First, the plaintiff must show that jurisdiction is proper under the Illinois long-arm statute. Second, the plaintiff must show that personal jurisdiction satisfies constitutional due process standards. Because Illinois permits personal jurisdiction if it would be authorized by either the Illinois Constitution or the United States Constitution, the state statutory and federal constitutional requirements merge.

*Acosta v. AEU Benefits, LLC*, No. 17 C 7931, 2019 WL 8301677, at *4 (N.D. Ill. May 13, 2019) (internal citations and quotations omitted).

Here, Allied First does not, and cannot, demonstrate that personal jurisdiction exists over Consumer Nsight. Personal jurisdiction can be general or specific. With respect to general jurisdiction over a corporate entity, "this Court may only exercise general personal jurisdiction in the state of the corporation's principal place of business and the state of its incorporation." *Shanahan v. Nat'l Auto Prot. Corp.*, No. 1:19-cv-03788, 2020 WL 3058088, at *2 (N.D. Ill. June 9, 2020) (citation omitted). Here, Allied First does not allege Consumer Nsight's principal place of business is in Illinois or that it is organized under Illinois law, and nor could it, as Consumer Nsight is a Florida limited liability company with its principal place of business in Florida. (Sabatino Decl. ¶¶ 3-4.) Thus, general jurisdiction does not exist over Consumer Nsight.

Allied First does not and cannot allege facts to support specific jurisdiction. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Acosta*, 2019 WL 8301677, at \*5 (citation and quotation marks omitted). This Court may exercise specific personal jurisdiction only when: "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Id*. (citation and quotation marks omitted). A defendant's conduct must connect him with the forum in a "meaningful way," which is "one in which defendants 'purposefully directed' their actions at the forum." *Sheehan,* 48 F. 4th at 523 (citations and quotation marks omitted). "In short, express aiming remains the crucial requirement when a plaintiff seeks to establish personal jurisdiction." *Id*. at 525 (citation and quotation marks omitted).

Allied First does not allege Consumer Nsight has any contact whatsoever with Illinois. Allied First alleges "this Court has personal jurisdiction over Consumer Nsight because Consumer Nsight entered into a contract with and provided services to Allied First, which is headquartered in the Northern District of Illinois." (Dkt. No. 79, p. 26, ¶ 6). The fact that Allied First may have or maintain an office in Illinois (or may be headquartered in Illinois) does not satisfy the requirements for personal jurisdiction. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc*., 751 F.3d 796, 801 (7th Cir. 2014) ("[T]he relation between the defendant and the forum must arise out of contacts that the defendant *himself* creates with the forum . . . . Contacts between the plaintiff or other third parties and the forum do not satisfy this requirement." (citations and quotation marks omitted; emphasis in original). As this Court as already ruled, the mere fact that Consumer Nsight may have done business with a company located in Illinois is not sufficient to establish personal jurisdiction over Consumer Nsight. (Dkt. No. 46 at 2 ("Plaintiff does argue, rather unconvincingly, that the court has personal jurisdiction over Consumer Nsight because it agreed to do business with an Illinois company to

market that company's services nationwide. Even if that were the law, which it is not, plaintiff has presented no evidence to support this statement.").) *See also Vioski v. Calaveras Asbestos, Ltd.*, 929 F.2d 352, 354 (7th Cir. 1991) (defendant was not doing business in Illinois where it had "long-term dealings" with Wisconsin branch of an Illinois corporation and even shipped some product into Illinois); *Bennett v. Celtic Ins. Co.*, No. 1:20-cv-06172, 2022 WL 767148, at *3 (N.D. Ill. Mar. 14, 2022) (entering into a contractual relationship with an Illinois company does not suffice to create specific jurisdiction, even when the underlying contract is governed by Illinois law); *Hexacomb Corp. v. GTW Enterprises, Inc.*, No. 93 C 3107, 1994 WL 174114, at *3 (N.D. Ill. May 5, 1994) ("Illinois courts distinguish between the transaction of business in Illinois and the transaction of business with an Illinois corporation. Only the former constitutes grounds for exercising in personam jurisdiction over a foreign defendant . . . .") (citation and quotation marks omitted).

