**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SAMUEL KATZ, individually and on behalf of all others similarly situated | )<br>)<br>) |
| Plaintiff, | ) Case No. 1:22-cv-05277<br>) |
| v. | ) Judge Robert W. Gettleman<br>) Magistrate Judge Maria Valdez<br>) |
| ALLIED FIRST BANK, SB; and CONSUMER NSIGHT LLC, | )<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT/THIRD-PARTY PLAINTIFF ALLIED FIRST BANK, SB'S
OPPOSITION TO THIRD-PARTY DEFENDANT CONSUMER NSIGHT LLC'S
MOTION TO DISMISS DEFENDANT ALLIED FIRST BANK, SB'S THIRD-PARTY
COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1), 12(B)(2), AND 12(B)(6)**

Defendant Allied First Bank, SB, now known as Servbank, SB ("Allied First"), by and through its undersigned counsel, hereby files this Memorandum of Law in support of its Opposition to Third-Party Defendant Consumer Nsight, LLC's ("Consumer Nsight") Motion to Dismiss Allied First's Third-Party Complaint Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2) ("Motion to Dismiss"), and 12(b)(6), and states as follows:

**I.    INTRODUCTION**

This Court should deny Consumer Nsight's Motion to Dismiss for several reasons. First, good cause exists to allow Allied First to effectuate proper service on Consumer Nsight, and in any event, this argument is moot because Allied First has effectuated service on Consumer Nsight. Second, Consumer Nsight is subject to personal jurisdiction in Illinois. Consumer Nsight solicited the relationship with Allied First, was aware that its services were being provided to an Illinois company, that litigation may arise out of those services, and that litigation may be brought in

Illinois. These contacts are sufficient to subject Consumer Nsight to personal jurisdiction in Illinois. Third, Allied First sufficiently stated a plausible claim for breach of contract, breach of implied contract, and indemnification against Consumer Nsight. Fourth and finally, this Court has subject matter jurisdiction over the claims in the Third-Party Complaint because they arise out of Plaintiff's claims for breach of the TCPA. Accordingly, for the reasons set forth herein, Allied First respectfully requests that this Court deny Consumer Nsight's Motion to Dismiss and grant such other and further relief as this Court deems just and proper.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Procedural History

Plaintiff initiated this action against Allied First on September 27, 2022, alleging violations of the TCPA. (ECF No. 1). Both Plaintiff and Allied First served subpoenas on Consumer Nsight on March 8, 2023 and April 5, 2023, respectively, and received objections and no documents in response to those subpoenas. Consumer Nsight's April 27, 2023 response to Allied First's subpoena stated that "Consumer Nsight LLC has no records in its possession, custody or control that are responsive to the subpoena in this matter." Plaintiff filed a First Amended Complaint on July 1, 2023, adding Consumer Nsight LLC ("Consumer Nsight") as a defendant. (ECF No. 26). Allied First filed its Answer to First Amended Complaint with Affirmative Defenses on August 14, 2023. (ECF No. 33).

Allied First investigated Plaintiff's claim against Consumer Nsight to determine Consumer Nsight's potential liability as it relates to Allied First. Consumer Nsight responded to the First Amended Complaint by filing a Motion to Dismiss for Lack of Jurisdiction on August 16, 2023. (ECF No. 34). In or around the same time, the Parties' Counsel discussed potential mediation of this case.

2

On September 9, 2023, this Court stayed oral discovery as to Allied First and completely stayed all discovery as to Consumer Nsight. (ECF No. 43). At the same time, the parties continued to work toward potential mediation of this case. Thereafter, on October 6, 2023, this Court stayed ruling on Consumer Nsight's Motion to Dismiss and granted Plaintiff leave to take discovery limited to the issue of personal jurisdiction over Consumer Nsight. (ECF No. 46). At the same time, the parties continued to work toward potential mediation of this case. On November 6, 2023, this Court stayed discovery pending mediation between the parties. (ECF No. 47). On January 8, 2024, the parties participated in mediation. Mediation efforts were unsuccessful. Accordingly, on January 9, 2024, this Court resumed discovery. (ECF No. 52). On April 26, 2024, Plaintiff dismissed Consumer Nsight without prejudice. (ECF No. 63).

