# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SAMUEL KATZ, individually and on behalf of all others similarly situated ) ) ) | |
| Plaintiff, ) | Case No. 1:22-cv-05277 |
| ) | |
| v. ) | Judge Robert W. Gettleman |
| ) | Magistrate Judge Maria Valdez |
| ALLIED FIRST BANK, SB, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |
| ALLIED FIRST BANK, SB ) | |
| ) | |
| Third-Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| CONSUMER NSIGHT LLC, ) | |
| ) | |
| Third-Party Defendant. ) | |

### REPLY IN SUPPORT OF THIRD-PARTY DEFENDANT
### CONSUMER NSIGHT LLC'S MOTION TO DISMISS ALLIED FIRST BANK, SB'S
### THIRD PARTY COMPLAINT PURSUANT TO
### FED. R. CIV. P. 12(B)(1), 12(B)(2), 12(B)(5), AND 12(B)(6)

Andrew D. LeMar
Burke, Warren, MacKay & Serritella, P.C.
330 North Wabash Avenue, Suite 2100
Chicago, Illinois 60611-3607
Telephone: (312) 840-7000
Facsimile: (312) 840-7900
Email: alemar@burkelaw.com

*Attorneys for Third-Party Defendant
Consumer Nsight LLC*

In its Opposition to third-party defendant Consumer Nsight LLC's Motion to Dismiss Allied First Bank, SB's Third Party Complaint,[1] Allied First Bank, SB argues that merely doing business with an entity headquartered in Illinois is sufficient for this Court to exercise jurisdiction over Consumer Nsight, despite decades of precedent holding the exact opposite. Illinois courts distinguish between the transaction of business in Illinois and the transaction of business with an Illinois corporation, and only the former constitutes grounds for exercising personal jurisdiction over a foreign defendant. Consumer Nsight does not transact business in Illinois and, therefore, neither general nor specific personal jurisdiction exist. As detailed in Consumer Nsight's Motion and Memorandum, there are numerous other grounds warranting dismissal of the TPC, including that there is no right to indemnity under the TCPA, the TPC fails to plausibly allege a claim for breach of an express contract or breach of implied contract, and insufficient service of process. As discussed below, Allied First fails to rebut any of Consumer Nsight's arguments, and the Court should dismiss the TPC with prejudice.

I. **ALLIED FIRST DOES NOT REFUTE THE DECLARATION SUBMITTED BY CONSUMER NSIGHT WHICH VERIFIES THAT THIS COURT LACKS PERSONAL JURISDICTION OVER CONSUMER NSIGHT.**

When a defendant challenges the exercise of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction exists. *Ticketreserve, Inc. v. Viagogo*, *Inc*., 656 F. Supp. 2d 775, 780 (N.D. Ill. 2009) (citing *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 548 (7th Cir. 2004)). Further, when a defendant "submit[s] evidence opposing the district court's exercise of personal jurisdiction, the plaintiff[] must similarly submit affirmative evidence supporting the

---

[1] In this Reply, Consumer Nsight will refer to its Motion to Dismiss Allied First Bank, SB's Third Party Complaint Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6) (Dkt. No. 95) as "Motion" or "Mot.," its supporting Memorandum (Dkt. No. 96) as "Memorandum" or "Mem.," and Allied First's Memorandum in Opposition to the Motion (Dkt. No. 103-1) as "Opposition" or "Opp." Consumer Nsight will also use the same abbreviations and defined terms that it used in its Motion and Memorandum.

1

court's exercise of jurisdiction." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). And the Court accepts as true any unrefuted facts in the defendant's supporting materials. *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009).

