IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SAMUEL KATZ, individually and on behalf of all
others similarly situated,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　Plaintiff,　　　　　　　)　　Case No.　22 C 5277
　　　　　　　　　　　　　　　　　　　　　)
　　v.　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)　　Judge Robert W. Gettleman
ALLIED FIRST BANK, SB　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　Defendant.　　　　　　)
_____)
　　　　　　　　　　　　　　　　　　　　　)
ALLIED FIRST BANK, SB,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　Third-Party Plaintiff,　　)
　　　　　　　　　　　　　　　　　　　　　)
　　v.　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
CONSUMER NSIGHT LLC,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　Third-Party Defendant.　)

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Samuel Katz filed a first amended complaint on behalf of himself and a class of individuals against defendant, Allied First Bank, SB, and another defendant, Consumer Nsight LLC, under the Telephone Consumer Protection Act ("TCPA"). The TCPA is designed to protect consumers from annoying telemarketing phone calls. According to Katz, he and the class members are listed on the National Do Not Call Registry. Yet, he alleges, Consumer Nsight made unsolicited calls to them, and then transferred those calls to Allied First—which, he says, had contracted with Consumer Nsight to generate mortgage refinancing leads. Katz thus alleges that Allied First and Consumer Nsight violated the TCPA, 47 U.S.C. § 227, and he seeks damages and injunctive relief on behalf of himself and the class.

Consumer Nsight has since settled with Katz, and has been dismissed as a defendant from the case. Allied First has answered, denying liability. It has also asserted a third-party complaint against Consumer Nsight, alleging that Allied First entered into a contract with Consumer Nsight, under which Consumer Nsight agreed that its call transfers would not violate any laws. Allied First thus alleges that, if Katz's claim is successful, Consumer Nsight breached the contract and must indemnify Allied First. Consumer Nsight moves to dismiss the third-party complaint under Fed. Rs. Civ. P. 12(b)(1), (2), (5), and (6). For the reasons below, the court grants Consumer Nsight's motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction.

## BACKGROUND

On September 27, 2022, Katz filed a complaint, naming Allied First as the sole defendant. He then filed a first amended complaint, in which he added Consumer Nsight as a defendant and accused both Allied First and Consumer Nsight of violating the TCPA.

Allied First answered the first amended complaint. Consumer Nsight did not. It instead moved to dismiss the first amended complaint under Rule 12(b)(2), arguing that the court lacked personal jurisdiction over it. The court stayed ruling on the motion and allowed Katz to take jurisdictional discovery. Katz then settled with Consumer Nsight, stipulated to dismissal, and the court dismissed Katz's claims against Consumer Nsight with prejudice and dismissed any putative class member's claims without prejudice.

Allied First thereafter moved, (1) to join Iconic Results, LLC—the call center used by Consumer Nsight—as a necessary party, and (2) for leave to file an amended answer to the first amended complaint that would include a third-party complaint against Consumer Nsight. The

2

court denied the motion to join Iconic but granted Allied First leave to file an amended answer and a third-party complaint against Consumer Nsight. Allied First then filed its first amended answer to the first amended complaint, which included its third-party complaint against Consumer Nsight.

In its third-party complaint, Allied First alleges that it is an "Illinois-chartered state bank that is headquartered in Oswego, Illinois," and that, on "information and belief, Consumer Nsight is a Florida" LLC. According to Allied First, the court has subject matter jurisdiction under 28 U.S.C. § 1332 based on diversity jurisdiction and has "personal jurisdiction over Consumer Nsight because Consumer Nsight entered into a contract with and provided services to Allied First, which is headquartered in the Northern District of Illinois."

As for the contract, Allied First alleges that it entered into an agreement with Consumer Nsight "for Consumer Nsight to provide prescreened refinance live transfers to Allied First." A "live transfer" is where, for example, a call center makes telemarketing calls and then transfers the call directly to another party. Allied First alleges that, "[o]n or about January 28, 2022, Consumer Nsight emailed Allied First a proposal outlining the quantity and price of prescreened refinance live transfers to Allied First," and Allied First shortly thereafter "paid the amount requested in the proposal."

