IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SAMUEL KATZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>ALLIED FIRST BANK, SB<br>et al.<br><br>Defendants. | Case No. 1:22-cv-05277<br><br>**JURY TRIAL DEMANDED** |

**REPLY IN SUPPORT OF MOTION TO EXTEND
DISCOVERY FOR THE PURPOSE OF ISSUING SUBPOENA**

Comes now the Plaintiff, Samuel Katz, and files reply in support of his motion to extend the instant discovery deadlines in this matter for the purpose of issuing a single subpoena.

In short, Defendant cannot complain of its own failure to identify Mr. Mattson's company, Diamond Select, despite having full knowledge of Mr. Mattson's position both as an employee of Allied First and lead generation supplier, also for Allied First, through his company, who served the same roll for Allied First as Iconic and Consumer Nsight. Indeed, Diamond Select should have been identified in Defendant's Rule 26(a)(1) initial disclosures but were not. In any event, because the Plaintiff has demonstrated the necessary diligence and filed the motion to extend within a reasonable timeframe, promptly after learning about the Diamond Select relationship, the motion should be granted.

For all its issues with the Plaintiff allegedly attempting to expand the class definition, Allied First looks past the fact that its own failure to identify Mr. Mattson, Diamond Select, or their involvement in the subject calling conduct, necessitated the instant motion. Indeed, to this end, the Defendant's position appears to be a deliberate stratagem in order to deflect from the

fact that the Plaintiff has identified yet another vendor that the Defendant used to place the same calls at issue alleged in the complaint, based on the Defendant's same conduct of using vendors to place the illegal calls at issue without properly supervising them. Indeed, Allied First ignores the palpable conflict of interest in that its *very own employee* also operated a side hustle of selling telemarketing leads to his employer, through his own company, and that this very company (Diamond Select) was responsible for Mr. Katz being called. If anyone has not been diligent, it was Allied First in concealing Mr. Mattson's and Diamond Select's relationship with Allied, not the Plaintiff uncovering it after discovery closed.

Defendant's position that the Diamond Select data is irrelevant is unavailing. Diamond Select is preeminently relevant to this case because it is a vendor who made calls on behalf of Allied First, and indeed only Allied First, as contemplated by the proposed class definition. The Plaintiff's Amended Complaint tentatively defines the proposed class as follows:

> **National Do Not Call Registry Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing calls from or on behalf of Defendants (3) within a 12-month period, (4) from four years prior the filing of the Complaint.

Even assuming *arguendo* that the Plaintiff received no calls from Diamond Select as part of the Diamond Select-Allied First relationship, a point which has yet undeveloped factual and evidentiary support and thus is a premature and unsupported argument (and something that the subpoena response will answer) that ignores the fact that this is one point of the instant motion: to determine who in the class (including Plaintiff) the Defendant is liable for having calls made on its behalf. Such calls made by Diamond Select on behalf of Allied First are nevertheless still subject to and covered by the class definition and are thus discoverable as they are members of the class that the Plaintiff seeks to certify. The Plaintiff's proposed class plainly include any individual in the United States "who received more than one telemarketing calls from *or on*

*behalf of* Defendants." (emphasis added). The definition and class discovery in this matter was not simply limited to those who received calls from specific vendors calling on behalf of the Defendant. Rather, the definition includes *all* individuals who received calls from vendors, like Iconic, Consumer Nsight, and, yes, Diamond Select, on behalf of Allied First.

By definition, the Plaintiff need not have received calls from the same vendor as other class members, nor is that a requirement in TCPA cases, as Courts routinely certify cases where multiple vendors placed the calls at issue with respect to a relationship they had with the seller. *See, e.g.*, *Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-CV-01569, 2024 WL 184449, at *10 (M.D. Pa. Jan. 17, 2024) ("Requiring Jackson to list other class members who Direct Building Services called before he has access to such names, which are currently within the exclusive possession of Direct Building Services, would likely result in nearly all class actions being stricken before discovery."); *Abramson v. Agentra, LLC*, No. CV 18-615, 2021 WL 3370057, at *12 (W.D. Pa. Aug. 3, 2021) (certifying class settlement, despite the fact that, unlike here, the relationship was not exclusive in that "insurance agents hired vendors who sold insurance leads to multiple companies on a non-exclusive basis."); *Keim v. ADF MidAtlantic, LLC*, 328 F.R.D. 668, 693 (S.D. Fla. 2018) (certifying class where multiple unnamed third party vendors placed calls); *Chapman v. Wagener Equities, Inc.*, No. 09 C 07299, 2014 WL 540250, at *17 (N.D. Ill. Feb. 11, 2014) (same, when it was alleged that defendant supervised "employees or third parties to send the advertisements by fax."); *Mantha v. QuoteWizard.com, LLC*, 347 F.R.D. 376, 397 (D. Mass. 2024) (certifying, despite the fact that "QuoteWizard did not obtain the forms directly from the consumers; they purchased them from vendors, many, if not most, of which purchased them from still other vendors."); *Williams v. PillPack LLC*, 343 F.R.D. 201, 211 (W.D. Wash. 2022) (certifying, despite the fact that multiple vendors were used); *see also U.S. Navy SEALs 1-*

3

*26 v. Austin*, 594 F. Supp. 3d 767, 783 (N.D. Tex. 2022) ("Even though their personal circumstances may factually differ in small ways, the threat is the same—get the jab or lose your job.").

The subpoena is thus narrowly tailored to seek calling records as part of that class definition, which the Defendant has known about all along, as well as (presumably) knowing Diamond Select's involvement. As such, it is essential for resolving key issues related to class certification, who all is in the class, as well as bearing on liability.

Nor will permitting the issuance of the subpoena Plaintiff seeks result in the need to take additional discovery. Mr. Mattson, Diamond Select's sole owner and employee, has already been deposed in this matter. Nor will additional agency discovery need to be undertaken; as an initial matter, Mr. Mattson was Allied First's employee, and additionally, discovery has already been undertaken with respect to Mr. Mattson's involvement and agency relationship with Allied First. Moreover, denying the motion would severely prejudice the Plaintiff by preventing access to potentially critical evidence about additional class members that already fall within the proposed class definition. Allied First's concerns about additional discovery are simply speculative red herrings that do not outweigh the importance of obtaining information relevant to the class the Plaintiff seeks to certify. Allowing the subpoena promotes fairness by ensuring the Court considers all evidence relevant to the certification decision, will not unduly delay the case for the reasons stated above, and will clarify critical issues related to class certification and liability.

                    Plaintiff,
                    By his attorneys,

                    */s/ Anthony I. Paronich*
                    Anthony I. Paronich
                    **PARONICH LAW, P.C.**

350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
Fax: (508) 318-8100
anthony@paronichlaw.com

5