## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **SAMUEL KATZ, individually and on behalf of all others similarly situated,** | ) ) ) | |
| | ) | **No. 22 C 5277** |
| **Plaintiff,** | ) | |
| | ) | **Magistrate Judge** |
| **v.** | ) | **Maria Valdez** |
| | ) | |
| **ALLIED FIRST BANK, SB et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

Plaintiffs have moved this Court to extend the close of discovery for the limited purpose of issuing a third-party subpoena [Doc. No. 128]. For the reasons that follow, the motion is denied.

## BACKGROUND

Plaintiffs brought this action against Allied First Bank, SB on September 27, 2022, alleging violations of the Telephone Consumer Protection Act ("TCPA"). One of Defendant's employees, Craig Mattson, engaged a third party, Consumer Nsight, to provide live phone call transfers to Allied First for leads of potential customers who had expressed interest in refinancing mortgages. Defendant asserts that Consumer Nsight, in turn, engaged a third-party call center, Iconic Results LLC, to conduct the calls. Defendant claims it was Iconic Results who contacted Plaintiffs in violation of the TCPA.

1

Relevant to the instant motion, in January 2023, then Magistrate Judge Harjani set the close of fact discovery for August 25, 2023. Prior to the close of discovery, Plaintiffs moved to extend the fact discovery deadline. Judge Harjani granted the motion and reset the fact discovery deadline to December 7, 2023. In November 2023, District Judge Gettleman stayed discovery pending ongoing mediation efforts between the parties. In January 2024, the parties reported that mediation was unsuccessful, and Judge Gettleman lifted the stay of discovery and ordered the parties to submit a new proposed discovery schedule.

When Judge Harjani was appointed to the District Court in early 2024, discovery supervision was transferred to this Court. In May 2024, this Court adopted the parties' new proposed discovery schedule and set the close of fact discovery for October 31, 2024. Prior to the new close of fact discovery, Defendant moved to extend the fact discovery deadline, and this Court reset the fact discovery deadline to January 31, 2025. In January 2025, the parties filed a joint status report in which they suggested that they would not be able to complete fact discovery by the January 31 deadline. This Court again reset the close of fact discovery, this time to March 31, 2025.

The March 31 deadline came and went without either party filing a motion to extend the deadline. In April 2025, the parties filed a joint status report in which they reported that the deposition of Mattson was set to take place on May 7, 2025. The Court reminded the parties that fact discovery had closed on March 31 and ordered the parties to file a further joint status report by June 2 confirming that

fact discovery between the parties had been completed. On June 2, the parties filed their joint status report and advised that fact discovery was in fact complete except as to a few outstanding discovery disputes. Then, on June 24, 2025, Plaintiffs filed the instant motion.

The basis for Plaintiffs' motion is this: During the May 7, 2025 deposition of Mattson, more than a month after the close of fact discovery, Mattson testified that in addition to Iconic Results, Defendant used another call center named Diamond Select Lead Group. Diamond Select used a telephone provider named XenCall to place the calls on behalf on Defendant. Mattson testified that Defendant had a multi-year telemarketing arrangement with Diamond Select. Defendant also supplemented its discovery responses and document production on May 14 demonstrating that it paid invoices to Diamond Select for call leads. Believing that this relationship between Defendant and Diamond Select is relevant to this action and the putative class Plaintiffs seek to certify, Plaintiffs issued a subpoena on May 15 (the day after Defendant supplemented its discovery responses and document production) to XenCall for telephone records for calls Diamond Select placed as part of its agreement with Defendant.

Plaintiffs contend that because the relationship between Defendant and Diamond Select was not evident until after the close of discovery, and Plaintiffs were diligent in that they issued the subpoena to XenCall the day after Defendant supplemental discovery responses and document production, good cause exists for this Court to extend the discovery schedule for the sole purpose of issuing the

subpoena. Defendant argues, *inter alia*, that good cause does not exist because Plaintiffs were not diligent in that they could have taken the deposition of Mattson anytime prior to the close of discovery and learned of the relationship between Defendant and Diamond Select and thus issued the subpoena before the close of fact discovery.

