**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SAMUEL KATZ, individually and on behalf of all others similarly situated | ) ) ) |
| Plaintiff, | ) ) Case No. 1:22-cv-05277 |
| v. | ) ) ) |
| ALLIED FIRST BANK, SB | ) ) |
| Defendant. | ) ) ) |

**DEFENDANT ALLIED FIRST BANK, SB'S
RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS**

Defendant Allied First Bank, SB ("Allied First"), now known as Servbank, SB, by and through its undersigned counsel, submits this statement of undisputed material facts in support of its Motion for Summary Judgment.

**I.      PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Samuel Katz ("Plaintiff") brought this Telephone Consumer Protection Act ("TCPA") action against Allied First relating to nine (9) calls Plaintiff received between January 8, 2022 and March 7, 2022. Allied First denies Plaintiff's allegations.

2. Allied First is a company that is headquartered in this District.

3. This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

4. This Court has personal jurisdiction over Allied First because it is a resident of this District.

5. Venue is proper under 28 U.S.C. § 1391(b) because the calls at issue were made into this District.

## II. PLAINTIFF'S ALLEGATIONS

6. Plaintiff alleges that Allied First and Consumer Nsight, LLC ("Consumer Nsight") made telemarketing calls to Plaintiff's residential telephone number in violation of the TCPA. *See* First Amended Complaint ("FAC") at ¶¶ 3, 11, 32.

7. The FAC alleges that Consumer Nsight "placed telemarketing calls for Allied First" to Plaintiff between January and March 2022 and that Consumer Nsight "transferred" Plaintiff to Allied First's call center. *Id.* at ¶¶ 21, 38.

8. Plaintiff further asserts that the call made by Consumer Nsight and "transferred" to Allied First violated the TCPA because his phone number was registered on the National Do-Not-Call Registry. *Id.* at ¶ 20.

9. Plaintiff seeks damages and "injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making calls, except for emergency purposes, to any residential number listed on the National Do Not Call Registry in the future." *Id.* at Prayer for Relief.

## III. THE MORTGAGE REFINANCE CAMPAIGN

10. The conduct at issue in this case centers around a former Allied First employee—Craig Mattson ("Mr. Mattson"). Mr. Mattson worked for Allied First as a branch manager in Scottsdale, Arizona. *See* Dep. Craig Mattson, attached hereto as **Exhibit No. 1**, at 8:11-18. His responsibilities included managing 80-81 loan officers and generating leads through various outlets. *Id.* at 8:24-12.

11. Mr. Mattson worked with various lenders to purchase leads. *Id.* at 22:17. One of the vendors that Mr. Mattson worked with was Consumer Nsight. *Id.* at 22:20. Mr. Mattson had a long-standing relationship with Consumer Nsight and had full decision-making authority and oversight

2

when it came to purchasing leads from Consumer Nsight. *Id.* at 22:22-23:11. In fact, Mr. Mattson's relationship with Rich Sabatino ("Mr. Sabatino"), Chief Executive Officer ("CEO") of Consumer Nsight, predated his employment with Allied First. *Id.*

12. On January 28, 2022, Mr. Sabatino contacted Mr. Mattson to inquire whether Mr. Mattson would be interested in utilizing Consumer Nsight's services for live call transfers to Allied First for individuals interested in mortgage refinances. *See* Dec. Rick Sabatino, attached hereto as **Exhibit No. 2**, at ¶ 8.

13. Pursuant to this agreement, Consumer Nsight provided advertising services to Allied First, including "consulting services for live contact telephone transfers from a call center to Allied First representatives." *Id.* at ¶ 6.

14. Mr. Mattson testified that he was not familiar with Consumer Nsight's processes for effectuating these leads. Mattson Dep. (Ex. 1) at 24:19-21. However, he did ensure that all the leads he purchases for Allied First were TCPA compliant. *Id.* at 26:24-27:9. Mr. Mattson would purchase "form fills" wherein a consumer would fill out a form to be contacted regarding Allied First's services. *Id.* at 27:19-28:1. In this sense, the consumers would "opt in" to receive the communications. *Id.* Mr. Mattson further ensured that the forms to be executed by the consumers would include a TCPA disclosure statement. *Id.* at 28:8-12.

