UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

Case No. 1:22-cv-05277

SAMUEL KATZ, )
)
    *Plaintiff*, )
)
v. )
)
ALLIED FIRST BANK, SB )
)
    *Defendant.* )
)

## DECLARATION OF MITUIN VARMA

I, Mituin Varma, hereby declare as follows:

1. I am over the age of eighteen, I am competent to provide the testimony in this Declaration, and I have personal knowledge of the matters contained herein. If called to testify, I could and would testify to the following facts.

2. I am a citizen and resident of the State of Arizona, residing in Phoenix.

3. I have worked for Iconic Results ("Iconic") for over 11 years. I am currently employed as Chief Executive Officer, a position I have held since 2014.

4. Iconic is a small Arizona-based company that, at the time of the calls in question to Plaintiff in this action, called consumers who placed mortgage rate inquiries in order to verify that certain requirements are met (size of mortgage, location of property, and so forth), and then transferred qualifying consumers to companies that placed orders for such "warm transfer" calls.

5. In short, Iconic (using its dba name American Resource Center) took orders from various companies for warm transfers of qualified mortgage leads, and worked diligently to

1

4926-5215-2381v.2

place calls in a legal and respectful manner.

6. Iconic had no contract or direct arrangement with Allied First Bank, SB, related to the calls that Iconic placed to Plaintiff's number.

7. Instead, the order for those calls was placed by Consumer Nsight, which placed three orders with Iconic between November 2021 and October 2022 for a total of 950 mortgage lead transfers of persons confirming they were interested in hearing about mortgage offers—the campaign was designed as the "Allied" campaign, but Consumer Nsight placed the orders and received the warm transfer calls.

8. In response to these orders by Consumer Nsight, Iconic acquired verified leads from lead generators who require prior express written consent, so that it only would call persons who had provided affirmative prior express written consent for calls. Iconic placed various calls to prior-consented leads to verify a consumer's interest in mortgage offers and qualifications for the campaign needs, and then transferred 729 qualified leads to the a telephone number provided by Consumer Nsight.

9. Iconic's sub-vendor Apex provided 210 of the warm transfers ordered by Consumer Nsight. (Apex is no longer in business to the best of Iconic's knowledge.) So a total of 939 warm transfers were provided to Consumer Nsight as per its orders for this campaign.

10. The calls to Samuel Katz were calls placed by Iconic to 207-802-1001, which number had been provided in an inquiry form by a "James Weim" at the webpage lenderconsultant.com. That website confirmed that the following consent language had been agreed to along with the inquiry:

> By clicking "Submit", you agree to share your information with up to 4 of our Participating Partners (potentially including Quicken Loans & Loan Depot),

regarding financial, home, credit, final expense and solar related offers and for them to contact you (including through automated means; e.g. autodialing, text and pre-recorded messaging) via telephone, mobile device (including SMS and MMS) and/or email, even if you are charged for the call or your telephone number is currently listed on any state, federal or corporate Do Not Call list. You agree that this consent is not a condition of purchase. That this is not a loan application and you are under no obligations.

11. Calls were placed to Katz's number on the following days, with only the final call being picked up by the consumer and then (after verification of Weim's qualifications) transferred to the Consumer Nsight phone number:

| Date | Number | Type | Duration |
|---|---|---|---|
| 1/12/2022 9:57 | 2078021001 | CALLBK | 58 |
| 1/14/2022 8:39 | 2078021001 | CALLBK | 22 |
| 1/17/2022 8:14 | 2078021001 | CALLBK | 19 |
| 1/17/2022 16:24 | 2078021001 | CALLBK | 4 |
| 1/22/2022 11:11 | 2078021001 | A | 6 |
| 1/26/2022 9:50 | 2078021001 | A | 14 |
| 1/27/2022 8:29 | 2078021001 | A | 2 |
| 1/28/2022 9:50 | 2078021001 | A | 5 |
| 2/16/2022 9:26 | 2078021001 | A | 33 |
| 3/7/2022 9:09 | 2078021001 | XFER | 230 |

12. In response to a third-party subpoena from Plaintiff received in this case, Iconic provided a recording of the call that was picked up and transferred, in which the recipient stated

3

he was James Weim and confirmed he was interested in hearing mortgage rate offers. There is no record of Katz asking for calls to stop—nor would there be as he only picked up the final Iconic Results call attempt, which resulted in a transfer to the Consumer Nsight number with the call recipient's approval.

13. Iconic does not place prerecorded or artificial calls, or calls placed with an Automatic Telephone Dialing System ("ATDS") restricted by the TCPA. And if any call recipient asks for calls to stop, Iconic immediately places the telephone number on its Internal Do Not Call list.

14. In response to Plaintiff's third-party subpoena, Iconic Results produced the invoices showing Consumer Nsight's orders for transfers to Consumer Nsight, and also produced documents showing the mortgage leads that were transferred to Consumer Nsight in order to fulfill those orders.

15. Iconic Results sent no invoices to Allied Bank, with which it had no contractual relationship.

16. I declare under penalty of perjury under the laws of the United States, Arizona, and Illinois, that the foregoing is true and correct.

Executed on June 25, 2025, in Phoenix, Arizona.

By: _____

Mituin Varma