**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SAMUEL KATZ, individually and on behalf of all others similarly situated ) ) ) | |
| Plaintiff, ) ) | Case No. 1:22-cv-05277 |
| v. ) ) | |
| ALLIED FIRST BANK, SB ) ) | |
| Defendant. ) ) | |

**REPLY IN FURTHER SUPPORT OF
DEFENDANT ALLIED FIRST BANK, SB'S MOTION FOR SUMMARY JUDGMENT**

Defendant Allied First Bank, SB ("Allied First"), now known as Servbank, N.A., by and through its undersigned counsel, hereby files this Reply in Further Support of its Motion for Summary Judgment, and states as follows:

**I.  INTRODUCTION**

On November 12, 2025, Plaintiff filed his Response to Allied First's Motion for Summary Judgment ("Plaintiff's Opposition"). (ECF No. 147). Plaintiff distorts the factual record to paint Allied First as the mastermind behind a scheme to effectuate unwanted and illegal telemarketing calls. Plaintiff contends that simply because Allied First engaged marketing services from Consumer Nsight, Allied First is vicariously responsible for any and all of Consumer Nsight's conduct without regard for Allied First's knowledge, approval, or acquiescence of such activities. Plaintiff's attempt to hold Allied First to a strict liability standard runs afoul of the principles of vicarious liability.

Plaintiff's Opposition is defective and this Court should enter judgment on behalf of Allied First because there is no genuine dispute of material fact that: (1) neither Allied First, nor its agent,

initiated any telemarketing calls to Plaintiff; (2) the calls at issue did not violate the TCPA because Plaintiff consented to be contacted; and (3) Plaintiff recovered all statutorily available damages.

Accordingly, and for the reasons set forth herein, Allied First respectfully requests that this Court grant its Motion for Summary Judgment, enter judgment in Allied First's favor, and grant such other and further relief as this Court deems just and proper.

## II.  ARGUMENT

### A.  Allied First Did Not Place The Calls At Issue.

The factual record unequivocally establishes, and Plaintiff does not dispute, that Allied First did not place the calls at issue. Accordingly, Allied First did not directly violate the TCPA and summary judgment must be entered in its favor.

### B.  No Agent Of Allied First Placed The Calls At Issue.

This Court should grant summary judgment because no agent of Allied First placed the calls at issue. Plaintiff's attempt to distort the factual record and conflate the liability standard cannot support the denial of summary judgment. Here, the record clearly establishes that no agent of Allied First (either an actual or apparent), contacted Plaintiff in violation of the TCPA and Allied First did not ratify the alleged conduct of any of its agents who contacted Plaintiff in violation of the TCPA.

*i. No Actual Agent of Allied First Placed the Calls at Issue.*

1. Consumer Nsight is not an actual agent of Allied First.

Plaintiff argues that Consumer Nsight was an actual agent of Allied First because Mr. Mattson and Allied First maintained direct control over Consumer Nsight. In support of such contentions, Plaintiff cites to internal Allied First handbooks which discuss the vetting and approval of vendors, such as Consumer Nsight. Plaintiff further points to purported directions

2

given by Mr. Mattson to Consumer Nsight as Mr. Mattson "controlling" the method and manner by which those leads were effectuated. Finally, Plaintiff curiously points to Allied First's requirement that all calls be TCPA compliant as establishing Allied First's control over Consumer Nsight. At the core, Plaintiff attempts to reframe certain facts to establish that Allied First controlled Consumer Nsight.

Mr. Mattson's engagement of Consumer Nsight to provide advertising services to Allied First does not rise to the level of control necessary to establish agency. Similarly, Mr. Mattson's communications with Consumer Nsight does not evidence control. Plaintiff places a great deal of emphasis on Mr. Mattson providing Consumer Nsight with a list of loan officers as evidence that Mr. Mattson retained the right to control Consumer Nsight. To the contrary, the list of loan officers was provided so that the transfers could be effectuated properly. *See e.g.,* Allied First's Rule 56.1 Stmt. at ¶ 13 (citing Sabatino Decl. (Ex. 2) at ¶ 8). Plaintiff skips over the most important piece of this engagement—that Allied First did not *control* how the live call transfers would be effectuated. *Id.* at ¶ 14 (citing Mattson Dep. (Ex. 1) at 24:19-21).