While Allied First admits it "maintains an office" in Oswego, Illinois (Dkt. No. 79 at 4, ¶ 7), nowhere in the TPC is there any allegation that Consumer Nsight worked with, contracted, or provided any services to Allied First's office in Oswego, Illinois. Allied First also specifically denies that Consumer Nsight made or transferred any of the calls at issue, ***denies that it is a resident of this District, and denies this Court has personal jurisdiction over Allied First or Consumer Nsight***. (*Id.* at 5, ¶¶ 10-11). Allied First alleges its purported contract with Consumer Nsight "was negotiated by Allied First and Consumer Nsight over email and phone" and Consumer Nsight emailed Allied First a proposal outlining the quantity and price of prescreened refinance live transfers to Allied First on January 28, 2022 (TPC ¶¶ 9-10), but does not allege anyone involved in these communications or "negotiations" was located in Illinois. Nor could Allied First make such an allegation because Consumer Nsight is located in Florida, the Allied First representative with whom Consumer Nsight dealt regarding the proposal was located in Arizona, and the only Allied First branch location with which Consumer Nsight provided services is located in Arizona. (Sabatino Decl. ¶¶ 3-4, 20, 22.)

Furthermore, Consumer Nsight does not otherwise have any contacts with Illinois. (*Id.* ¶¶ 5-14, 24, 28.) Thus, Consumer Nsight did not purposefully direct its activities at Illinois residents, and this litigation did not result from alleged injuries that arise out of or relate to such activities. *See Shanahan,* 2020 WL 3058088 at *3. Because none of the requirements that must be met to establish specific personal jurisdiction are or can be satisfied, the TPC should be dismissed pursuant to Rule 12(b)(2).

## III.  THE TPC SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(6).

Even if the Court has personal jurisdiction over Consumer Nsight, the Court should nonetheless dismiss the TPC with prejudice pursuant to Rule 12(b)(6) because Allied First does not and cannot state any claim against Consumer Nsight. To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim for relief that is plausible on its face," meaning it must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "[L]abels and conclusions" and "formulaic recitation[s] of the elements of a cause of action" do not suffice, and "are not entitled to the assumption of truth" that attaches to a complaint's factual allegations. *Id.* at 678-79. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 679. When considering a Rule 12(b)(6) motion to dismiss, "[a] court need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ananthapadmanabhan v. BSI Fin. Servs., Inc.,* No. 15 C 5412, 2015 WL 8780579, at *1 (N.D. Ill. Dec. 15, 2015) (citations and quotation marks omitted).

### A.  The Court Should Dismiss All Claims Because There is Not Right to Indemnity Under the TCPA.

In its TPC, Allied First brings one claim for indemnification, and while its other two counts are couched in contract or quasi-contract terms, those claims also seek indemnification or

10

contribution, rather than any damages Allied First has presently suffered. All three claims should be dismissed because claims for indemnity or contribution are not available under the TCPA. *See Snyder v. U.S. Bank N.A.*, No. 16 C 11675, 2019 WL 3080924, at *5 (N.D. Ill. July 14, 2019) ("[T]he TCPA does not confer any right to contribution or indemnification.") (citing *Glen Ellyn Pharm., Inc. v. Meda Pharms., Inc.*, No. 09 C 4100, 2011 WL 6156800, at *3 (N.D. Ill. Dec. 9, 2011) ("[T]here is no right to contribution under the TCPA."); *Garrett v. Ragle Dental Lab., Inc.*, No. 10 C 1315, 2011 WL 2637227, at *1-2 (July 6, 2011) (holding there is no right to indemnification or contribution under the TCPA)). *See also Lemieux v. Lender Processing Ctr.*, No. 16- CV-01850-BAS-DHB, 2018 WL 637945, at *3 (S.D. Cal. Jan. 31, 2018) ("Like this Court, several courts considering the issue have concluded that claims for contribution and indemnity are not available under the TCPA."); *Envtl. Progress, Inc. v. Metro. Life Ins. Co.*, No. 12-cv-80907, 2013 WL 12084488, at *3 (S.D. Fla. April 1, 2013) ("Since the right to contribution or indemnification does not exist in the context of the TCPA, MetLife has failed to state a claim upon which relief can be granted.").[2]

Here, notwithstanding Allied First labeling two of its claims as being contractual in nature, all three of its claims are contingent on whether Allied First is found liable to Plaintiff for a TCPA violation in the underlying action. Allied First specifically alleges that "[i]nherent in" both the alleged express and implied contract was "that Consumer Nsight would be obligated to indemnify Allied First in the [event or case] of a breach." (TPC ¶ 32, 44.) Further, Allied First alleges that *if* it is liable to Plaintiff under the TCPA, *then* Consumer Nsight – the company that allegedly provided some type of services in relation to the call made to Plaintiff by a non-party – is liable to Allied First for indemnity. (*See* TPC ¶¶ 34-35, 47-48, 56). That Allied First seeks indemnification only is confirmed