On May 23, 2024, Allied First filed a Motion for Leave to File Amended Answer to First Amended Complaint with Affirmative Defenses and Third-Party Claims, seeking to assert a third party claim against Consumer Nsight. (ECF No. 70). This Court granted Allied First's Motion on July 15, 2024. (ECF No. 78). Allied First filed its Third-Party Complaint on August 5, 2024. (ECF No. 79). Consumer Nsight thereafter moved to dismiss the Third-Party Complaint pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6) (ECF Nos. 95, 96).

### B. Allied First's Allegations

Allied First and Consumer Nsight entered into an agreement for Consumer Nsight to provide prescreened refinance live transfers to Allied First. Third-Party Compl. at ¶ 9. On or about January 28, 2022, Consumer Nsight emailed Allied First a proposal outlining the quantity and price of prescreened refinance live transfers to Allied First. *Id.* at ¶ 10. On or about February 2, 2022, Allied First paid the amount requested in the proposal to Consumer Nsight. *Id.* at ¶ 11. Upon information and belief, Consumer Nsight obtained leads for individuals who were interested in

potential mortgage options. *Id.* at ¶ 12. Based on their course of dealing and communications, Allied First paid Consumer Nsight to receive transfers of calls for customers who had provided explicit written consent to be contacted and for whom Allied First was among the entities the customer may be connected to based on the information the customer provided. *Id.* at ¶ 13.

Upon information and belief, Consumer Nsight retained a third party call center, Iconic Results, LLC ("Iconic Results") to have calls transferred to Allied First based on leads obtained by Consumer Nsight. *Id.* at ¶ 17. Upon information and belief, Iconic Results called individuals based on leads provided by Consumer Nsight and based on instructions and directions provided by Consumer Nsight. *Id.* at ¶ 19. Iconic Results dialed the phone numbers provided by the person who consented to be called. *Id.* Once a call connected to a person, an Iconic Results employee would ask the person questions about their mortgage needs. *Id.* at ¶ 20. If the individual met the parameters provided by Consumer Nsight for the prescreened refinanced live transfers to Allied First, Iconic Results transferred the call to Allied First. *Id.* Plaintiff was contacted by Iconic Results as part of the campaign between Allied First and Consumer Nsight. *Id.* at ¶¶ 22-25. As such, Allied First brought three claims against Consumer Nsight: (1) breach of contract, (2) breach of implied contract, and (3) indemnification.

### III.  ARGUMENT

#### A.  Good Cause Exists to Allow Allied First to Effectuate Proper Service On Consumer Nsight.

Consumer Nsight's Motion to Dismiss must be denied because good cause exists to allow Allied First to effectuate proper service on Consumer Nsight. "Under Rule 12(b)(5), Plaintiff bears the burden to demonstrate that this Court has jurisdiction over Defendants through effective service. If this Court finds Plaintiff has not met that burden and lacks good cause for not perfecting service, then this Court either must dismiss the suit or specify a time within which Plaintiff must

4

serve Defendants. The decision to dismiss or extend the period for service is within this Court's discretion." *Manzanales v. Krishna*, 113 F.Supp.3d 972, 975 (N.D. Ill. June 30, 2015).

Allied First filed the Third-Party Complaint on August 5, 2024. (ECF No. 79). This Court issued Summons to Consumer Nsight on August 28, 2024. On September 13, 2024, Consumer Nsight received a copy of the Summons and Third-Party Complaint via FedEx. *See* Consumer Nsight's Exhibit D. On October 25, 2024, Consumer Nsight alleged that Allied First failed to effectuate proper service of process. Allied First thereafter promptly effectuated service upon Consumer Nsight on November 26, 2024.[1] *See* Affidavit of Service, attached hereto as **Exhibit No. 1**. Thus, Allied First has already perfected service upon Consumer Nsight, and thus, any allegation that service was improper is moot. Further, Consumer Nsight's counsel has been active as counsel for Consumer Nsight and is still listed as a service contact on PACER for this matter. Thus, Consumer Nsight was on notice of this suit, and received a copy of the Summons and Third-Party Complaint via ECF in August 2024.