Here, Allied First failed to meet its burden. In support of its Motion, Consumer Nsight submitted the Declaration of Richard Sabatino verifying, among many other facts confirming that personal jurisdiction does not exist, that Consumer Nsight does not do business in Illinois, did not provide services to Allied First in Illinois, did not communicate with anyone at Allied First in Illinois, did not solicit business from Allied First or anyone else in Illinois, did not make the phone calls on which Plaintiff's TCPA claim is based, did not transfer the subject calls to an Allied First branch in Illinois, did not have a contract with Allied First, and the call center that made the calls to Plaintiff was not located in Illinois. (Sabatino Decl. ¶¶ 5-15, 19-20, 24-25.) Consumer Nsight does not directly solicit business in Illinois, nor has it ever, and the only Allied First branch location for which Consumer Nsight provided services is located in Arizona. (*Id*. ¶¶ 10, 20, 22.) The proposal Mr. Sabatino emailed to Allied First on behalf of Consumer Nsight was sent from Florida to Allied First's Regional Sales Manager located in Arizona, and none of the communications exchanged between Consumer Nsight and Allied First were directed to anyone located in Illinois. (*Id*. ¶¶ 21-23; Ex. A to Sabatino Decl.)

Allied First did not submit *any* affirmative evidence supporting the court's exercise of jurisdiction or refuting the Sabatino Declaration, and it is clear that neither general[2] nor specific personal jurisdiction exist over Consumer Nsight. Consumer Nsight has not had "continuous and systematic contacts with the forum state" to confer general personal jurisdiction. *See LKQ Corp. v. Kia Am., Inc.*, No. 21 C 3166, 2022 WL 1092119, at *3 (N.D. Ill. Apr. 12, 2022) (internal

---

[2] Allied First does not articulate whether it is claiming this Court has general or specific jurisdiction over Consumer Nsight.

2

quotation omitted). Thus, Allied First's only option is to establish specific personal jurisdiction. *See Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 713(7th Cir. 2003) (explaining that where a defendant's contacts with the forum state are more limited, the plaintiff's only option is to establish specific personal jurisdiction). To do so, Allied First must establish each of the following: (1) Consumer Nsight purposefully directed its activities at Illinois or purposefully availed itself of the privilege of conducting business in Illinois; (2) the alleged breach of contract arises out of Consumer Nsight's Illinois related activities; and (3) subjecting Consumer Nsight to specific jurisdiction in Illinois comports with traditional notions of fair play and substantial justice. *See Tamburo v. Dworkin,* 601 F.3d 693, 701 (7th Cir. 2010). None of the forgoing elements have been satisfied.

Instead of attempting to show that the essential factors are satisfied, Allied First argues generally that Consumer Nsight's purported "contacts" are "sufficient to subject Consumer Nsight to personal jurisdiction in Illinois." (Opp. at 2.) The unrefuted Sabatino Declaration conclusively establishes that Consumer Nsight has no contacts with Illinois. Further, that Consumer Nsight contacted an Allied First representative in Arizona regarding the services provided by Consumer Nsight alone is insufficient to establish jurisdiction. Allied First ignores the fact that Consumer Nsight's communications were not directed to Illinois. The "minimum contacts" analysis requires courts to look at "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Curry v. Revolution Lab'ys, LLC,* 949 F.3d 385, 397 (7th Cir. 2020) (citing *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).

Further, the plaintiff "cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden*, 571 U.S. at 285-86 (citation omitted). "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958).

3

Here, Consumer Nsight has no contacts with Illinois, and the claim that Allied First is headquartered in Illinois is clearly insufficient.

Allied First contends that Consumer Nsight exchanged an email with an Allied First employee whose email signature block explicitly indicated he was located in Scottsdale, Arizona, but underneath his signature block and Allied First's logo, it indicated Allied First's headquarters were in Illinois. (Opp. at 8.) Allied First then claims this is sufficient to meet the minimum contacts requirement and warrants this Court exercising personal jurisdiction over Consumer Nsight. (*Id*. at 8-9.) While Allied First claims this email is attached as Exhibit 2 to the Opposition, there are no exhibits to the Opposition. Moreover, the purported email was not verified by an affidavit, and Allied First does not indicate the date the email was sent nor the subject matter of the email. Accordingly, the email is not properly before the Court and should not be considered.