Consumer Nsight, Allied First claims, obtained leads for people who were interested in potential mortgage options, who had provided their contact information, and who were to have provided their "explicit written consent to be contacted" by cell phone. Allied First further alleges that it paid for transfers of calls from those people, relying on Consumer Nsight to make sure those calls "would be made in compliance with the law, including the [TCPA]." According

to Allied First, Consumer Nsight retained Iconic "to have calls transferred to Allied First based on leads obtained by Consumer Nsight," and "[u]nder the agreement between Allied First and Consumer Nsight, the transfers started on or around February 3, 2022, and continued until on or around April 8, 2022." During that time, Iconic "obtained information from the person called and decided" which financial services entity "would receive the transfer based on the person's answers to the questions, as instructed by Consumer Nsight." Allied First thus "did not initiate any calls to" Katz, "but instead received transfers initiated by Iconic."

Allied First's third-amended complaint asserts three claims against Consumer Nsight. In its "breach of contract" claim, Allied First alleges that: Allied First and Consumer Nsight had an enforceable contract; "[i]nherent in this contract was that the live transfers would not violate any laws and that Consumer Nsight would be obligated to indemnify Allied First in the event of a breach"; Allied First performed under the contract; "[i]f [Katz]'s claims are adjudicated to be valid, then Consumer Nsight materially breached this contract by failing to provide transfers to Allied First generated via lawful means"; Consumer Nsight "breached the duty of good faith and fair dealing implied in the contract" by "exercis[ing]" its discretion to "provid[e] prescreened refinance live transfers obtained by lawful means" in bad faith and in a manner inconsistent with Allied First's reasonable expectations; and Allied First has suffered damages from the breach.

In the "alternative," Allied First alleges a "breach of implied contract" claim, in which it alleges that: the two companies "entered into an implied contract for Consumer Nsight to provide prescreened refinance live transfers to Allied First"; Consumer Nsight provided a proposal to Allied First, promising "to provide a specific quantity of prescreened refinance live transfers to Allied First for a specific amount"; Allied First paid Consumer Nsight for the prescreened

4

refinance live transfers, Consumer Nsight accepted the payment, and the two thus entered into "an implied contract whereby Consumer Nsight was obligated to take reasonable steps to provide prescreened refinance live transfers based on lawfully obtained leads"; "[i]f [Katz]'s claims are determined to be valid, Consumer Nsight materially breached this contract by failing to provide transfers to Allied First generated via lawful means"; and Allied First has suffered damages from the breach.

Finally, Allied First alleges an "indemnification" claim. According to Allied First, under either the express or implied contract, Consumer Nsight was "obligat[ed] to provide live transfers to Allied First that did not violate any laws" and "to indemnify Allied First in the case of a breach." Thus, it alleges, "[t]o the extent Allied First is liable to [Katz] for damages related to said breach, Consumer Nsight is liable to Allied First."

## DISCUSSION

Consumer Nsight has moved to dismiss the third-party complaint in its entirety based on four grounds: (1) under Fed. R. of Civ. P. 12(b)(2), because the court lacks personal jurisdiction over Consumer Nsight; (2) under Rule 12(b)(5), because Allied First improperly served the third-party complaint on Consumer Nsight by certified mail; (3) under Rule 12(b)(6), because indemnity claims are not available under the TCPA and because the third-party complaint does not allege facts to state a claim for breach of contract (express or implied) under Arizona, Florida, or Illinois law; and (4) under Rule 12(b)(1) if Allied First contends that its claims are independent of Katz's TCPA claim, because Allied First either seeks indemnification under the

5

TCPA (a claim that it cannot assert) or asserts independent claims under state law over which the court lacks supplemental jurisdiction.