## LEGAL STANDARD

When an act may or must be done within a specified time, the court may, for good cause, extend the time with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires." Fed. R. Civ. P. 6(b)(1)(A). Courts have the power to set discovery deadlines. *See* Fed. R. Civ. P. 16(b)(3)(A). "A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The appropriate method to seek an extension of discovery deadlines is to file a motion under Rule 16(b)(4) before the deadline has passed. *See Naud v. City of Rockford*, 2013 U.S. Dist. LEXIS 116078, *13 (N.D. Ill. Aug. 16, 2013). "In making a Rule 16(b) good-cause determination, the primary consideration for district courts is the diligence of the party seeking amendment." *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011); *Peters v. Wal-Mart Stores E., LP*, 512 Fed. App'x 622, 627-28 (7th Cir. 2013) ("[T]he good-cause standard focuses on the diligence of the party seeking amendment, not the prejudice to the nonmoving party.")

"When the deadline has expired, Rule 6(b)(1)(B) allows a court to consider a motion for an extension of time for excusable neglect." *Naud*, 2013 U.S. Dist. LEXIS

4

116078, *13 (citing Fed. R. Civ. P. 16(b)(1)(B)); *see also Brosted v. Unum Life Ins. Co. of Am.*, 421 F.3d 459, 464 (7th Cir. 2005) (affirming district court's denial of motion for extension of discovery deadline filed one month after the deadline had passed). Excusable neglect is a somewhat elastic concept, demanding an equitable determination that can "encompass situations in which the failure to comply with a filing deadline is attributable to negligence." *Robb v. Norfolk & W. Ry. Co.*, 122 F.3d 354, 355-56 (7th Cir. 1997). In considering whether excusable neglect exists, courts look to: "(1) the danger of prejudice to the non-movant, (2) the length of the delay and its impact on the judicial proceedings, (3) the reason for the delay (including whether the delay was within the control of the movant), and (4) the movant's good faith." *Washington v. Conley*, 2025 U.S. Dist. LEXIS 131096, *5 (N.D. Ill. July 10, 2025). In the Seventh Circuit, the court's primary inquiry is the diligence of the party seeking the extension. *Kapila v. Vallera*, 2022 U.S. Dist. LEXIS 244982, *2-3 (N.D. Ill. Jan. 14, 2022).

## DISCUSSION

As an initial matter, the instant motion was filed over a month after the close of discovery. Therefore, the applicable standard is excusable neglect. *See Naud*, 2013 U.S. Dist. LEXIS 116078, *13. Plaintiffs have made no attempt to explain how they have satisfied the excusable neglect standard, instead arguing that the situation in which they find themselves constitutes good cause. Citing four cases, none of which are binding Seventh Circuit cases or even cases from the Northern District of Illinois, Plaintiffs contend that the discovery of new information or

5

evidence constitutes good cause to extend the fact discovery deadline. Plaintiffs aver that the new information provided in Mattson's deposition "was not previously known and could not have been previously known to Plaintiffs." The Court disagrees.

The court's primary inquiry is the diligence of the party seeking the extension. *Kapila*, 2022 U.S. Dist. LEXIS 244982 at *2-3. As Defendant correctly notes in its response, Plaintiffs could have deposed Mattson at any time during discovery and discovered Defendant's relationship with Diamond Select. A party has not been diligent where it could have learned of pertinent information via timely discovery procedures. *See id.* at *3. Therefore, Plaintiffs cannot establish that they were diligent. In this case, Plaintiff's lack of diligence is the reason for the delay, which was in Plaintiff's control. *See Washington*, 2025 U.S. Dist. LEXIS 131096 at *5.

Courts also consider the delay's impact on the judicial proceedings. *See id.* Although Plaintiffs aver that the issuance of the subpoena would not necessitate additional discovery by Defendant, Plaintiff explains that its purpose for seeking to issue the subpoena is to uncover additional conduct by Defendant that potentially would allow Plaintiff to certify a larger class. It would be prejudicial to Defendant not to allow it to fully investigate any such conduct to allow it to adequately defend itself. Therefore, allowing this subpoena would necessitate even more discovery, further delaying a discovery period that has already been extended by nearly two years. Thus, the Court finds that allowing the subpoena to Xencall would

substantially delay these proceedings. With respect to the danger of prejudice to the non-movant, this substantial delay would be the only way to avoid prejudice. Finally, the Court has no reason to doubt whether Plaintiffs have acted in good faith, but because the other three factors weigh in favor of denying the motion, Plaintiffs' good faith alone does not overcome their burden to meet the excusable neglect standard. Therefore, Plaintiffs cannot satisfy either the good cause or the excusable neglect standard.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Extend Discovery for the Purpose of Issuing Subpoena [Doc. No. 128] is denied.

**SO ORDERED.**

**ENTERED:**

**DATE:  July 24, 2025**

**HON. MARIA VALDEZ**
**United States Magistrate Judge**