15. Consumer Nsight engaged Iconic Results to conduct the calls and initiate the live call transfers to Allied First. Sabatino Decl. (Ex. 2) at ¶ 10.

16. Specifically, Iconic Results "called consumers who placed mortgage rate inquiries in order to verify that certain requirements are met (size of mortgage, location of property, and so forth), and then transferred qualifying consumers to companies that placed orders for such 'warm transfer' calls." Dec. Mituin Varma, attached hereto as **Exhibit No. 3** at ¶ 4.

3

17. Allied First had no contract, arrangement, or otherwise any relationship with Iconic Results. Sabatino Decl. (Ex. 2) at ¶ 6; *see also* Varma Decl. (Ex. 3) at ¶ 15.

18. Rather, Consumer Nsight placed three (3) orders with Iconic Results between November 2021 and October 2022 for a total of 90 mortgage lead transfers. Sabatino Decl. (Ex. 2) at ¶ 7. Consumer Nsight placed the orders and received the warm transfer calls. *Id.* Iconic Results invoiced Consumer Nsight for the calls it made as part of the campaign. Varma Decl. (Ex. 3) at ¶ 14.

19. Iconic Results was clear that it did not send invoices to Allied First because "it had no contractual relationship" with Allied First. *Id.* at ¶ 15. In fact, Mr. Mattson testified that he was not familiar with Iconic Results' call center and its processes. Mattson Dep. (Ex. 1) at 37:21-23.

## IV. THE CALLS AT ISSUE

20. In January 2022, an online inquiry form was executed at the webpage lenderconsultant.com. Varma Decl. (Ex. 3) at ¶ 10. The name provided on the form was "James Weim" and the phone number provided was (207) 802-1001. *Id.*

21. The following consent language was agreed to along with the inquiry:

By clicking "Submit," you agree to share your information with up to 4 of our Participating Partners (potentially including Quicken Loans & Loan Depot) regarding financial, home, credit, final expense and solar related offers and for them to contact you (including through automated means; e.g. autodialing and pre-recorded messaging) via telephone, mobile device (including SMS and MMS) and/or email, even if you are charged for the call or your telephone number is currently listed on any state, federal or corporate Do Not Call list. You agree that this consent is not a condition of purchase. That this is not a loan application and you are under no obligations.

*Id.*

22. Plaintiff admitted in deposition that he used the alias "James Weim" in relation to telemarketing calls. *See* Dep. Samuel Katz, attached hereto as **Exhibit No. 4**, at 54:2-17. Plaintiff

4

further admitted that his telephone number is (207) 802-1001.

23. Between January 12, 2022 and March 7, 2022, Iconic Results contacted "Mr. Weim" to discuss his interest in mortgage refinancing pursuant to the online inquiry. Varma Decl. (Ex. 3) at ¶ 11.

24. Iconic Results affirmed that it did not "place prerecorded or artificial calls, or calls placed with an Automatic Telephone Dialing System ("ATDS") restricted by the TCPA." *Id.* at ¶ 13.

25. Plaintiff answered the tenth call on March 7, 2022. *Id.* at ¶ 11. Plaintiff stated that he was "James Weim" and confirmed that he was interested in hearing mortgage rate offers. *Id.* at ¶ 12. The call was then transferred to Allied First to discuss mortgage refinancing options with the consumer. *Id.*

26. Jason Aldridge ("Mr. Aldridge"), a loan officer with Allied First, continued the call with Plaintiff. *See* Transcript of March 7, 2022 Phone Call, attached hereto as **Exhibit No. 5**.[1]

27. Plaintiff verified his home address and phone number on the call. *Id.* Plaintiff then informed Mr. Aldridge that he was interested in learning more about a cash out refinance. *Id.*

28. Shortly after Mr. Aldridge began to pull Plaintiff's property information, Plaintiff stated that he had to get going and asked if there was a way for him to call Mr. Aldridge back at another time. *Id.* Mr. Aldridge then provided Plaintiff with his direct phone number. *Id.* Mr. Aldridge informed Plaintiff that a call back would give him a chance to get information on Plaintiff's property so they could have an informed conversation, to which Plaintiff responded "okay, yes. Sounds good." *Id.*

29. Following the phone call, Mr. Aldridge sent a message to Plaintiff where he stated

---

[1] Plaintiff authenticated the March 7, 2022 call at deposition. *See* Ex. 4 at 68:13-15.