2. Iconic Results is not a subagent of Allied First.

Plaintiff next argues that Iconic Results was a subagent of Allied First. "A subagent is 'a person appointed by an agent empowered to do so, to perform functions undertaken by the agent for the principal, but for whose conduct the agent agrees with the principal to be primarily responsible.'" *Desai v. ADT Security Systems, Inc.*, 78 F.Supp.3d 896, 904 (N.D. Ill. 2015) (quoting Restatement (Second) of Agency § 3(1)). Thus, based on the foregoing, this Court should decline to find that Iconic Results is a subagent of Allied First because Consumer Nsight is not an agent of Allied First.

Assuming *arguendo* that this Court were to consider Consumer Nsight to be an agent of

3

Allied First (and it is not), Iconic Results is still not a subagent of Allied First. Plaintiff contends that Iconic Results is a proper subagent because it was engaged by Consumer Nsight (Allied First's purported agent), and Allied First did not prohibit Consumer Nsight from appointing a subagent. Plaintiff's argument conflates the standard for subagency. The Restatement (Second) of Agency provides

> Unless otherwise agreed, authority to appoint a subagent is inferred from authority to conduct a transaction for the principal for the performance of which the agent is to be responsible to the principal if ... the appointment of subagents for the performance of such transactions is usual, or the principal has reason to know that the agent employs subagents.

Restatement (Second) of Agency § 80(d); *see also* Restatement (Third) of Agency § 3.15 cmt. c ("An agent has actual authority to create a relationship of subagency when the agent reasonably believes, based on a manifestation from the principal, that the principal [expressly or impliedly] consents to the appointment of a subagent.").

There is absolutely no evidence in the record to support that (1) the appointment of subagents for telemarketing services is usual or (2) the Allied First had reason to know that Consumer Nsight employs subagents. Indeed, Allied First had no contract, arrangement or otherwise any relationship with Iconic Results. *See e.g.,* Allied First's Rule 56.1 Stmt. at ¶ 17 (citing Sabatino Decl. (Ex. 2) at ¶ 6; *see also* Varma Decl. (Ex. 3) at ¶ 15). Thus, as a matter of law, Allied First is entitled to summary judgment.

## ii. *No Apparent Agent of Allied First Placed the Calls at Issue.*

No apparent agent of Allied First placed the calls at issue in violation of the TCPA. Allied First did not take any actions that would instill in a third party a reasonable belief that Iconic Results had authority to act as Allied First's agent. Additionally, Allied First had no relationship with Iconic Results that would lead a third party to believe that Iconic Results was its agent.

Moreover, Plaintiff does not dispute that no apparent agent of Allied First placed the calls at issue. Accordingly, summary judgment is appropriate.

### iii. Allied First did not Ratify the Conduct of its Alleged Agent.

Plaintiff finally contends that Allied First is vicariously liable for the calls at issue because it ratified the conduct of Iconic Results. Plaintiff asserts that Allied First (1) had knowledge of material facts and (2) maintained willful ignorance. Plaintiff's arguments are unfounded and must be rejected.

#### 1. Allied First did not have knowledge of material facts.

Plaintiff once again attempts to advance the argument that because Mr. Mattson engaged Consumer Nsight for telemarketing services, Allied First must have been knowledgeable regarding each and every action taken by Consumer Nsight. Plaintiff's arguments defy the factual record. Missing from Plaintiff's argument is any facts which evidence that Allied First had knowledge of who conducted the live transfers or the means by which the calls were placed. Instead, it was Allied First's understanding that consumers, like Plaintiff, provided their information on an online web page to be contacted regarding mortgage refinancing options and that such form included a TCPA disclosure statement. *See*, *e.g.*, Allied First's Rule 56.1 Stmt. at ¶ 14 (citing Mattson Dep. (Ex. 1) at 26:4-28:12).