---

[2] The determination of whether a contribution or indemnity claim can be asserted by a party who is liable for violating a federal statute is a question of federal rather than state law. *Glen Ellyn Pharm., Inc.*, 2011 WL 6156800, at *2. When a claim seeks contribution or indemnification for damages resulting from the violation of a federal statute, federal law applies to the claims. *Garrett*, 2011 WL 2637227, at *2.

by its motion for leave to file the TPC against Consumer Nsight, in which Allied First relied on Rule 14(a)(1). (Dkt. No. 70 at 4-9.) Rule 14(a)(1) states, "A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty **who is or may be liable to it for all or part of the claim against it**." Fed. R. Civ. P. 14(a)(1) (emphasis added). Allied First's claims rest on its *potential* TCPA liability, and that issue is a contribution or indemnification claim. Because the TCPA neither expressly nor impliedly creates a right of action for indemnity and there is no common law right to indemnification under federal law, Allied First's claims must be dismissed with prejudice.

Consumer Nsight anticipates Allied First may argue each of its claims arises under contract principles, not the TCPA. First, if Allied First's claims against Consumer Nsight are wholly independent of and do not rest upon Plaintiff's TCPA claim, then Allied First's claims are improper third-party claims under Rule 14(a).[3] Second, any attempt to characterize its claims as anything other than claims for indemnification should be rejected. In *Schmitendorf v. Juicy's Vapor Lounge, Inc.,* No. 22-CV-02293-TC-GEB, 2024 WL 959587 (D. Kan. Mar. 6, 2024), the court summarized cases in which "[o]ther defendants have tried—and failed—to obtain contribution for an alleged TCPA violation by couching their third-party claim as one arising under negligence principles," noting "[e]ach time, the district courts reject that attempt." *Id*. at *3. The court concluded the third-party plaintiff sought contribution for TCPA liability from the third party defendant who allegedly exposed it to that liability and "[i]t seems likely that Juicy's pled its claim as a negligence issue because federal law creates no right to contribution for damages paid under the TCPA." *Id*.

In *Envtl. Progress, Inc.*, the court held that "[w]hile MetLife claims that it is pursuing relief in the form of negligence, it is ultimately seeking to have Storick pay some or all of the costs associated with this case if it is found liable for violations of the TCPA, which is the functional

---

[3] And, as argued in Part IV, should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).

equivalent a claim for contribution" and, thus, "the underlying gravamen for MetLife's cross-claim is that Storick's violations of the TCPA entitle it to indemnification or contribution." *Envtl. Progress, Inc.*, 2013 WL 12084488, at *2 (dismissing the cross-claim). *See also Carroll v. SGS N. Am. Inc.*, No. CV 16-537-SDD-RLB, 2018 WL 4001457, at *2 (M.D. La. Aug. 21, 2018) (rejecting third-party plaintiff's "attempts to save its third party claims for negligence and negligent misrepresentation by arguing that they are not indemnity claims but are independent state law claims.").

Here, all three of Allied First's claims fail because they are entirely dependent on Allied First's liability to Plaintiff for violations of the TCPA. Each claim seeks damages which depend on a finding that the phone call to Plaintiff violated the TCPA and, thus, the "live transfer" (as Allied First describes it) violated the TCPA and, therefore, Consumer Nsight failed to meet Allied First's expectation that the live transfers would not violate any laws, resulting in Consumer Nsight allegedly breaching a purported contract with Allied First. While the breach of contract claims are creatively pled, when these allegations are taken on their face, it is clear that each of Allied First's claims depends on a finding that Allied First is liable to Plaintiff under the TCPA. Allied First seeks only dependent damages in the nature of indemnity, which is not available under the TCPA. Accordingly, the TPC should be dismissed with prejudice in its entirety.

**B.  The TPC Fails to State a Plausible Claim for Breach of Contract.**

Allied First's breach of contract claims also fail because the TPC does not allege the existence of *any* contract between Allied First and Consumer Nsight, much less a contract under which Consumer Nsight agreed to provide live transfers that "would not violate any laws." (*See* TPC ¶ 32.) Even if the TPC contains sufficient allegations of the creation and existence of a contract (either express or implied), it does not allege facts sufficient to support a cause of action against Consumer Nsight for breach of contract. Accordingly, Allied First's First and Second Claims should be dismissed for this additional reason.