Even if this Court determines that Allied First's November 26, 2024 service upon Consumer Nsight is not proper, good cause exists for this Court to permit Allied First to perfect service upon Consumer Nsight. Relevant factors to consider in determining whether good cause exists include: "(1) whether the expiration of a statute of limitations would prevent refiling; (2) the harm to the defendant's ability to defend; (3) whether the defendant received actual notice of the lawsuit; (4) whether the defendant evaded service; (5) whether the defendant was eventually served; (6) whether the plaintiff requested an extension from the court in perfecting service; (7)

---

[1] Allied First attempted to serve Consumer Nsight on November 20, 2024, at its registered agent's address. Allied First was informed, however, that Consumer Nsight's registered agent no longer maintained an office at its registered address. Allied First thereafter effectuated service upon Consumer Nsight at its registered agent's home address.

plaintiff's diligence in pursuing timely service." *Chicago Heights Check Cashers, Inc. v. United States Postal Service*, No. 18-C-990, 2018 WL 2450474 at *3 (N.D. Ill. May 31, 2018).

Based on these factors, good cause exists for the Court to allow Allied First to perfect service upon Consumer Nsight. First, the statute of limitations would not prevent refiling against Consumer Nsight. Second, there is no harm to Consumer Nsight's ability to defend. Indeed, Consumer Nsight previously defended itself in this action and already retained Illinois counsel. Third, Consumer Nsight received actual notice of this lawsuit when Allied First sent a copy of the Summons and Third-Party Complaint via FedEx on September 13, 2024. Additionally, as set forth above, Consumer Nsight's counsel is still listed as a service contact on Pacer for this matter, and accordingly, Consumer Nsight received a copy of the Summons and Third-Party Complaint when they were filed in August. Fourth, Consumer Nsight was served on November 20, 2024. Fifth, Allied First acted diligently in perfecting service upon Consumer Nsight as evidenced by the fact that Allied First effectuated service upon Consumer Nsight less than a month after it received notice that service was improper. As reflected on the affidavit of service, the address for Consumer Nsight's registered agent is a vacant building, and investigation for a valid location for the registered agent and personal service on the registered agent was necessary to accomplish service. Accordingly, good cause exists for this Court to permit Allied First to perfect service upon Consumer Nsight and Consumer Nsight's Motion to Dismiss must be denied accordingly.

### B. Consumer Nsight is Subject to Personal Jurisdiction in Illinois.

This Court should deny Consumer Nsight's Motion to Dismiss because Consumer Nsight is subject to personal jurisdiction in Illinois. There are two forms of personal jurisdiction—general and specific. "If the defendant's contacts are so extensive that it is subject to general personal jurisdiction, then it can be sued in the forum state for any cause of action arising in any place.

6

More limited contacts may subject the defendant only to specific personal jurisdiction, in which case the plaintiff must show that its claims against the defendant arise out of the defendant's constitutionally sufficient contacts with the state." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010). A court may exercise specific personal jurisdiction over a defendant when "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010).