Regardless, Allied First's contention is contradicted by well-established law. Allied First argues this Court has personal jurisdiction over Consumer Nsight because, "[i]n pitching services to Allied First, Consumer Nsight knowingly affiliated itself with an enterprise based in Illinois." (*Id*. at 8.) There is no law to support the contention that knowingly affiliating with a company headquartered in Illinois subjects a nonresident to personal jurisdiction in Illinois. To the contrary, "Illinois courts distinguish 'between the transaction of business in Illinois and the transaction of business with an Illinois corporation. Only the former constitutes grounds for exercising in personam jurisdiction over a foreign defendant . . . ." *Hexacomb Corp. v. GTW Enterprises, Inc.*, No. 93 C 3107, 1994 WL 174114, at *3 (N.D. Ill. May 5, 1994) (citation and quotation marks omitted)). *See also Afirm, Inc. v. Frazee Paint & Wallcovering Co., Inc*., 624 F. Supp. 973, 978 (N.D. Ill. 1985) (doing some business with an Illinois employment agency is not the same as doing business in Illinois). In *Vioski v. Calaveras Asbestos, Ltd*., 929 F.2d 352, 354 (7th Cir.1991), the Seventh Circuit found that the defendant was not doing business in Illinois where it had "long-term

4

dealings" with the Wisconsin branch of an Illinois corporation and even shipped some product into Illinois. *Id*.

Here, while Consumer Nsight provided advertising consulting services to Allied First, the only Allied First branch location for which Consumer Nsight provided services is located in Arizona, none of the communications by Consumer Nsight occurred within Illinois, nor were any communications directed to Allied First in Illinois. All communications to Allied First were sent from Consumer Nsight in Florida and to Allied First's employee Craig Mattson in Arizona. (Sabatino Decl. ¶¶ 20-23). The mere fact that Consumer Nsight did some business with an alleged Illinois corporation alone is insufficient.

In specific jurisdiction cases, "the action must directly arise out of the contacts between the defendant and the forum." *Ill. Com. Comm'n v. Entergy-Koch Trading, LP*, 841 N.E.2d 27, 33 (Ill. App. 2005) (citation omitted). Here, Allied First's purported causes of action (breach of contract, breach of implied contract, and indemnification for Consumer Nsight's purported breach of its own purported contract) do not arise from any transaction of Consumer Nsight within Illinois and certainly not out of the making or performance of a contract substantially connected with Illinois. Further, the phone calls that are the subject of Plaintiff's TCPA claim were not made by Consumer Nsight, were not made to an Illinois resident or an Illinois phone number, and were not transferred to an Allied First branch in Illinois. (*See* Sabatino Decl. ¶¶ 24-28.) There is zero connection between Allied First's third-party claims and any purported conduct in Illinois on the part of Consumer Nsight.

Indeed, the "transaction of business in Illinois" standard is not met where the alleged acts forming the basis of plaintiff's claims occurred outside of Illinois. *Hexacomb Corp. v. GTW Enterprises, Inc.*, No. 93 C 3107, 1994 WL 174114, at *2 (N.D. Ill. May 5, 1994). Even "interstate telephone and mail communications to an Illinois plaintiff are not sufficient to constitute the

5

transaction of business required by the Illinois long-arm statute. This is true regardless of which party initiates the calls, correspondence or the transaction itself"). *Maurice Sternberg, Inc. v. James*, 577 F. Supp. 882, 885 (N.D. Ill. 1984) (citations omitted).