As explained further below, the court agrees with Consumer Nsight that the court lacks personal jurisdiction over it. Although "[c]ustomarily, a federal court first resolves doubts about its jurisdiction over the subject matter," Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 578 (1999), the "court may dismiss for lack of personal jurisdiction without determining whether subject-matter jurisdiction exists," Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 939 n.2 (7th Cir. 2000). The court will do that here, and thus does not reach the other asserted grounds for dismissal (including subject matter jurisdiction).

## Dismissal Based on Lack of Personal Jurisdiction

### Procedural Standards

A complaint need not include allegations establishing personal jurisdiction. Curry v. Revolution Labs., LLC, 949 F.3d 385, 392 (7th Cir. 2020). But "once the defendant moves to dismiss the complaint under [Rule] 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden" to show its "existence." Id. (cleaned up). Because the court is determining personal jurisdiction here based "on the submission of written materials, without the benefit of an evidentiary hearing," Allied First need "only to make out a *prima facie* case of personal jurisdiction." North v. Ubiquity, Inc., 72 F.4th 221, 224-25 (7th Cir. 2023) (cleaned up).

To support its argument that Allied First has not done so here, Consumer Nsight has attached to its motion a declaration from its CEO and sole member, Richard Sabatino. In determining whether Allied First has made a prima facie case, the "court may weigh" the

declaration. Curry, 949 F.3d at 393. But because Allied First "is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record," the court "accept[s] as true" only those facts in the declaration "that do not conflict with anything in the record." Id. (cleaned up). When a defendant "submits evidence opposing the district court's exercise of personal jurisdiction, the plaintiff must similarly submit affirmative evidence supporting the court's exercise of jurisdiction." Matlin v. Spin Master Corp., 921 F.3d 701, 705 (7th Cir. 2019).

Personal Jurisdiction Law

"[A] federal court sitting in Illinois may exercise jurisdiction over [Consumer Nsight] only if authorized both by Illinois law and by the United States Constitution." Curry, 949 F.3d at 393; see also Philos Techs., Inc. v. Philos & D, Inc., 802 F.3d 905, 912 (7th Cir. 2015) ("District courts exercising diversity jurisdiction apply the personal jurisdiction rules of the state in which they are located."). Under the Illinois long-arm statute, "[a] court may . . . exercise jurisdiction on any . . . basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). The Seventh Circuit has "held that the Illinois long-arm statute permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause." Curry, 949 F.3d at 393 (cleaned up). The issue here thus merges into "whether the exercise of personal jurisdiction over [Consumer Nsight] 'comports with the limits imposed by federal due process.'" Id. (quoting Walden v. Fiore, 571 U.S. 277, 283 (2014)).

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or

7

relations.'" <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 471-72 (1985) (quoting <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 319 (1945)).   The Supreme Court has translated this notion into a "minimum contacts" test.   Under that test, courts may exercise jurisdiction over a defendant that is "not present within the territory of the forum" if "he ha[d] certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"   <u>Int'l Shoe</u>, 326 U.S. at 316 (citation omitted).

There are "two categories" of "minimum contacts."   <u>Curry</u>, 949 F.3d at 395.   The "first category" is "specific jurisdiction," which "focuses on the sufficiency of the defendant's contacts with the forum that also give rise to the liabilities sued on."   <u>Id.</u> (cleaned up).   In other words, "'specific' (sometimes called 'case-link') jurisdiction" requires "'an affiliation between the forum and the underlying controversy'"—"'principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"   <u>Bristol-Myers Squibb Co. v. Superior Court of Cal.</u>, 582 U.S. 255, 262 (2017) (quoting <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 564 U.S. 915, 919 (2011)).

The "second category" is called "general jurisdiction" and applies when "the defendant's continuous operations within a state [are] thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." <u>Curry</u>, 949 F.3d at 395 n.34 (cleaned up).   This "'general' (sometimes called 'all-purpose') jurisdiction" is so called because the defendant's contacts need not be related to the underlying claim.   <u>Bristol-Myers</u>, 582 U.S. at 262.   A court may exercise general jurisdiction over a defendant only if its "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State."   <u>Goodyear</u>, 564 U.S. at 919.   "For a corporation,

8

such places include the state of incorporation and the state of the principal place of business."
Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc., 751 F.3d 796, 800 (7th Cir. 2014).