5

that it was good speaking with Plaintiff and provided him with his contact information so they could chat further. *See* March 2022 Conversation History, attached hereto as **Exhibit No. 6**.

30. Plaintiff immediately responded to Mr. Aldridge's message by stating "Please sent me a copy of your do not call policy to [] & stop calling me." *Id.* Mr. Aldridge responded by stating "I have not called you since we spoke, Mr. Weim. I will add DO NOT CALL to your record in our system. Enjoy your day." *Id.*

31. Plaintiff then inquired as to who was the lead generator that provided his contact information. *Id.* Mr. Aldridge responded that he does not have anything to do with marketing and he assumed that Plaintiff would have provided his information to the person who made the initial call. *Id.*

32. Plaintiff affirmed at deposition that he did not believe he had received any calls or text messages from Allied First since March 7, 2022. Katz Dep. (Ex. 4) at 68:7-15.

33. When asked about his commentary on the call that he was interested in mortgage refinancing, Plaintiff responded that he was just "play[ing] along." *Id.* at 68:21-25.

**V.     PLAINTIFF SAMUEL KATZ**

34. Plaintiff is a serial filer of TCPA actions. In fact, Plaintiff estimates that he has filed between five (5) and ten (10) TCPA actions over the last ten (10) years, if not more. *Id.* at 6:1-19.

35. This is also not Plaintiff's first TCPA complaint against Allied First. In or around June 2016, Plaintiff entered into a confidential settlement agreement with Allied First relating to calls that he received that he alleged in were in violation of the TCPA. *Id.* at 24:18-25:24.

36. Plaintiff is not naïve when it comes to the TCPA. When asked at deposition if he had ever signed an online web form to receive marketing calls, Plaintiff responded that he considered those to be "lead laundering where an unscrupulous third party will take data lists and

6

put them into web forms and amass to manufacture consent where none exists." *Id.* at 32:22-33:7.

37. It is Plaintiff's position that where he does fill an online webform, "the consent to receive telemarketing calls is separate from the consent related to the transaction." *Id.* at 33:20-34:1.

38. Plaintiff confirmed that he used the alias "James Weim" "in the context of an illegal telemarketing call," and even confirmed that he would entertain the calls to "play along" with telemarketers, but conveniently did not recall using that alias in this matter and denied filing out a webform with the alias "James Weim" and his personal contact information. *Id.* at 57:4-9; 58:22-25; 59:24-60:2.

## VI. SETTLEMENT

39. Plaintiff settled his claims with Consumer Nsight and Iconic Results.

40. While the terms of the settlement are confidential, upon information and belief, Plaintiff's settlements with Consumer Nsight and Iconic Results are in excess of the statutory maximum.

Dated: September 30, 2025

Respectfully submitted,

*/s/ Jeffrey M. Schieber*
Jeffrey J. Schieber
Nelson Mullins Riley & Scarborough, LLP
123 N. Wacker Drive, Suite 2100
Chicago, Illinois 60606
Tel: (312) 376-1110
Email: jeff.schieber@nelsonmullins.com

Nathan E. Hoffman
Nelson Mullins Riley & Scarborough, LLP
One Nashville Place, Suite 1100
150 Fourth Avenue North
Nashville, Tennessee 37219
Tel: (615) 664-5300
Email: nathan.hoffman@nelsonmullins.com
P.O. Box 641040

Chicago, Illinois 60664
Tel: (312) 205-7950

Kevin P. Polansky
*Pro Hac Vice*
Nelson Mullins Riley & Scarborough, LLP
One Financial Center, Suite 3500
Boston, Massachusetts 02111
Tel: (617) 217-4720
Email: kevin.polansky@nelsonmullins.com
***Attorneys for Defendant***
***Allied First Bank, SB***

**Exhibit List**

| Exhibit No. | Description |
|---|---|
| Exhibit No. 1 | Deposition of Craig Mattson |
| Exhibit No. 2 | Declaration of Rick Sabatino |
| Exhibit No. 3 | Declaration of Mituin Varma |
| Exhibit No. 4 | Deposition of Samuel Katz |
| Exhibit No. 5 | Transcript of March 7, 2022 Phone Call |
| Exhibit No. 6 | March 2022 Conversation History |

9