Moreover, Plaintiff empathetically argues that because he was on the National Do-Not-Call Registry, and previously settled a TCPA claim with Allied First, Allied First should have been aware that the calls violated the TCPA. Again, it was Allied First's understanding that the consumers that were transferred to Allied First's loan officers had consented to be contacted. *See id.* at ¶ 31 (citing Conversation History (Ex. 6)). Indeed, the loan officer who spoke directly with Plaintiff stated that he believed that Plaintiff provided his contact information to the party who

5

initiated the phone call. *Id.* Plaintiff's inclusion on the National Do-Not-Call Registry has no relevance where Allied First believed that Plaintiff consented to receive the calls. Plaintiff cannot make the requisite showing that Allied First had knowledge of material facts and summary judgment is appropriate.

2. <u>Allied First did not maintain willful ignorance.</u>

Plaintiff next asserts that Allied First maintained willful ignorance of TCPA compliance because Mr. Mattson did not follow the standard compliance methods when engaging Consumer Nsight. Plaintiff points to "low quality leads" and Allied First's failure to discipline Mr. Mattson after learning that Consumer Nsight was not approved as evidence that Allied First maintained willful ignorance. Plaintiff cannot point to post-hoc events as evidence that Allied First maintained willful ignorance. Allied First's decision not to discipline Mr. Mattson or revise its corporate policies has no bearing on whether *at the time of ratification*, Allied First maintained willful ignorance. The facts are simple—Mr. Mattson engaged Consumer Nsight to generate leads. Allied First had no reason to believe that Consumer Nsight violated the TCPA in effectuating these leads at the time it paid Consumer Nsight for its services and there is simply no evidence in the record to the contrary. Accordingly, Allied First did not ratify the conduct of Consumer Nsight and summary judgment is appropriate.

C. **The Calls Did Not Violate The TCPA Because Plaintiff Consented To Receive The Calls At Issue.**

Summary judgment is appropriate because Plaintiff consented to receive the calls at issue and, thus, the calls did not violate the TCPA. Plaintiff claims that the calls violated the TCPA because his phone number is listed on the National Do-Not-Call Registry. However, "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary. Hence,

6

telemarketers will not violate [TCPA rules] by calling a number which was provided as one at which the called party wishes to be reached." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Report and Order, 7 FCC Rcd. 8752, 8769 ¶ 31 (Oct. 16, 1992). Plaintiff cannot claim ignorance.

Plaintiff first contends that the evidence supporting consent is inadmissible hearsay. To the contrary, the declaration provided by Iconic Results, the party who initiated the telephone calls and who had direct knowledge of consent, unequivocally establishes that Plaintiff consented to receive mortgage refinancing calls. Similarly, Allied First need not adduce evidence by the operator of lenderconsultant.com as Iconic Results had personal knowledge of consent based upon the inquiry form from lenderconsultant.com. This factual scenario differs from *Allstate*, where this Court declined to consider a *spreadsheet* purporting to establish consent. *Hossfeld v. Allstate Ins. Co.*, 726 F.Supp.3d 852, 873 (N.D. Ill. 2024). Iconic Results' verified Declaration is based upon Mr. Varma's personal knowledge of Plaintiff's consent and, thus, is admissible evidence to support Allied First's Motion for Summary Judgment.

Plaintiff next argues that even if he did visit lenderconsultant.com and submit his information (which the record establishes), the consent language is not sufficient. The consent language is as follows:

> By clicking "Submit," you agree to share your information with up to 4 of our Participating Partners (potentially including Quicken Loans & Loan Depot) *regarding financial, home, credit, final expense and solar related offers and for them to contact you* (including through automated means; e.g. autodialing and pre-recorded messaging) via telephone, mobile device (including SMS and MMS) and/or email, even if you are charged for the call or your telephone number is currently listed on any state, federal or corporate Do Not Call list. You agree that this consent is not a condition of purchase. That this is not a loan application and you are under no obligations.