13

1.  **The TPC does not state a cognizable claim for breach of contract under Arizona, Florida, or Illinois Law**.

Allied First does not allege whether its claims arise under the laws of Arizona (where the Allied First branch and third-party call center with which Consumer Nsight had relationships were located), Florida (where Consumer Nsight is located), or Illinois (where this action is pending), but under any of those states' laws, Consumer Nsight fails to allege a claim for breach of contract.

To state a breach of contract claim under Arizona law, a plaintiff must allege: "(1) a contract existed, (2) it was breached, and (3) the breach resulted in damages." *Riverwalk Condo. Unit Owners Ass'n v. Travelers Indem. Co.*, 2018 WL 3774084, at *2 (D. Ariz. June 28, 2018) (citation omitted). Under Arizona law, "[f]or an enforceable contract to exist, there must be an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained." *Circle K Procurement & Brands Ltd. v. Goli Nutrition Inc.,* No. CV-23-01417-PHX-DJH, 2024 WL 1639143, at *2 (D. Ariz. Apr. 16, 2024) (quotation and citation omitted)).

"To state a claim for breach of contract under Florida law, the Plaintiff must allege: (1) a valid contract; (2) Plaintiff's performance of her obligations under the contract or a legal excuse for its nonperformance; (3) a material breach; and (4) damages." *Pierce v. State Farm. Mut. Auto. Ins. Co.*, No. 14-cv-22691-WILLIAMS, 2014 WL 7671718, at *4 (S.D. Fla. 2014). "In order to allege a material breach . . ., the plaintiff must allege which provision of the contract has been breached." *Id.* Under Florida law, a breach of contract claim also "requires the plaintiff to plead formation of a contract, including offer, acceptance, consideration, and essential terms . . . ." *Garcia v. Diaz*, 752 F. App'x 927, 930 (11th Cir. 2018) (citations omitted).

To state a breach of contract claim under Illinois law, a plaintiff must allege: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Solvay USA v. Cutting Edge Fabrication, Inc*., 521 F. Supp.

3d 718, 723 (N.D. Ill. 2021) (citation omitted). "Under Illinois law, an enforceable contract requires an offer, acceptance, consideration, and mutual assent." *Wilda v. JLG Indus., Inc.*, 470 F. Supp. 3d 770 (N.D. Ill. 2020)

Here, the TPC does not allege offer, acceptance, or consideration and, therefore, fails to allege facts to support formation of a valid contract between Allied First and Consumer Nsight under Arizona, Florida, or Illinois law. While the TPC refers to a "proposal," it does not allege the proposal constituted an offer by Consumer Nsight, nor does it allege that Allied First accepted it as an offer.

Even if there were a contract between Allied First and Consumer Nsight, the TPC fails to allege the essential elements of a breach of contract claim. Allied First does not describe the essential terms of the purported contract, the duration of the contract, or the parties' respective obligations. In fact, Allied First does not allege it had any obligations under the purported contract or how it complied with such obligations. Allied First only alleges it paid Consumer Nsight, but does not allege it had an obligation to do so under the purported contract. (TPC ¶ 33.)

Most notably, the TPC does not contain facts to support the mere conclusory allegation that Consumer Nsight breached the purported agreement. Allied First alleges, in conclusory fashion, that "[a] contract existed between Allied First and Consumer Nsight for Consumer Nsight to provide prescreened refinance live transfers to Allied First." (*Id.* ¶ 30.) The TPC does not, however, allege Consumer Nsight failed to provide prescreened refinance live transfers to Allied First and, thus, does not sufficiently allege a breach by Consumer Nsight. "[W]hen a fact is itself an element of the claim . . . it is not sufficient to recite that fact verbatim without other supporting details." *Ananthapadmanabhan*, 2015 WL 8780579, at *1.

The TPC also makes the mere conclusory allegations that: (a) "Consumer Nsight materially breached [the] contract by failing to provide transfers to Allied First *generated* via lawful means" (TPC ¶ 34), and (b) failed to "provide[] prescreened live transfers *obtained* by lawful means to Allied

15

First" (*id*. ¶ 36) (emphasis added). The TPC does not, however, allege Consumer Nsight was contractually obligated to *obtain* or *generate* prescreened live transfers by lawful means and, therefore, the foregoing conclusory claims are insufficient to support a breach of contract claim. Moreover, there is no allegation in that Consumer Nsight *failed to* obtain or generate prescreened live transfers by lawful means and, thus, no facts are alleged to support the conclusion of a breach.