In a personal jurisdiction analysis, "[o]ne relevant inquiry is which party initiated the business transaction." *Heritage House Restaurants, Inc. v. Continental Funding Grp., Inc.*, 906 F.2d 276, 283 (7th Cir. 1990) (citing *Madison Consulting Grp. v. South Carolina*, 752 F.2d 1193, 1202 (7th Cir. 1985)). In *WAV, Inc. v. Walpole Island First Nation*, this Court exercised jurisdiction over a non-resident defendant where the non-resident defendant initiated the business relationship and the parties communicated via phone, email, and in-person over the course of two years. 47 F.Supp.3d 720, 727 (N.D.Ill. June 6, 2014). This is consistent with the Supreme Court's decision in *Burger King Corp. v. Rudzewicz* where it held that "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" are facts for consideration in a minimum contacts analysis. 471 U.S. 462, 479 (1985). In such cases, the non-resident defendant constitutes an "active purchaser" who is subject to jurisdiction in the forum state. *See Abbott Laboratories, Inc. v. BioValve Technologies, Inc.*, 543 F.Supp.2d 913, 924 (N.D. Ill. Feb. 12, 2008) ("An active purchaser, on the other hand, dictates or vigorously negotiates contract terms, or inspects production facilities. As a result, the unfairness which would be associated with the exercise of long arm jurisdiction over that buyer dissipates,

7

and he or she will be subject to personal jurisdiction in the courts of the sellers' State." (internal citations and quotations omitted)).

In pitching services to Allied First, Consumer Nsight knowingly affiliated itself with an enterprise based in Illinois. *See Lukas Mktg. v. Prince George's Cmty. Coll.*, No. 1:13-CV-04062, 2013 WL 5818592 at *2 (N.D. Ill. Oct. 29, 2013) (exercising personal jurisdiction where the defendant "initiated significant phone, e-mail, and mail contacts with [the plaintiff] in Illinois throughout the formation of the contract"); *see also Vasili v. Duzich*, No. 07-C-5462, 2008 WL 2062371 at *4 (N.D. Ill. May 13, 2008) (finding that regular communications from the defendant into Illinois were a significant factor in establishing minimum contacts). As shown by emails from Allied First's President (and registered agent), Rick Sabatino, Allied First explicitly contacted Craig Mattson, an Allied First employee, to offer his services. *See* Allied-First_000217-18, attached hereto as **Exhibit No. 2**. Although Mr. Mattson himself was located in Scottsdale, Arizona, his credentials are clear that he was a Regional Sales Manager for Allied First and even provides Allied First's corporate headquarters, located in Oswego, Illinois, in his email signature block:



*See id.*

Additionally, Consumer Nsight is a sophisticated corporate actor that understood

8

negotiating with and providing services to an Illinois company may subject it to litigation in Illinois. *See Sullivan v. Bickler*, 360 F.Supp.3d 778, 785-86 (N.D. Ill. Jan. 25, 2019) (noting that negotiation of the contract and subsequent dealings in Illinois indicated that the defendant would have expected to be haled into court in Illinois if there was a contract dispute). Consumer Nsight was aware that its services were being provided to an Illinois company, that litigation may arise out of those services, and that litigation may be brought in Illinois. Thus, this Court should deny Consumer Nsight's Motion to Dismiss because Consumer Nsight is subject to personal jurisdiction in Illinois.

### C. The Third-Party Complaint States Plausible Claims Against Consumer Nsight.

This Court must deny Consumer Nsight's Motion to Dismiss because the Third-Party Complaint sets forth plausible claims against Consumer Nsight. In reviewing a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), the court "accept[s] the allegations in the plaintiff's complaint as true and draw[s] all reasonable inferences in plaintiff's favor." *Bilek v. Federal Ins. Co.*, 8 F.4th 581, 584 (7th Cir. 2021). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims . . . Rule 12(b)(6) should be employed only when the complaint does not present a legal claim." *Smith v. Cash Store Mgmt., Inc.*, 195 F.3d 325, 327 (7th Cir. 1999). While "the bar to survive a motion to dismiss is not high, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010).