There is no merit to Allied First's contention that, by "knowingly affiliat[ing] itself with an enterprise based in Illinois," Consumer Nsight transacted business within the state of Illinois for purposes of specific personal jurisdiction. (*See* Opp. at 8). There is also no allegation in the TPC that Consumer Nsight performed any contract substantially connected with the State of Illinois, and the Sabatino Declaration confirms Consumer Nsight did not have a written contract with Allied First, and the only Allied First branch location for which Consumer Nsight provided services is located in Arizona. (Sabatino Decl. ¶¶ 20, 22.) Therefore, Allied First has failed to show the Court has personal jurisdiction over Consumer Nsight, and the Court should dismiss the TPC pursuant to Fed. R. Civ. P. 12(b)(2).

## II. ALLIED FIRST IGNORES THE DISTINCT FACTORS IT HAS THE BURDEN OF SHOWING TO ESTABLISH PERSONAL JURISDCITION.

Allied First does not attempt to argue that any one of the requirements necessary for this Court to exercise jurisdiction over Consumer Nsight are met (*i.e.* purposeful availment, specific jurisdiction requirements, and whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice). Allied First does not identify a subsection of the Illinois long-arm statue under which its causes of action arise, despite the fact that only causes of action arising from the acts enumerated in Section 2-209(a) may be asserted against a defendant in an action in which jurisdiction over him or her is based on long-arm jurisdiction. *See* 735 ILCS 5/2-209(f); *see also Ideal Insurance Agency, Inc. v. Shipyard Marine, Inc.*, 213 Ill. App. 3d 675, 678 (1991) ("Only the cause of action arising from that act may be asserted against a

6

defendant based on long-arm jurisdiction." (citing 735 ILCS 5/2-209(f)). This failure by Allied First alone warrants dismissal of the TPC.

Instead of addressing the basic requirements for personal jurisdiction, Allied First selects pieces from various cases and concludes generally that "Consumer Nsight is subject to personal jurisdiction in Illinois." (Opp. at 9.) This is insufficient, and the cases cited in Allied First's Responses do not support exercising jurisdiction over Consumer Nsight.

For example, Allied First argues that "one relevant inquiry is which party initiated the business transaction," citing to *Heritage House Restaurants, Inc. v. Cont'l Funding Grp., Inc.,* 906 F.2d 276 (7th Cir. 1990). (Opp. at 7.) In *Heritage*, however, the court considered and discussed the defendant's "initiation and maintenance of affirmative contacts with an Illinois corporation" in analyzing "the relative convenience of litigating in that forum and the interests of the states involved." *Id*. at 284. This analysis was made only *after* the court determined that jurisdiction existed under Illinois's long-arm statute and, further, only *after* the court determined that the defendant had established minimum contacts with Illinois. *See id*. As the *Heritage* court recognized, "[e]ach cause of action alleged must independently arise from one of the enumerated acts" set forth in Illinois's long-arm statute and "[o]nce a court has determined that jurisdiction exists under the long-arm statute, it must also ensure that constitutional due process requirements would not be violated by exercising jurisdiction over the nonresident defendant." *Id*. (citation omitted).

Here, Allied First does not mention Illinois's long-arm statute or constitutional due process requirements. Instead, Allied First would have this Court ignore the first two essential factors considered by courts in deciding personal jurisdiction and jump directly to considerations related to the convenience of the forum.

7

The decision in *WAV, Inc. v. Walpole Island First Nation*, 47 F. Supp. 3d 720 (N.D. Ill. 2014) (cited in Opp. at 7), also does not support the exercise of personal jurisdiction over Consumer Nsight. In *WAV*, the defendant challenging personal jurisdiction entered into a written agreement with an Illinois entity that contained an Illinois choice-of-law provision and was largely negotiated and performed in Illinois. *Id*. at 725. The plaintiff also submitted an affidavit confirming the defendant knew it was affiliating itself with an enterprise based primarily in Illinois "and also took part in regular, direct communications with the plaintiff's Illinois office via telephone and mail." *Id*. at 727. The Court found the defendant was an "active purchaser" subject to personal jurisdiction because it solicited the plaintiff's services and aggressively negotiated to buy customized products and services. *Id*. (noting that "Illinois law distinguishes between 'active' purchasers, who are deemed to have submitted to jurisdiction in the seller's forum, and 'passive' purchasers, who have not.") *Id*. (citation and quotation marks omitted). The facts in *WAV* are clearly distinguishable from the case here, where Consumer Nsight had no communications with Allied First's office in Illinois and did not do any business with Allied First in Illinois.