Analysis

Consumer Nsight argues here that the court has neither general nor specific jurisdiction over it.   As for general jurisdiction, it contends that Allied First has not alleged that Consumer Nsight's "principal place of business is in Illinois or that it is organized under Illinois law," and Sabatino in fact states in his declaration that Consumer Nsight is a Florida LLC with a principal place of business in Florida.

As for specific jurisdiction, Consumer Nsight argues that Allied First's main allegation—that the court has personal jurisdiction here because Consumer Nsight contracted with Illinois-headquartered Allied First—fails.   That is because, Consumer Nsight says, it is the relationship between Consumer Nsight and Illinois—not between Allied First and Illinois—that matters, and Allied First does not allege "that Consumer Nsight worked with, contracted, or provided any services to Allied First's office in" Illinois.   Nor could it, Consumer Nsight contends, because Sabatino's declaration shows that "the Allied First representative with whom Consumer Nsight dealt regarding the proposal was located in Arizona, and the only Allied First branch location with which Consumer Nsight provided services is located in Arizona."   And in fact, Consumer Nsight continues, Allied First itself denies in its first amended answer to Katz's first amended complaint that Consumer Nsight transferred any of the calls at issue or that this court has personal jurisdiction over Consumer Nsight.

9

In response, Allied First argues that "one relevant inquiry" for specific jurisdiction is "which party initiated the business transaction." (Quoting Heritage House Restaurants, Inc. v. Continental Funding Grp., Inc., 906 F.2d 276, 283 (7th Cir. 1990)). And here, it says, Consumer Nsight "pitch[ed] services to Allied First, . . . knowingly affiliat[ing] itself with an enterprise based in Illinois." This, it argues, is shown by an email (which it says it attached to its response but which it in fact did not attach) in which Sabatino "explicitly contacted Craig Mattson, an Allied First employee, to offer his services." "Although Mr. Mattson himself was located in Scottsdale, Arizona," Allied First argues, "his credentials are clear that he was a Regional Sales Manager for Allied First and even provides Allied First's corporate headquarters, located in Oswego, Illinois, in his email signature block."[1] Allied First thus concludes that "Consumer Nsight was aware that its services were being provided to an Illinois company, that litigation may arise out of those services, and that litigation may be brought in Illinois."

In reply, Consumer Nsight points out that Allied First did not refute the Sabatino declaration, which, it says, confirmed "that Consumer Nsight does not do business in Illinois, did not provide services to Allied First in Illinois, did not communicate with anyone at Allied First in Illinois, did not solicit business from Allied First or anyone else in Illinois, did not make the phone calls on which Plaintiff's TCPA claim is based, did not transfer the subject calls to an Allied First branch in Illinois, [and] did not have a contract with Allied First." Nor, it asserts, did Allied First "submit *any* affirmative evidence supporting the court's exercise of jurisdiction or refuting the Sabatino Declaration." (Emphasis by Consumer Nsight). Consumer Nsight also

---

[1] The court notes that the signature block included in Allied First's response brief first lists Mattson's address in Scottsdale, Arizona.

argues that "Allied First ignores the fact that Consumer Nsight's communications were not directed to Illinois." And as for the email Allied First relies on, Consumer Nsight contends that it is not properly before the court, but that even if it were, it does not support jurisdiction. That is because, it asserts, any Consumer Nsight communications to Allied First were sent from Florida to Arizona—not to Illinois.

The court finds that Allied First has failed to meet its burden to establish a prima facie case of personal jurisdiction here. As for general jurisdiction, Allied First neither alleges nor provides any evidence that remotely suggests that Consumer Nsight's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in" Illinois. Goodyear, 564 U.S. at 919. Sabatino's declaration—which Allied First fails to rebut—confirms as much. He states that Consumer Nsight is a Florida LLC with a principal place of business in Florida that has neither conducted nor registered to do any business in Illinois. Allied First thus fails to show that Consumer Nsight is subject to general jurisdiction in Illinois.