*See, e.g.,* Allied First's Rule 56.1 Stmt. at ¶ 21 (citing Varma Decl. (Ex. 3) at ¶ 10). Thus, Plaintiff expressly agreed to share his information with "Participating Partners" "regarding financial, home, credit, final expense and solar related offers and for them to contact [him]." *Id.* Plaintiff was then contacted regarding mortgage refinancing offers. There is no question that the calls at issue are within the confines of the disclosure.

Finally, there can be no genuine dispute that Plaintiff filled out the online form. The form included his telephone number and an alias that he admittedly uses in relation to telemarketing calls. Further, in deposition, Plaintiff verified that he answered the phone when Iconic Results contacted him where he stated that he was "James Weim" and confirmed his interest in learning about mortgage rate offers. Plaintiff's ploy to bait telemarketers by using an alias cannot be ignored. Plaintiff expressly consented to be contacted regarding mortgage refinancing and, thus, his claim for violation of the TCPA fails as a matter of law.

        **D.**      **Plaintiff Recovered All Available Damages.**

Finally, summary judgment is appropriate because Plaintiff already recovered all statutorily available damages and has been fully compensated for any alleged harm. Plaintiff's argument in opposition must be carefully examined as it is very telling of Plaintiff's motives throughout this entire action. Plaintiff first criticizes Allied First for its failure to produce tangible evidence of these settlements. Plaintiff is fully aware, however, that his settlements with Consumer Nsight and Iconic Results are confidential. Either Plaintiff seeks to bait Consumer Nsight and Iconic Results to breach the terms of their agreements or attempts to portray Allied First as dishonest before this Court. Regardless of the motive, Plaintiff's gamesmanship cannot be overlooked.

Additionally, Plaintiff carefully argues that although he has settled with both Consumer

8

Nsight and Iconic Results, he has not recovered his full measure of statutory damages from these former parties. Even assuming the worst case that Allied First willfully or knowingly violated the TCPA (and it did not), and Plaintiff is entitled to $1,500 per violation, Consumer Nsight and Iconic Results settled their claims with Plaintiff in excess of the statutory maximum. *See*, *e.g.*, Allied First's Rule 56.1 Stmt. at ¶¶ 39-40. To the extent that Plaintiff seeks to recover actual monetary loss from Allied First's alleged violation of the TCPA, Plaintiff has adduced no evidence to support such a finding. Furthermore, the TCPA does not provide recovery for attorneys' fees. *See generally*, 47 U.S.C. § 227. There is no question that Plaintiff has been fully compensated for any alleged harm and, accordingly, summary judgment is appropriate.

### III.    CONCLUSION

For the foregoing reasons, Defendant Allied First Bank, SB, now known as Servbank, N.A., respectfully requests that this Court grants its Motion for Summary Judgment, enter judgment in Allied First's favor on all claims, and grant such other and further relief as this Court deems just and proper.

Dated: December 8, 2025                                Respectfully submitted,

*/s/ Jeffrey Schieber*
Jeffrey Schieber
Nelson Mullins Riley & Scarborough, LLP
123 N. Wacker Drive, Suite 2100
Chicago, Illinois 60606
Tel: (312) 376-1110
Email: jeff.schieber@nelsonmullins.com

Nathan E. Hoffman
Nelson Mullins Riley & Scarborough, LLP
One Nashville Place, Suite 1100
150 Fourth Avenue North
Nashville, Tennessee 37219
Tel: (615) 664-5300
Email: nathan.hoffman@nelsonmullins.com
P.O. Box 641040

9

Chicago, Illinois 60664
Tel: (312) 205-7950

Kevin P. Polansky
*Pro Hac Vice*
Nelson Mullins Riley & Scarborough, LLP
One Financial Center, Suite 3500
Boston, Massachusetts 02111
Tel: (617) 217-4720
Email: kevin.polansky@nelsonmullins.com

***Attorneys for Defendant***
***Allied First Bank, SB***