The deficiency in Allied First's pleading is further compounded by the fact that the TPC does not identify or articulate any law that was purported violated by Consumer Nsight in "obtaining" or "generating" leads pursuant to the purported contract. Without referring to the call made to the Plaintiff, the TPC broadly asserts "Consumer Nsight engaged and instructed Iconic Results to make the calls and transfers" (*id*. ¶ 27), but does not allege Consumer Nsight obtained Plaintiff's phone number unlawfully or engaged and instructed Iconic to make the call to Plaintiff and transfer said call to Allied First. The TPC alleges "Plaintiff alleges that calls to Plaintiff violated the Telephone Consumer Protection Act" (*id*. ¶ 28), but *Allied First* does not allege Consumer Nsight violated the TCPA by transferring the call to Allied First, or even that Iconic Results violated the TCPA in making the call to Plaintiff. Without facts to support a conclusion that Consumer Nsight or Iconic Results violated some law in "transferring" a call to Allied First or in "obtaining" or "generating" leads, Allied First's claim that Consumer Nsight breached an "inherent" obligation "to provide transfers to Allied First generated by lawful means" (*id*. ¶ 34) fails.

Furthermore, Allied First alleges, "*If* Plaintiff's claims are adjudicated to be valid, *then* Consumer Nsight materially breached this contract by failing to provide transfers to Allied First generated via lawful means." (*Id*.) By Allied First's own allegations, no breach has yet occurred because the Court has not adjudicated Plaintiff's claims to be valid. As a result, Allied First's breach of contract claim is not ripe for adjudication. *E.g.*, *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 759

(7th Cir. 2008) ("[C]ases are unripe when the parties point only to hypothetical, speculative, or illusory disputes as opposed to actual, concrete conflicts.") (citation and quotation marks omitted).

Finally, the TPC does not allege Consumer Nsight's purported breach caused an injury or damage. Rather, as discussed above, Allied First only alleges that it *may* suffer some injury or damage in the future *if* the Court finds Allied First liable to Plaintiff for a violation of the TCPA in the underlying action. As it stands right now, however, Allied First has not suffered any damage because the Court has not found Allied First liable to Plaintiff. Thus, any alleged damage by Allied First is entirely speculative, and therefore, Allied First cannot possibly allege the required element of damages to support its breach of contract claim. *See Brooks v. Ampcus, Inc.*, No. 6:23-cv-1756-CEM-DCI, 2024 U.S. Dist. LEXIS 17954, at *4 (M.D. Fla. Feb. 1, 2024) ("Florida law requires a plaintiff to plead damages as part of a breach of contract claim. And speculative damages are not recoverable for breach of contract.") (citations and footnote omitted); *Skinner v. Tel-Drug, Inc.*, No. CV-16-00236-TUC-JGZ (BGM), 2017 U.S. Dist. LEXIS 12427, at *7-8 (D. Ariz. Jan. 27, 2017) (under Arizona law, "it is well-established law that in order for a plaintiff to recover in a breach of contract there must be an allegation and proof of real, and not merely possible or speculative damages.") (citation and quotation marks omitted); *Myers v. Mundelein Coll.*, 771 N.E.2d 1113, 1116 (Ill. App. 2002) ("Illinois law clearly proscribes claims for damages that have not yet occurred, so-called 'future damages.'") (citations omitted).

### 2. Allied First's Allegations of an Implied Duty of Good Faith Do Not Save Its Breach of Contract Claims.

Allied First's breach of express contract claim is, in part, based on the allegation that Consumer Nsight "breached the duty of good faith and fair dealing implied in the contract." (TPC ¶ 36.) The implied duty of good faith, however, is not an independent breach and must relate to a specific and express term in a contract under Arizona, Florida, and Illinois law. *See Health Indus.*