#### 1. The Third-Party Complaint States a Plausible Claim for Breach of Contract.

Consumer Nsight's Motion to Dismiss must be denied because the Third-Party Complaint states a plausible claim for breach of contract. "Under Illinois law, to prevail on a breach of

contract claim the plaintiff must show: (1) the existence of a valid and enforceable contract, (2) she substantially performed the contract, (3) the defendant breached that contract, and (4) damages resulted from the alleged breach of contract." *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 886 (7th Cir. 2018).[2]

Consumer Nsight argues that the Third-Party Complaint does not allege the existence of any contract between Allied First or Consumer Nsight. This is far from the truth. The Third-Party Complaint explicitly alleges that a contract existed between Allied First and Consumer Nsight. *See* Third-Party Compl. at ¶ 9 ("Allied First and Consumer Nsight entered into an agreement for Consumer Nsight to provide prescreened refinance live transfers to Allied First. This agreement was negotiated by Allied First and Consumer Nsight over email and phone."); *Id.* at ¶ 30 ("A contract existed between Allied First and Consumer Insight for Consumer Nsight to provide prescreened refinance live transfers to Allied First."); *Id.* at ¶ 31 ("The contract was a valid, enforceable, legal, and mutually binding contract between Allied First and Consumer Nsight."). The Third-Party Complaint also alleges that "[a]t all times, Allied First performed its obligations under the contract." *Id.* at ¶ 33. The Third-Party Complaint similarly sufficiently alleges that Consumer Nsight "materially breached this contract by failing to provide transfers to Allied First generated via lawful means."[3] *Id.* at ¶ 35. Allied First was clear that "[i]nherent in this contract

---

[2] Consumer Nsight asserts that Allied First does not allege whether its claims arise under the laws of Arizona, Florida, or Illinois. Allied First contends that its breach of contract claim arises out of the laws of Illinois because, as alleged by Allied First, "Consumer Nsight entered into a contract with and provided services to Allied First, which is headquartered in the Northern District of Illinois." Third-Party Complaint at ¶ 6. Regardless, as established in Consumer Nsight's Motion to Dismiss, the elements of breach of contract are substantially similar in Arizona, Florida, and Illinois.

[3] Allied First also alleges that "Consumer Nsight breached the duty of good faith and fair dealing implied in the contract." *Id.* at ¶ 36. Consumer Nsight asserts that this breach must relate to a specific and express term in the contract and is not a standalone breach. However, as Allied First alleged in the Third-Party Complaint, "[t]he contract vested Consumer Nsight with discretion in

was that the live transfers would not violate any laws and that Consumer Nsight would be obligated to indemnify Allied First in the event of a breach." *Id.* at ¶ 32. Finally, Consumer Nsight properly alleged that "[a]s a direct and proximate consequence of Consumer Nsight's breach of the contract, Allied First has suffered and continues to suffer damages." *Id.* at ¶ 37.

Thus, Allied First sufficiently plead (1) the existence of a valid and enforceable contract, (2) that it substantially performed the contract, (3) that Consumer Nsight breached the contract, and (4) that damages resulted from Consumer Nsight's breach. Accordingly, this Court should deny Consumer Nsight's Motion to Dismiss because the Third-Party Complaint states a plausible claim for breach of contract.

> 2. *The Third-Party Complaint States a Plausible Claim for Breach of an Implied Contract.*

Similarly, Consumer Nsight's Motion to Dismiss must be denied because the Third-Party Complaint states a plausible claim for breach of an implied contract. Under Illinois law, the elements for an implied-in-fact contract and breach of contract are the same. *See Nissan N. Am., Inc. v. Jim M'Lady Oldsmobile, Inc.*, 486 F.3d 989, 996 (7th Cir. 2007) (finding that the same elements are required for an implicit and express contract under Illinois law). The terms of an implied-in-fact contract, however, are inferred from the conduct of the parties. *See Gociman v. Loyola*, 41 F.4th 873, 883 (7th Cir. 2022).

Again, the Third-Party Complaint sufficiently alleges the breach of an implied contract. The Third-Party Complaint alleges that "Allied First and Consumer Nsight entered into an implied

---

performing its obligations under the contract, including providing prescreened refinance live transfers obtained by lawful means to Allied First, and Consumer Nsight exercised this discretion in bad faith, unreasonably, and in a manner inconsistent with the reasonable expectations of Allied First by failing to provide these transfers by lawful means." *Id.* Thus, Consumer Nsight's arguments regarding the implied duty of good faith are inapposite.