Allied First suggests that *Lukas Mktg. v. Prince George's Cmty. Coll.,* No. 1:13-CV-04062, 2013 WL 5818592, at *4 (N.D. Ill. Oct. 29, 2013) supports exercising jurisdiction only upon a showing that the defendant initiated significant phone, e-mail and mail contacts with the plaintiff in Illinois throughout the formation of a contract. (Opp. at 8.) Even if that were an accurate summary of the Court's finding in *Lukas*, which it is not, *Lukas* is not instructive because Consumer Nsight did not have *any* contact with anyone in Illinois. Further, the *Lukas* court's conclusion that personal jurisdiction existed over the nonresident was reached following an in-depth analysis of numerous facts and factors beyond the defendant's initiation of communications with the Illinois plaintiff, the latter of which was relevant to whether the defendant purposefully availed itself of the privilege of conducting business in Illinois, finding the defendant's contacts with Illinois were

8

"intensive" and "with the specific aim of arriving at the terms of a contract," "not random, fortuitous or attenuated." *Lukas Mktg.*, 2013 WL 5818592, at *5. The defendant's numerous contacts resulted in the defendant changing its proposal substantively, awarding a bid to the plaintiff and paying an initial deposit to the plaintiff in Illinois. *Id*. Performance of the contract took place in Illinois for the benefit of the defendant. *Id*. Thus, the Court should reject Allied First's suggestion that initiation of communications alone is sufficient to support the exercise of personal jurisdiction, even if Consumer Nsight had initiated contact with Allied First in Illinois, which it did not. (*See* Sabatino Decl. ¶¶ 20-23.)

Again, as the court in *Lukas* recognized, both the purposeful availment *and* specific jurisdiction requirements must be met and, if they are, the Court also must then consider whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *Lukas Mktg.*, 2013 WL 5818592, at *3. Here, Allied First does not undertake any analysis of whether these three distinct requirements are met, despite having the burden of demonstrating the existence of personal jurisdiction over Consumer Nsight. Because Allied First has not shown personal jurisdiction over Consumer Nsight exists, the TPC must be dismissed.

### III. ALLIED FIRST EITHER FAILS TO ADDRESS OR FAILS TO OVERCOME CONSUMER NSIGHT'S ARUGMENTS IN SUPPORT OF DISMISSAL PURSUANT TO RULE 12(b)(6).

#### A. There is no right to indemnity under the TCPA.

In its Memorandum, Consumer Nsight argued the Court should dismiss the TPC with prejudice because there is no right to indemnity under the TCPA. (Mem. at 10-13.) In response, Allied First argues federal courts allow indemnification where a contractual indemnification provision governs. (Opp. at 13.) The Court should reject this argument because Allied First does not attach any contract to the TPC or allege the terms of any alleged contract between Allied First and Consumer Nsight, much less that there was any specific contractual provision requiring

9

Consumer Nsight to indemnify Allied First for any TCPA claims. Rather, all Allied First alleges in both its breach of contract and breach of implied contract claims is that "*[i]nherent* in this contract was that . . . Consumer Nsight would be obligated to indemnify Allied First in the event of a breach." (TPC ¶¶ 32, 44 (emphasis added).) Because Allied First has not plausibly alleged any there was any contract between Allied First and Consumer Nsight requiring Consumer Nsight to indemnify Allied First, the Court should reject Allied First's argument and dismiss the TPC as an improper attempt to seek indemnification for TCPA liability. (*See* Mem. at 10-13.)