The same goes for specific jurisdiction. There are three "essential requirements" for exercising specific jurisdiction over an out-of-state defendant: (1) that the defendant's contacts with the forum state show that it "purposefully availed itself of the privilege of conducting business in the forum state or purposefully directed its activities at the state"; (2) that "the plaintiff's alleged injury must have arisen out of the defendant's forum-related activities"; and (3) that the exercise of jurisdiction "comport[s] with traditional notions of fair play and substantial justice." Lexington Ins. Co. v. Hotai Ins. Co., Ltd., 938 F.3d 874, 878 (7th Cir.2019) (cleaned up). Allied First fails to show that even the first requirement is met.

11

Allied First alleges in the third-party complaint that the court "has personal jurisdiction over Consumer Nsight because Consumer Nsight entered into a contract with and provided services to Allied First, which is headquartered in the Northern District of Illinois." In particular, Allied First alleges that "Consumer Nsight emailed Allied First a proposal outlining the quantity and price of prescreened refinance live transfers to Allied First," and that Allied First then "paid the amount requested in the proposal to Consumer Nsight." Allied First also argues in its response that Sabatino sent communications to Mattson, whose credentials clearly showed that "he was a Regional Sales Manager for Allied First and even provides Allied First's corporate headquarters, located in Oswego, Illinois, in his email signature block."

These assertions are insufficient to support specific jurisdiction here. The purposeful-direction or availment requirement for specific jurisdiction "focus[es] on the acts and activities of the defendant." Sheehan v. Breccia Unlimited Co., 48 F.4th 513, 522 (7th Cir. 2022); North, 72 F.4th at 225 ("[P]ersonal jurisdiction hinges on the defendant's—not the plaintiff's—contacts with the forum state."). That is because "the defendant's suit-related conduct must create a substantial connection with the forum State." Walden, 571 U.S. at 284. Thus, the "mere fact that [the defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." Id. at 291. Rather, the relation between the defendant and the forum "must arise out of contacts that the 'defendant *himself*' creates with the forum State." Id. at 284 (emphasis in original) (citation omitted). Put simply, "after Walden there can be no doubt that 'the plaintiff cannot be the only link between the defendant and the forum.'" Advanced Tactical, 751 F.3d at 802 (quoting Walden, 571 U.S. at 285).

Consistent with that notion, "an individual's contract with an out-of-state party *alone*" cannot "automatically establish sufficient minimum contacts in the other party's home forum." Burger King, 471 U.S. at 478 (emphasis in original). And so in breach of contract cases, "instead of starting and ending with the mere existence of a contract," courts evaluate "'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" North, 72 F.4th at 225-26 (quoting Burger King, 471 U.S. at 479). In doing so, courts in Illinois consider: "(1) who initiated the transaction; (2) where the contract was negotiated; (3) where the contract was formed; and (4) where performance of the contract was to take place." Philos Techs., 802 F.3d at 913 (citation omitted).

Applying these principles here, Consumer Nsight is not subject to specific jurisdiction in Illinois. As for who initiated the transaction, Consumer Nsight does not meaningfully dispute Allied First's assertion that Consumer Nsight did so by sending a proposal. But again—and as Allied First itself notes—this is just "one relevant inquiry." (Quoting Heritage House, 906 F.2d at 283). And the only person from Allied First who was involved in the transaction was in Arizona—not Illinois. See North, 72 F.4th at 223-26 (affirming finding that there was no specific jurisdiction over a California defendant that entered into a contract with an Illinois firm even though it "approached" the Illinois firm by reaching out to one of the firm's principals who lived in Arizona); Hanchett Paper Co. v. Off. Depot, LLC, No. 23 C 1591, 2023 WL 5390229, at *3 (N.D. Ill. Aug. 22, 2023) (finding no specific jurisdiction over the defendant and noting that the defendant "initiated discussions with employees of a company based in Illinois, but none of those employees involved in th[e] transaction worked there").