17

*Bus. Commc'ns Council Inc. v. Animal Health Inst.,* 481 F. Supp. 3d 941, 960 (D. Ariz. 2020) (under Arizona law, "the implied covenant of good faith and fair dealing ensures that parties do not frustrate *already-existing contract terms*; it does not create new ones.") (quotation omitted) (emphasis added); *Snow v. Ruden, McClosky, Smith, Schuster & Russell, P.A.,* 896 So. 2d 787, 792 (Fla. Dist. Ct. App. 2005) (under Florida law, the implied covenant of good faith "attaches to the performance of a specific or express contractual provision."); *Credit Servs. of Am. Inc. v. Kohuth*, No. 86 C 5298, 1987 WL 5678, at *1 (N.D. Ill. Jan. 16, 1987) (under Illinois law, obligations of good faith and fair dealing act only to define and modify specific contract terms and obligations). Further, "a breach of the implied covenant cannot depend on the same exact facts as an alleged breach of an express contractual term." *Revive You Media LLC v. Esquire Bank*, No. CV-18-00541-PHX-DGC, 2018 WL 2164379, at *5 (D. Ariz. May 10, 2018) (citations omitted).

Allied First does not allege any express contractual term, much less the breach of an express contractual term, so its claim that Consumer Nsight breached the implied duty of good faith and fair dealing is insufficient to state a claim for breach of contract. Even if Consumer Nsight did expressly agree that "the live transfers would not violate any laws (*see* TPC ¶ 32), Allied First relies on the exact same conduct to assert a breach of the implied duty of good faith and fair dealing as it does in asserting its breach of contract claims and, therefore, Allied First's claim that Consumer Nsight breached the implied duty of good faith and fair dealing should be dismissed as redundant.

## C. The TPC Fails to State a Plausible Claim for Breach of an Implied Contract.

Allied First's claim for breach of implied contract fails because Allied First has not adequately alleged the existence of a contract or its material terms and, therefore, has not alleged facts sufficient to support a claim for breach of implied contract under Arizona, Florida, or Illinois law – all of which recognize that an implied contract requires the same elements as an express contract. *See In re Banner Health Data Breach Litig.,* No. CV-16-02696-PHX-SRB, 2018 WL 11352137, at *2 (D. Ariz. Aug.

18

7, 2018) (under Arizona law, "[a] party may prove the existence of an implied-in-fact contract term by circumstantial evidence, but otherwise, an implied contract requires the same elements as an express contract."); *Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, 275 F. Supp. 3d 1332, 1342 (S.D. Fla. 2017) (Under Florida law, "[a]n implied contract requires the same elements as an express contract, and differs only in the parties' method of expressing mutual consent.") (citation and quotation marks omitted); *Brody v. Finch Univ. of Health Sci./The Chi. Med. Sch.,* 698 N.E.2d 257, 265 (Ill. App. 1998) (in Illinois, the elements of an implied-in-fact contract are the same as those of an express contract, as well as a meeting of the minds).

Allied First's implied contract claim also fails because there is no allegation of a contract under which Consumer Nsight agreed "that the live transfers would not violate any laws" or "that Consumer Nsight would be obligated to indemnify Allied First in the case of a breach." (TPC ¶ 44.) With respect to the legality, Allied First essentially claims Consumer Nsight implicitly agreed the calls and transfers by Iconic Results would comply with the TCPA. Such a term cannot be implied. There are no facts alleged to support a finding that Consumer Nsight implicitly *agreed* that all live transfers by Iconic Results would comply with the TCPA or Consumer Nsight implicitly *agreed to* or *failed to* provide prescreened refinance live transfers based on lawfully obtained leads. Furthermore, Allied First does not allege any call to Plaintiff made by or transferred by Iconic Results as part of the services rendered to Allied First by Consumer Nsight pursuant to an implied contract actually violated the TCPA or any other law. And like its breach of an allegedly express contract claim, Allied First's implied contract claims is contingent on whether the Court finds, in the future, that Plaintiff's claim is valid (TPC ¶ 47), and therefore, the implied contract claims is not ripe either. *See Wis. Cent., Ltd.*, 539 F.3d at 759. Accordingly, Allied First's implied contract claims fails.

Even if the TPC alleged facts to support the existence of an implied contract, Allied First has not alleged its obligations under the implied contract or that it performed its obligations. Instead, the

TPC alleges only that "Allied First paid Consumer Nsight for the prescreened refinance live transfers" and that by paying Consumer Nsight, "Allied First and Consumer Nsight entered into an implied contract whereby Consumer Nsight was obligated to take reasonable steps to provide prescreened refinance live transfers based on lawfully obtained leads." (TPC ¶¶ 42-43.) To the extent Allied First and Consumer Nsight did enter into such an implied agreement, Allied First's claim fails because the TPC does not allege that Consumer Nsight failed to take "reasonable steps" to provide prescreened refinance live transfers based on lawfully obtained leads.