11

contract for Consumer Nsight to provide prescreened refinance live transfers to Allied First." Third-Party Compl. at ¶ 40. The Third-Party Complaint further alleges "Consumer Nsight provided a proposal to Allied First in which Consumer Nsight promised to provide a specific quantity of prescreened refinance live transfers to Allied First for a specific amount" and "[i]n order to obtain the benefit of this transaction, Allied First paid Consumer Nsight for the prescreened refinance live transfers." *Id.* at ¶¶ 41-42. The Third-Party Complaint further alleges that "[b]y Allied First paying the amount requested and upon Consumer Nsight's acceptance of the payment, Allied First and Consumer Nsight entered into an implied contract whereby Consumer Nsight was obligated to take reasonable steps to provide prescreened refinance live transfers based on lawfully obtained leads." *Id.* at ¶ 43. The Third-Party Complaint alleges that "[i]nherent in this contract was that the live transfers would not violate any laws and that Consumer Nsight would be obligated to indemnify Allied First in the case of a breach." *Id.* at ¶ 44. Indeed, the Third-Party Complaint makes clear that "[t]he circumstances, including Consumer Nsight engaging Iconic Results to transfer calls to Allied First over two months, make it a reasonable and necessary assumption that an implied contract existed between Allied First and Consumer Nsight based on their tacit understanding." *Id.* at ¶ 46. Further, the Third-Party Complaint alleges that Consumer Nsight breached the implied contract "by failing to provide transfers to Allied First generated via lawful means." *Id.* at ¶ 47. The Third-Party Complaint finally alleges that "[a]s a direct and proximate consequence of Consumer Nsight's breach of the contract, Allied First has suffered and continues to suffer actual damages." *Id.* at ¶ 49.

Again, Allied First sufficiently plead (1) the existence of a valid and enforceable contract, (2) that it substantially performed the contract, (3) that Consumer Nsight breached the contract, and (4) that damages resulted from Consumer Nsight's breach. Accordingly, this Court should

deny Consumer Nsight's Motion to Dismiss because the Third-Party Complaint states a plausible claim for breach of an implied contract.

### 3. Allied First Is Entitled to Indemnity Under the Contract with Consumer Nsight.

Consumer Nsight is correct that the TCPA does not provide for common law indemnification. *See e.g., Desai v. ADT Sec. Systems, Inc.*, 2012 WL 4482012 at *2 (N.D. Ill. Sept. 26, 2012) (observing "the TCPA does not create an affirmative cause of action for indemnification or contribution and that federal common law does not allow for such a cause of action either."). Federal courts *do allow indemnification*, however, where, as alleged here, a contractual indemnification provision governs the parties' conduct. *See id.* at *3.

Allied First plausibly alleged "[a] contract existed between Allied First and Consumer Nsight for Consumer Nsight to provide prescreened refinance live transfers to Allied First." Third-Party Complaint at ¶ 30. The Third-Party Complaint further provides that "[t]he contract was a valid, enforceable, legal, and mutually binding contract between Allied First and Consumer Nsight" and "[i]nherent in this contract was that live transfers would not violate any laws and that Consumer Nsight would be obligated to indemnify Allied First in the event of a breach." *Id.* at ¶¶ 31-32. These sufficient factual matters, accepted as true, state a plausible claim for indemnification against Consumer Nsight. *See Bonte*, 624 F.3d at 463.

### D. The Court Has Subject Matter Jurisdiction Over Allied First's Claims.

Finally, this Court must deny Consumer Nsight's Motion to Dismiss because this Court has subject matter jurisdiction over the claims in the Third-Party Complaint. When reviewing a motion to dismiss brought under Rule 12(b)(1), this Court "must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66

F.3d 894, 897 (7th Cir. 1995).