Furthermore, Allied First's third claim in the TPC is an independent claim for indemnification pled in addition to Allied First's two breach of contract claims. Either Allied First is seeking indemnification from Consumer Nsight for Consumer Nsight's purported breach of the alleged contract between Allied First and Consumer Nsight (wholly unrelated to Plaintiff's claims), or Allied First is attempting to characterize its indemnification claim related Plaintiff's TPCA claims as one arising under contract because federal law creates no right to indemnification for damages paid under the TCPA. If it is the former, this Court lacks subject matter jurisdiction over Allied First's claim. (*See* Mem. at 21-23.) If it is the latter, this Court, like others, should reject Allied First's attempt to characterize its claims as anything other than claims for indemnification. (*See id*. at 10-13.)

Given that Allied First filed its TPC pursuant to Fed. R. Civ. P. 14(a)(1), it is clear Allied First is attempting to hold Consumer Nsight accountable to it "for all or part of the claim against it." *See* Fed. R. Civ. P. 14(a)(1). This is further verified in the Opposition, in which Allied First affirmatively states, "Allied First's claims against Consumer Nsight are necessarily contingent on Plaintiff's underlying TPC claim against Allied First" and that Allied First's claims "arise out of Plaintiff's claims for breach of the TCPA." (Opp. at 2, 14.) Allied First further contends that "liability lies, if at all, with Consumer Nsight" and "[t]o the extent Allied First is liable on any basis

10

for Plaintiff's claims, Allied First has grounds to seek relief against Consumer Nsight for its breach of agreement to provide legally compliant transfers to Allied First." (*Id*. at 14.)

Having been granted leave to file its TPC, Allied First cannot now change course and argue it is not seeking to hold Consumer Nsight liable to it for breach of contract and indemnification, but not for all or part of Plaintiff's claim against Allied First under the TCPA.

### B. The TPC does not allege facts to support Allied First's claims.

In its Memorandum, Consumer Nsight argued the TPC does not allege offer, acceptance and consideration and, therefore, fails to allege facts to support formation of a valid contract between Allied First and Consumer Nsight. (Mem. at 15). Consumer Nsight further argued that Allied First's breach of contract claims are not ripe for adjudication because they depend on an event that has not yet happened (i.e., that a judgment is entered in favor of Plaintiff against Allied First under the TCPA in the underlying action), and Allied First cannot plausibly allege the damage element of its breach of contract claims because it does not any present damage or injury. (*Id*. at 16-17, 19.) Allied First does not address these arguments in its Opposition. As a result, Allied First has waived and forfeited any arguments it may have on these points. *Petzel v. Kane County DOT*, No. 16 cv 5435, 2017 U.S. Dist. LEXIS 104564, at *18 (N.D. Ill. July 6, 2017) ("A plaintiff waives their arguments where they fail to develop arguments related to a discrete issue or fail responding to alleged deficiencies in a motion to dismiss.") (citing *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("[A] litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss.") (citations omitted)). *See also Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."); *Anderson v. United Airlines, Inc.*, No. 23 C 989, 2023 U.S. Dist. LEXIS 155985, at *26-27 (N.D. Ill. Sep. 5, 2023) (plaintiff's failure to respond to arguments in motion to dismiss meant "he has forfeited the claims") (citations omitted).

11

Allied First does not directly address Consumer Nsight's argument that the TPC does not allege any obligations on the part of Allied First under the purported contract or how it complied with such obligations, two essential elements of its breach of contract claims. (*See* Mem. at 14-15.) Instead, Allied First merely contends the TPC alleges Allied First *performed* its obligations. (Opp. at 10.) However, when a complaint merely alleges a plaintiff complied with all of its requirements under a contract, without identifying what the plaintiff's obligations were or how it complied with such obligations, it is insufficient. *See Solvay USA v. Cutting Edge Fabrication, Inc.*, 521 F. Supp. 3d 718, 724 (N.D. Ill. 2021).