13

Next, the negotiations and contract formation occurred in either Florida or Arizona—not Illinois.[2]  According to Sabatino: "[o]n January 28, 2022, [Sabatino] sent a proposal, via email from Florida, to Craig Mattson at Allied First for live contact call transfers to Allied First"; Sabatino's "understanding is that, at the time [he] sent the proposal and at all times Consumer Nsight provided services" under it, Mattson "was Allied First's Regional Sales Manager, located in Scottsdale, Arizona"; "Mattson's email signature indicated his business address was in Scottsdale, Arizona"; and "none of [Sabatino's] communications occurred within Illinois" or were "directed to Allied First . . . within Illinois."  These assertions are unrebutted and do not conflict with any allegations in Allied First's third-party complaint or its response.

As for contract performance, Sabatino states that "the only Allied First branch location for which Consumer Nsight provided consulting services is located in Arizona," and that "the services Consumer Nsight provided to Allied First" under the "proposal were only provided to an Allied First branch located in Arizona to which the live contact telephone call transfers were transferred."  Nothing in Allied First's third-party complaint conflicts with these assertions.  In fact, the third-party complaint provides no allegations whatever related to where performance was to take place.

The allegations in the third-party complaint, moreover, show that this was a discrete, short-term transaction.  They provide that "Consumer Nsight emailed Allied First [the] proposal outlining the quantity and price of prescreened refinance live transfers," that Allied First then

---

[2]  Consumer Nsight and Sabatino deny that a contract was ever formed.  The court nevertheless assumes here, for purposes of resolving this motion only, that a contract was in fact formed.  See Curry, 949 F.3d at 393 (plaintiff "is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record").

14

"paid the amount requested," and that "[u]nder the agreement . . ., the transfer started on or around February 3, 2022, and continued until on or around April 8, 2022."   This case thus involves a single discrete purchase with a short two-month term.   It is, simply stated, not a case in which Consumer Nsight "purposefully 'reach[ed] out beyond' [Florida] and into [Illinois] by . . . entering a contractual relationship that 'envisioned continuing and wide-reaching contacts' in [Illinois]."   Walden, 571 U.S. at 285 (quoting Burger King, 471 U.S. at 479-80, where the Michigan defendant "entered into a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida"); Baker Dental Corp. v. Aurex Dental Inc., No. 13 CV 8181, 2014 WL 4414520, at *3 (N.D. Ill. Sept. 5, 2014) ("[N]owhere in the complaint or in the affidavit of plaintiff's president is there a suggestion that Aurex was bound in any way to continue purchasing from Baker Dental or, more importantly, have wide-ranging contact with Illinois.").

Taken together, then, the relevant factors do not support exercising specific jurisdiction over Consumer Nsight here.   Indeed, the "negotiations, the contemplated future consequences, and the parties' course of conduct all occurred outside the state of Illinois."   Healthcare Dev. Partners LLC v. Signet Health Corp., No. 24 CV 12343, 2025 WL 904361, at *5 (N.D. Ill. Mar. 25, 2025) (dismissing for lack of personal jurisdiction).

Nor do Allied First's cited cases compel a different conclusion: the contracts and the defendants in those cases had significant connections to Illinois.   See Heritage House, 906 F.2d at 278-81 & 284 (the defendant initiated the relationship by sending a letter to the plaintiff's comptroller in Illinois, the defendant mailed to the comptroller in Illinois a list of references, the comptroller used the defendant's services for over a year, and the defendant continued to contact