Allied First's implied contract claim also fails because it is premised on the theory that a term to which the parties have not agreed can be implied. As stated above in Part III.B.2., implied duties attach to express contracts. There can be no implied obligation on the part of Consumer Nsight that the live transfers would not violate any law or that Consumer Nsight would indemnify Allied First for any purported violation, as Allied First does not allege any facts suggesting a "meeting of the minds" on those allegedly implied contractual terms. *E.g.*, *Gannon v. Truly Nolen of Am. Inc.*, No. CV 22-428-TUC-JAS, 2023 U.S. Dist. LEXIS 181410, at *7 (D. Ariz. Aug. 31, 2023) ("Generally, before a court can find the existence of an implied contract, . . . there must be a meeting of the parties' minds.") (footnote and citation omitted); *Orthopaedic Care Specialists, P.L. v. Aetna Life Ins. Co.*, No. 9:22-CV-81904-BER, 2023 U.S. Dist. LEXIS 79974, at *8 (S.D. Fla. May 8, 2023) ("[I]n determining whether an enforceable contract exists, a court 'must determine whether there has actually been a meeting of the minds of the parties upon definite terms and conditions which include the essential elements of a valid contract. Thus, mutual assent as to the material terms is essential.") (citations and quotation marks omitted); *Landale Signs & Neon, Ltd. v. Runnion Equip. Co.*, No. 16-cv-7619, 2016 U.S. Dist. LEXIS 177195, at *19 (N.D. Ill. Dec. 22, 2016) (under Illinois law, "[a] 'meeting of the minds' is a fundamental prerequisite to a claim for breach of implied contract.") (citations omitted).

20

Other than Allied First's conclusory contentions, there are no allegations in the TPC as to the existence or terms of a purported contract, express or implied. There are no details regarding when this contract was allegedly entered, the material terms to which the parties agreed, when any services under the contract were performed or excused, and which provisions of the contract Consumer Nsight supposedly breached. Allied First does not even allege what its obligations were under the purported contract, that it performed under the contract or that its performance was excused. Allied First's failure to allege the substantive terms of the supposed contract is fatal to the other elements of its breach claim as well, and its breach of implied contract claim should be dismissed pursuant to Rule 12(b)(6).

## IV. ALTERNATIVELY, THE COURT SHOULD DISMISS THE TPC PURSUANT TO FED. R. CIV. P. 12(B)(1) BECAUSE THIS COURT LACKS SUBJECT MATTER JURISDICITON OVER ALLIED FIRST'S CLAIMS.

In the alternative, if Allied First argues its claims are independent of the Plaintiff's TCPA claim against Allied First, the Court should dismiss the TPC pursuant to Rule 12(b)(1) because the Court lacks subject matter jurisdiction over Allied First's claims against Consumer Nsight.

Rule 12(b)(1) "permits the court to dismiss an action for lack of jurisdiction over the subject matter." *Rizzi v. Calumet City*, 11 F. Supp. 2d 994, 995 (N.D. Ill. 1998). The party asserting jurisdiction bears the burden of proof on a Rule 12(b)(1) motion. *Catapult Commc'ns Corp. v. Foster*, No. 06 VC 6112, 2009 WL 1469813, at *1 (N.D. Ill. May 27, 2009) (citation omitted). "When a party moves for dismissal under Rule 12(b)(1) challenging the factual basis for jurisdiction, the nonmoving party must support its allegations with competent proof of jurisdictional facts." *Rizzi*, 11 F. Supp. 2d at 995 (citations omitted). Affidavits and other relevant evidence may be used to resolve the factual dispute regarding the court's jurisdiction. *Id*. (citation omitted).

Federal courts have discretion to exercise supplemental jurisdiction over third-party claims brought by a defendant pursuant to 28 U.S.C. § 1367(a). *See, e.g., Ruderman v. Bank of Am., N.A.*, No. 10 C 6153, 2012 WL 4795705, at *2 (N.D. Ill. Oct. 9, 2012). 28 U.S.C. § 1367 states that "in

21

any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367. *See also Dornhecker v. Ameritech Corp.,* 99 F. Supp. 2d 918, 929 (N.D. Ill. 2000). Supplemental jurisdiction is appropriate where claims are part of the "same case or controversy," including those that "involve the joinder . . . of additional parties." 28 U.S.C. § 1367(a); *see also U.S. Liab. Ins. Co. v. Fassbinder United Builders, Inc.,* No. 99 C 50330, 2002 WL 1359428, at *1 (N.D. Ill. June 20, 2002) (where third-party claims arise from "a common nucleus of operative fact," court may exercise supplemental jurisdiction under § 1367). "So long as an arguable balance of [judicial economy, convenience, fairness, and comity] points in the direction of the district court's discretionary determination whether or not to exercise jurisdiction, that decision, being discretionary, will not be disturbed." *Timm v. Mead Corp.,* 32 F.3d 273, 277 (7th Cir.1994).