Federal Rule of Civil Procedure 14(a)(1) provides that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." "Rule 14 aims to promote judicial efficiency by enabling the consolidation of related claims into a single action, and to this end it allows for the assertion of third-party claims or counterclaims that might be too contingent to stand on their own." *Broadway v. Walmart, Inc.*, 2024 WL 2113034 at *3 (N.D. Ill. May 10, 2024) (quoting *Mills v. Hausmann-McNally, S.C.*, 2014 WL 129276 at *5 (S.D. Ind. Jan. 14, 2014)).

Allied First's claims against Consumer Nsight are necessarily contingent on Plaintiff's underlying TCPA claim against Allied First. Taking the well-pleaded facts of the Third-Party Complaint as true, Consumer Nsight obtained the numbers of interested potential customers, including their consent, and then orchestrated the work of Iconic Results who called Plaintiff. Accordingly, liability lies, if at all, with Consumer Nsight. To the extent Allied First is liable on any basis for Plaintiff's claims, Allied First has grounds to seek relief against Consumer Nsight for its breach of agreement to provide legally compliant transfers to Allied First. *See, e.g.*, *Garrett v. Ragle Dental Laboratory, Inc.*, 2011 WL 2637227 at *2 (N.D. Ill. July 6, 2011) (denying motion to dismiss cross claim in a TCPA action where the party who placed the fax advertisements at issue was bound by an agreement to ensure the faxes would comply with all applicable federal and state laws such that if the faxes violated the TCPA, that party breached their agreement).

In addition, Allied First's claims for breach of contract or implied contract and for indemnification arise out of the same transaction and occurrence that would be addressed to resolve Plaintiff's claims against Allied First. *See* F. R. Civ. P. 13(g) ("A pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or

14

occurrence that is the subject matter of the original action or of a counterclaim . . . ."); *see also Bd. of Regents of Univ. of Wisconsin Sys. v. Phoenix Int'l Software, Inc.*, 653 F.3d 448, 470 (7th Cir. 2011) (employing a "logical relationship test" to determine whether two matters arise out of the same transaction or occurrence and observing "[t]he approach is necessarily flexible…a court should consider the totality of the claims, including the nature of the claims, the legal basis for recovery, the law involved, and the respective factual backgrounds.")

To prove liability to Allied First, Plaintiff will have to establish that the call was initiated by Allied First. As alleged in the Third-Party Complaint, however, Iconic Results initiated the call on behalf of Consumer Nsight. Likewise, the consent obtained by Consumer Nsight is a defense to Plaintiff's claims. If Allied First is found to be liable for the call to Plaintiff, the liability will be due to failures by Consumer Nsight. Thus, Allied First's agreement with Consumer Nsight for Consumer Nsight to procure prescreened live transfer leads for customers interested in refinance options is integral to Plaintiff's claims and Allied First's defenses and the ends of justice support this Court's exercise of jurisdiction over Consumer Nsight.

## IV.   CONCLUSION

For the foregoing reasons, Defendant Allied First, SB respectfully requests that this Court deny Third-Party Defendant Consumer Nsight LLC's Motion to Dismiss and enter an Order in the form of the Proposed Order filed herewith.

By: */s/Carmen H. Thomas*
Carmen Harper Thomas
*Pro Hac Vice Admitted*
Email: carmen.thomas@nelsonmullins.com
1320 Main Street, 17th Floor
Columbia, SC 29201
Tel: (803) 799-2000

Nathan E. Hoffman
Email: nathan.hoffman@nelsonmullins.com

1222 Demonbreun Street, Suite 1700
Nashville, TN 37203
Tel: (615) 664-5300

123 N. Wacker Drive, 21st Floor
Chicago, IL 60606
Tel: (312) 205-7950

Alan Kaufman
*Pro Hac Vice Pending*
Email: alan.kaufman@nelsonmullins.com
330 Madison Avenue, 27th Floor
New York, NY 10017
Tel: (212) 413-9000

*Attorneys for Defendant Allied First Bank, SB*