In response to Consumer Nsight's argument that the TPC fails to sufficiently allege a breach on the part of Consumer Nsight (Mem. at 15-16), Allied First refers to Paragraph 35 of the TPC, which states Consumer Nsight "materially breached this contract by failing to provide transfers to Allied First generated by lawful means." (Opp. at 10). As pointed out in Consumer Nsight's Memorandum, however, the TPC does not allege facts to support this conclusory allegation. (Mem. at 14-15.) Allied First does not address this point in its Opposition and, therefore, has waived any argument it has on this issue. *Alioto*, 651 F.3d at 721; *Bonte*, 624 F.3d at 466; *Anderson*, 2023 U.S. Dist. LEXIS 155985, at *26-27; *Petzel*, 2017 U.S. Dist. LEXIS 104564, at *18.

A claim for breach of contract must "allege[] enough facts to put [a defendant] on fair notice of the 'contractual duty' it breached." *Montgomery v. Scialla*, No. 15-CV-10840, 2017 WL 3720178, at *5 (N.D. Ill. Aug. 29, 2017) (citation omitted). The TPC does not put Consumer Nsight on fair notice as to the alleged terms or existence of a contract, Consumer Nsight's duties under any contract, how Consumer Nsight failed to provide transfers generated by lawful means, what Allied First's obligations were under the purported contract, or how Allied First complied with such obligations. In its Opposition, Allied First does not provide any clarity of its claims or authority suggesting its claims can survive dismissal, instead relying solely on its conclusory allegations in

12

the TPC. Accordingly, Allied First's breach of contract claims (both express and implied) must be dismissed pursuant to Rule 12(b)(6).

## IV. ALLIED FIRST'S INDEPENDENT STATE LAW CLAIMS ARE NOT PROPER THIRD-PARTY CLAIMS AND THE COURT LACKS SUBJECT MATTER JURISDICITON OVER SUCH CLAIMS.

Allied First argues its indemnification claim is for contractual indemnification, claiming Consumer Nsight has an obligation to indemnify Allied First for its breach of contract (Opp. at 13.) Based on this position, it necessarily follows that Allied First seeks indemnification for *breach* of the purported contract between Allied First and Consumer Nsight, not indemnification for Plaintiff's claims. Accordingly, Allied First's claims were not properly brought as third party claims pursuant to Rule 14 of the Federal Rules of Civil Procedure and, further, this Court does not have jurisdiction over Allied First's claims, which are independent of Plaintiff's TCPA claim. When a party moves for dismissal under Rule 12(b)(1) challenging the factual basis for jurisdiction, the nonmoving party must support its allegations with competent proof of jurisdictional facts. *Catapult Commc'ns Corp. v. Foster*, No. 06 VC 6112, 2009 WL 1469813, at *1 (N.D. Ill. May 27, 2009). Here, Allied First has failed to meet its burden and the TPC should be dismissed pursuant to Rule 12(b)(1). (*See* Mem. at 21-23.)

## V. ALLIED FIRST FAILS TO REBUT THAT THE TPC SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(5).

Finally, as Consumer Nsight argued, the Court should dismiss the TPC because Allied First failed to properly serve Consumer Nsight with a summons and the TPC. (Mem. at 4-6.) Allied First clams it properly served Consumer Nsight *after* Consumer Nsight filed its Motion. Specifically, Allied First claims that, on November 20, 2024, it attempted to serve Consumer Nsight at its registered address, but the registered agent was not present, so Allied First then served Consumer Nsight "at its registered agent's home address" on November 26, 2024. (Opp. at 5.)

13

Allied First cites to an "Exhibit 1" that is supposedly an affidavit of service, but Allied First did not attach or file any exhibits in support of the Opposition. Because Allied First has failed to present the Court with any competent proof of proper service on Consumer Nsight, the Court should dismiss the TPC pursuant to Rule 12(b)(5) for insufficient service of process. (Mem. at 5.)