other plaintiff employees in Illinois to offer its services); <u>Sullivan v. Bickler</u>, 360 F. Supp. 3d 778, 785 (N.D. Ill. 2019) (the contract at issue "was negotiated and signed in Illinois, and the parties to the contract were domiciled in the state at the time"); <u>WAV, Inc. v. Walpole Island First Nation</u>, 47 F. Supp. 3d 720, 727 (N.D. Ill. 2014) (the defendant "targeted [the plaintiff] company in Illinois" because it "valued" its "Illinois location," "knew that it was affiliating itself with an enterprise based primarily in Illinois" over a period of years, and "took part in regular, direct communications with the plaintiff's Illinois office" (cleaned up)); <u>Abbott Lab'ys, Inc. v. BioValve Techs., Inc.</u>, 543 F. Supp. 2d 913, 922 (N.D. Ill. 2008) (the defendant's "visits to Illinois were substantive, directly related to performance under the contract . . ., and successfully determined project specifications"); <u>Lukas Mktg. v. Prince George's Cmty. Coll.</u>, No. 1:13-CV-04062, 2013 WL 5818592, at *6 (N.D. Ill. Oct. 29, 2013) (the defendant "initiated significant phone, e-mail, and mail contacts with [the plaintiff] in Illinois throughout the formation of the contract," "the purpose of the parties' contract was to plan [a] trip from Illinois," and the relationship was to continue "for at least six months"); <u>Vasili v. Duzich</u>, No. 07-C-5462, 2008 WL 2062371, at *3-4 (N.D. Ill. May 13, 2008) (the defendants' "steady stream of communication flowed" into Illinois and they traveled to Illinois on three occasions).

In short, the court finds that Allied First has failed to show that Consumer Nsight purposely availed itself of doing business in Illinois or otherwise directed its activities there. As a result, the court need go no "further in the personal-jurisdiction analysis by, for example, analyzing whether requiring [Consumer Nsight] to defend the suit in [Illinois] offends 'traditional notions of fair play and substantial justice.'" <u>N. Grain Mktg., LLC v. Greving</u>, 743

F.3d 487, 496 (7th Cir. 2014). The court thus finds that Allied First has not made a prima facie showing of personal jurisdiction.

### Transfer Based on Lack of Personal Jurisdiction

Although neither party suggests a transfer here, when a district court finds that it lacks personal jurisdiction, it has the "independent obligation"—albeit a "quite limited" one—to "at least consider a transfer and make some findings under [28 U.S.C.] § 1631." North, 72 F.4th at 228 (cleaned up) (explaining that the "obligation is quite limited, and it is rare that a court's oversight will amount to reversible error"). Under section 1631, when "a court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other . . . court . . . in which the action . . . could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631. "If a plaintiff may, on its own, refile its case in a proper forum, the interests of justice do not demand transfer." North, 72 F.4th at 228 (cleaned up).

Here, at least Florida (and likely Arizona) would be an appropriate forum. Because Consumer Nsight is an admitted Florida LLC with its principal place of business in Florida, it is subject to personal jurisdiction there. And because Consumer Nsight admittedly directed activities related to the transaction at issue in this case to Arizona, it is also potentially subject to personal jurisdiction there as well. Under Florida law, the statute of limitations for a breach-of-contract claim is four years if an oral contract is involved, and five years if the contract is written. See Fla. Stat. §§ 95.11(3)(k), 95.11(2)(b). The statute of limitations for a breach of contract claim in Arizona is 6 years after the cause of action accrues. See Ariz. Rev. Stat. § 12-548. And if Illinois law were to apply, Illinois has a ten-year statute of limitations on breach of written contract claims. See 735 ILCS 5/13-206. Because Allied First may file in at least one

17

other forum, the interests of justice do not demand transfer, and the court dismisses the third-party complaint against Consumer Nsight without prejudice.

## CONCLUSION

The court grants third-party defendant Consumer Nsight's motion to dismiss third-party plaintiff Allied First's third-party complaint [Doc. 95] because Allied First has not made a prima facie showing that the court has personal jurisdiction over Consumer Nsight.   The court dismisses the third-party complaint without prejudice.   The court denies without prejudice Consumer Nsight's motion to dismiss to the extent that it is based on other grounds.

ENTER:

Robert W. Gettleman
United States District Judge

DATE:    May 24, 2025

18