In the TPC, Allied First alleges this Court has subject matter jurisdiction over its claims under 28 U.S.C. § 1367 "because these claims arise out of a common nucleus of operative fact with Plaintiff's original claims against Allied First and Consumer Nsight." (TPC ¶ 5.) The underlying litigation is based on federal question jurisdiction, since Plaintiff's only claim is brought under the TCPA. (*See* FAC ¶ 9.) Should Allied First argue its claims are independent of Plaintiff's claims against Allied First, it would necessarily follow that supplemental jurisdiction over the TPC does not exist because Allied First's claims would not arise from a common nucleus of operative fact. If the Court dismisses Allied First's indemnity claim under the TCPA (the TCPA claim being the claim over which this Court has original jurisdiction), the Court should decline to exercise supplemental jurisdiction over Allied First's remaining state law claims for breach of contract.

Allied First alleges and may argue that diversity jurisdiction exists (TPC ¶¶ 4-5), but Allied First cannot plausibly allege the amount in controversy exceeds $75,000, as required by 28 U.S.C. §

22

1332(a). Under the TCPA, liability for making telephone solicitations to phone numbers on the Do-Not-Call Registry extends only if the call recipient "has received more than one telephone call within any 12-month period by or on behalf of the same entity . . . ." 47 U.S.C. § 227(c)(5). Damages are limited to "actual monetary loss from such a violation, or . . . up to $500 in damages for each such violation, whichever is greater," *id*. § 227(c)(5)(B), and if the Court finds that the TCPA violation was "willfully or knowingly," the Court has discretion to award up to $1,500 for each violation. *Id*. § 227(c)(5)(C). There is no attorney fee shifting provision under the TCPA. *See Physicians Healthsource, Inc. v. A-S Medication Solutions, LLC*, No. 12 C 5105, 2018 U.S. Dist. LEXIS 200132, at *6 (N.D. Ill. Nov. 27, 2018) ("[T]he TCPA is not a fee-shifting statute.").

Plaintiff alleges he received nine calls and that he only answered one call. (FAC ¶¶ 21-24.) He alleges he is "entitled to an award of between $500 and $1,500 in damages for each and every call made" (*id*. ¶ 62), and he does not seek an award of attorneys' fees. (*See id*. at 10-11 (prayer for relief).) Therefore, Allied First's maximum liability to Plaintiff in the underlying action is $4,500 if the Court finds all nine calls violated the TCPA and the violations were not willful or knowing, or $13,500 if the Court finds all nine calls willfully or knowingly violated the TCPA. Allied First does not allege that any express contract or implied contract between Allied First and Consumer Nsight provides for Consumer Nsight's payment of Allied First's attorneys' fees. As a result, even if Allied First could assert any plausible claim (which, as discussed above, it cannot), the amount in controversy can be no more than $13,500. Thus, diversity jurisdiction has not been pled.

## **CONCLUSION**

For all the foregoing reasons, the Court should dismiss Allied First's TPC with prejudice.

Dated:  October 25, 2024                    Respectfully submitted,

**CONSUMER NSIGHT LLC**

By:    /s/ Andrew D. LeMar
        One of Its Attorneys

Andrew D. LeMar
Burke, Warren, MacKay & Serritella, P.C.
330 North Wabash Avenue, Suite 2100
Chicago, Illinois 60611-3607
Telephone: (312) 840-7000
Facsimile: (312) 840-7900
alemar@burkelaw.com

## <u>CERTIFICATE OF SERVICE</u>

On October 25, 2024, the undersigned caused the foregoing Memorandum in Support of Third-Party Defendant Consumer Nsight LLC's Motion to Dismiss Allied First Bank, SB's Third Party Complaint Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6), to be filed electronically with the Northern District of Illinois, and served upon all parties registered to receive notice via the Court's CM/ECF system.

/s/ Andrew D. LeMar
Andrew D. LeMar

4868-8465-6370, v. 2

25