Even if Allied First had provided evidence of proper service on Consumer Nsight on November 26, 2024, the Court should dismiss the TPC because service was made after the expiration of the 90-day service window in Federal Rule of Civil Procedure 4(m), which states, "If a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). "If a defendant is not served within the allotted time, the court must dismiss the action against the defendant unless the plaintiff can show good cause for failure to timely serve." *Bilik v. Hardy*, No. 12-cv-04532, 2018 U.S. Dist. LEXIS 144176, at *30 (N.D. Ill. Aug. 24, 2018) (citation omitted). To show good cause, there must have been reasonable and diligent efforts at service within the 90-day period. *Id*. at *30-31 ("The plaintiff must show that he engaged in reasonable and diligent efforts to effect service to support a finding of good cause. A plaintiff makes reasonable efforts if he proceeds in a manner reasonably calculated to effect service within the prescribed time."). "Neither inadvertent failure to serve a defendant within the statutory period nor half-hearted efforts to serve a defendant establish good cause." *McCullum v. Silver Cross Hosp.*, No. 99 C 4327, 2001 U.S. Dist. LEXIS 12745, at *9 (N.D. Ill. Aug. 21, 2001) (citation omitted).

The TPC was filed on August 5, 2024, so Rule 4(m)'s 90-day service window expired on November 4, 2024. Allied First – a corporation represented by counsel who are presumably aware of proper service requirements – does not explain why it could not attempt proper service on Consumer Nsight in the first instance or why, after receiving Consumer Nsight's Motion, it could not attempt to serve Consumer Nsight within the 90-day window. The Motion was filed on October

14

25, so Allied First still had ten days after the Motion was filed to try to serve Consumer Nsight before Rule 4(m)'s 90-day service window expired. Instead, Allied First waited several more weeks before first attempting to properly serve Consumer Nsight. (*See* Opp. at 5, n. 1.) Allied First's attempt to serve Consumer Nsight by certified mail in September 2024 cannot be considered a reasonable or diligent effort to serve Consumer Nsight because, as discussed in the Memorandum, it is well-established that certified mail is not proper service under federal, Illinois, or Florida service rules. (*See* Mem. at 5-6.) Therefore, the Court should reject Allied First's argument that it had good cause for failing to properly serve Consumer Nsight within Rule 4(m)'s 90-day service window, and the Court should dismiss the TPC pursuant to Rule 12(b)(5) as a result.[3]

## CONCLUSION

For the foregoing reasons and those set forth in Consumer Nsight's Motion and Memorandum, the Court should dismiss the TPC with prejudice.

Dated: December 20, 2024

Respectfully submitted,

**CONSUMER NSIGHT LLC**

By: /s/ Andrew D. LeMar
One of Its Attorneys

Andrew D. LeMar
Burke, Warren, MacKay & Serritella, P.C.
330 North Wabash Avenue, Suite 2100
Chicago, Illinois 60611-3607
Telephone: (312) 840-7000
Facsimile: (312) 840-7900
alemar@burkelaw.com

---

[3] That Consumer Nsight or its counsel may have been aware of the TPC (*see* Opp. at 6) cannot cure Allied First's defective service, as "[a]ctual notice to the defendant is insufficient; the plaintiff must comply with the directives of Rule 4." *McMasters v. United States*, 260 F.3d 814, 817 (7th Cir. 2001) (citations omitted).

**CERTIFICATE OF SERVICE**

On December 20, 2024, the undersigned caused the foregoing Reply in Support of Third-Party Defendant Consumer Nsight LLC's Motion to Dismiss Allied First Bank, SB's Third Party Complaint Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6), to be filed electronically with the Northern District of Illinois, and served upon all parties registered to receive notice via the Court's CM/ECF system.

             /s/ Andrew D. LeMar
             Andrew D. LeMar

4916-4767-6680, v. 2